MATTHEW S. FOY (SBN: 187238)
mfoy@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

SARA E. NAU (*pro hac vice*)
sara.nau@phelps.com
PHELPS DUNBAR LLP
901 Louisiana Street, Suite 4300
Houston, TX 77002
Telephone: (713) 877-5503

Attorneys for Plaintiff CAPITOL SPECIALTY INSURANCE CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>TGG MANAGEMENT COMPANY, INC., et al<br><br>Defendants. | CASE NO. 3:24-cv-2198-H-DDL<br><br>**PLAINTIFF CAPITOL SPECIALTY INSURANCE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS TGG MANAGEMENT COMPANY, INC., AND MATTHEW GARRETT'S MOTION TO STAY**<br><br>Date: March 3, 2025<br>Time: 10:30 a.m.<br>Courtroom: 12A |

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

# TABLE OF CONTENTS

**I. INTRODUCTION ..... 6**

**II. FACTUAL BACKGROUND ..... 8**

A. THE TGG CONTRACTS ..... 8

B. THE UNDERLYING LAWSUIT ..... 8

C. CSIC'S AGREEMENT TO DEFEND AND TO FILE THIS DECLARATORY RELIEF ACTION ..... 9

**III. MOTION TO STAY STANDARD ..... 10**

**IV. ARGUMENTS & AUTHORITIES ..... 13**

A. EXCLUSION 17 DOES NOT TURN ON FACTS TO BE ADJUDICATED IN THE UNDERLYING LAWSUIT. ..... 13

B. THE FIRST LANDIS FACTOR DOES NOT SUPPORT A STAY BECAUSE CSIC WILL BE DAMAGED BY A STAY. ..... 17

C. THE SECOND *LANDIS* FACTOR DOES NOT SUPPORT A STAY BECAUSE THE DEFENDANTS WILL NOT SUFFER HARDSHIP AS A RESULT OF THIS CASE PROCEEDING. ..... 18

D. THE THIRD *LANDIS* FACTOR DOES NOT FAVOR A STAY BECAUSE IT WILL NOT CONTRIBUTE TO THE ORDERLY ADMINISTRATION OF JUSTICE. ..... 20

**CONCLUSION ..... 21**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Certain Underwriters at Lloyd's of London v. Superior Court (Powerine Oil Company)*, 24 Cal. 4th 945 (Cal. 2001) .......... 14, 16

*Citizens Ins. Co. of Am. v. Chief Digital Advisors*, No. 20-cv-1075-MMA (S.D. Cal. Dec. 22, 2020) .......... 21

*Clinton v. Jones*, 520 U.S. 681 (1997) .......... 11

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) .......... 11

*Columbia Cas. Co. v. Abdou*, No. 15cv80-LAB, 2015 WL 9244305 (S.D. Cal. Dec. 16, 2015) .......... 16

*Corrigan v. Bjork Shiley Corp.*, 182 Cal.App.3d 166 (Cal. Ct. App. 1986) .......... 11

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) .......... 10

*Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997) .......... 14, 16

*Great Am. Assurance Co. v. M.S. Indus. Sheet Metal, Inc.*, No. SACV11754JSTMLGX, 2011 WL 13228037 (C.D. Cal. Sept. 22, 2011) .......... 12, 18

*Great Am. Ins. Co. v. Superior Court*, 178 Cal. App. 4th 221 (Cal. Ct. App. 2009) .......... 12, 13, 18, 20

*James River Ins. Co. v. W.A. Rose Constr., Inc.*, No. 18-CV-02030-SI, 2018 WL 3023408 (N.D. Cal. June 18, 2018) .......... 10

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

*Landis v. North American Co.*,
299 U.S. 248 (1936) .......... 11

*Liberty Mut. Fire Ins. Co. v. Copart of Connecticut*,
75 F.4th 522 (5th Cir. 2023) .......... 17

*Montrose Chem. Corp. v. Superior Ct.*,
5 Cal.App.4th 902 (Cal. 1994) .......... 12, 18

*Nautilus Ins. Co. v. Acacia Mobile Home Park, LLC*,
No. 23-CV-2072 JLS, 2024 WL 4713903 (S.D. Cal. Nov. 7, 2024) .......... 16

*North River Ins. Co. v. Leffingwell Ag Sales Co.*,
No. CV-F-10-2007 LJO MJS, 2011 U.S. Dist. LEXIS 8208 (E.D. Cal. Jan. 27, 2011) .......... 19,21

*Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*,
279 S.W.3d 650 (Tex. 2009) .......... 13

*Ringler Associates Inc. v. Maryland Cas. Co.*,
80 Cal.App.4th 1165 (Cal. Ct. App. 2000) .......... 13, 19

*RLI Ins. Co. v. ACE Am. Ins. Co.*,
No. 19-CV-04180-LHK, 2020 WL 1322955 (N.D. Cal., Mar. 20, 2020) .......... 18, 21

*Scottsdale Ins. Co. v. MV Transp.*,
36 Cal. 4th 643 (Cal. 2005) .......... 13, 14

*Snug Harbor, Ltd. v. Zurich Ins.*,
968 F.2d 538 (5th Cir. 1992) .......... 6

*Star-Tex Res., L.L.C. v. Granite State Ins. Co.*,
553 Fed. Appx. 366 (5th Cir. 2014) .......... 13, 15

*Waller v. Truck Ins. Exch.*,
11 Cal.4th 1 (Cal. 1995) .......... 6

*Wincor Nixdorf Inc. v. Discover Prop. & Cas. Ins. Co.*,
No. CV1302772GAFFFMX, 2013 WL 12131718 (C.D. Cal. June 14, 2013) .......... 14, 15

**Gordon Rees Scully Mansukhani, LLP**
**315 Pacific Avenue**
**San Francisco, CA 94111**

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

**Statutes**

28 U.S.C. § 1332 .......... 10

Plaintiff Capitol Specialty Insurance Corporation ("CSIC") hereby submits this Memorandum of Points and Authorities in Opposition to Defendants TGG Management Company, Inc. ("TGG") and Matthew Garrett's ("Garrett" and collectively with TGG, the "Defendants") Motion to Stay Proceedings.

## I. INTRODUCTION

In this declaratory judgment action, CSIC seeks a judicial determination that it owes no duty to defend or indemnify the Defendants in a lawsuit styled *Ikigai Marketing Works, LLC, et al v. TGG Management Company, Inc., et al*, Case Number 37-2023-00038170-CU-BC-NC, pending in the Superior Court of the State of California for the County of San Diego ("Underlying Lawsuit") under an insurance policy CSIC issued to TGG (the "Policy").

Whether one views this matter under Texas law (as CSIC has previously asserted)[1] or California law (as the Defendants assert), while the duty to defend is broad, it "is not unlimited" and is instead "measured by the nature and kinds of risks covered by the policy." *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 19 (Cal. 1995); *see also Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 545 (5th Cir. 1992) (the duty to defend under Texas law is "expansive" but not "limitless") (internal citations omitted). Here, the allegations against the Defendants in the Underlying Lawsuit are not covered, nor are they potentially covered, under the Policy.

---

[1] The issue of what state's law applies to the interpretation of Exclusion 17 will be addressed in more detail in CSIC's upcoming Motion for Summary Judgment. For the purposes of this Motion, CSIC concedes that because the decision to stay a case is procedural, 9th Circuit (and, to the extent it is consistent, California) law governs the inquiry on whether to stay the case. However, for the substantive issues of the duty to defend and indemnify, which will be discussed in more detail in CSIC's Motion for Summary Judgment, CSIC will argue that Texas law applies. Out of an abundance of caution, CSIC cites California law on these issues, to the extent it is relevant to the parties' arguments on the Motion to Stay and in the event the Court determines California law ultimately applies.



Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

The Underlying Lawsuit allegations are fundamentally premised on an alleged phishing scheme in which phishers: (1) accessed the email systems of vendors for TGG's clients Ikigai Marketing Works, LLC ("Ikigai") and Pooph, Inc. (collectively the "Underlying Plaintiffs"); (2) "spoofed" the vendors' email addresses and sent emails to TGG, with legitimate invoices attached, asking that TGG transfer the Underlying Plaintiffs' money into the phisher's fraudulent account to pay the legitimate vendor invoices; and (3) in turn, duped TGG into sending the Underlying Plaintiffs' funds to the phisher's fraudulent account. The Policy (a true and correct copy of which is attached as **Exhibit A**), however, plainly does not cover this exposure in light of Exclusion 17, which eliminates coverage for "Claims arising out of [the] actual or alleged…unauthorized access to, use or, or tampering with data or systems by any person." Exhibit A p. 6. While CSIC appreciates that the Defendants disagree on this point, and will oppose CSIC's later Motion for Summary Judgment on this argument, CSIC is entitled to prove it did not, and does not, owe a duty to defend them in the Underlying Lawsuit because the Underlying Lawsuit allegations arise out of the phisher's unauthorized access to the vendor's email system. In turn, this means there is also no possible duty to indemnify based on Exclusion 17.

In further support of their Motion to Stay, the Defendants criticize CSIC's decision to file this insurance coverage declaratory relief action. However, the Defendants ignore that instead of declining coverage at the outset (which would have then resulted in the Defendants filing suit against CSIC while the Underlying Lawsuit was pending), CSIC agreed to defend its insureds and has been affording them a complete and vigorous defense subject to a reservation of rights. This is precisely what courts encourage insurers to do. CSIC is pursuing a declaratory relief action, as is its right, to determine the rights and obligations under the parties' insurance contract.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

In support of their Motion to Stay, the Defendants also incorrectly argue that they will be prejudiced if CSIC is permitted to pursue this action while the Underlying Lawsuit is unresolved. CSIC's coverage position is based, however, on the Underlying Plaintiffs' claims and allegations, and the fact that those claims and allegations, as compared to the terms and conditions of the at-issue insurance contract, are not potentially covered under well-established law. CSIC will not, and does not need to, litigate any facts in this action that are at issue or unresolved in the Underlying Lawsuit. There is no risk of inconsistent factual determinations. Courts permit insurance coverage declaratory relief actions to proceed under these exact circumstances.

For these reasons, and as discussed further below, CSIC respectfully requests that the Court deny the Defendants' Motion to Stay these proceedings.

## II. <u>FACTUAL BACKGROUND</u>

### A. The TGG contracts

On June 14, 2022, Pooph entered into a professional services agreement in which TGG agreed to provide accounting services to Pooph. [Dkt. 1-3, pp. 36-42]. On the same day, June 14, 2022, Ikigai and TGG entered into a professional services agreement in which TGG also agreed to provide accounting services to Ikigai. [Dkt. 1-3, pp. 44-50].

### B.The Underlying Lawsuit

On September 1, 2023, the Underlying Plaintiffs filed suit against TGG and Garrett in the Superior Court of the State of California, County of San Diego, Case Number 37-2023-00038170-CU-BC-NIC, entitled *Ikigai Marketings Works, LLC, et al v. TGG Management Company, Inc.* In the Original Complaint (a true and correct copy of which is attached as **Exhibit B**) the Underlying Plaintiffs alleged that on or about January 18, 2023, TGG received a request to send money to a phisher, who had "spoofed" the Underlying Plaintiffs' vendors' email addresses,

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

was holding themselves out as the vendor, and attached legitimate vendor invoices to the emails seeking reimbursement. Exhibit B at p. 10. TGG allegedly transmitted payments to the phisher totaling $843,704.90 on February 2, 9, 15, and 23, 2023. *Id.* at p. 12. The Underlying Plaintiffs alleged that each time TGG succumbed to the phisher's scheme, TGG failed to implement proper screening and failed to verify changes to the vendor's banking information to filter out the phisher's emails. *Id.* at p. 11-13. Further, despite multiple red flags in the phisher's emails, TGG allegedly continued to process payments to the phisher without any verification from the Underlying Plaintiffs. *Id.*

The Underlying Plaintiffs brought causes of action against the Defendants for (1) alter ego of TGG's CEO, Matthew Garrett, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, (4) unjust enrichment, (5) promissory estoppel, (6) professional negligence, (7) gross negligence, (8) negligent hiring, training and supervision, (9) breach of fiduciary duty, (10) constructive fraud, and (11) violations of the California Business and Professions Code. The Underlying Plaintiffs further sought declaratory judgment relief, as well as actual, consequential, and incidental damages, civil penalties, punitive damages, pre- and post-judgment interest, and attorney's fees and costs.

On January 18, 2024, the Underlying Plaintiffs filed an Amended Complaint, a true and correct copy of which is attached as **Exhibit C**. The allegations in the Amended Complaint are identical to those in the Original Complaint. The only change in the Amended Complaint is that it changed the causes of action under the California Business and Professions Code from False Advertising, Violations of the Accountant Act, and Unfair Competition to solely Unfair Competition.

**C. CSIC's agreement to defend and to file this declaratory relief action**

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

During the pendency of the Underlying Lawsuit, on January 24, 2024, the Defendants tendered their defense in the Underlying Lawsuit to CSIC (at that time, the operative complaint was the First Amended Complaint). In a February 19, 2024 letter, CSIC agreed to defend the Defendants subject to a reservation of rights, a true and correct copy of which is attached as **Exhibit D**. CSIC then proceeded with filing this coverage action in the Western District of Texas, San Antonio Division, seeking a declaration that CSIC has no duty to defend and indemnify the Defendants in the Underlying Lawsuit under the Policy. CSIC also seeks reimbursement of defense costs in the event the Court determines there is no duty to defend. This coverage action was later transferred to the Southern District of California in response to the Defendants' Motion to Transfer Venue.

While CSIC appreciates that the Defendants disagree, CSIC is confident that based on the plain and clear terms of the Policy and applicable law, CSIC's claims in the Underlying Lawsuit are not covered or potentially covered. CSIC is likewise confident in its ability to establish, based on undisputed facts, that it owes no duty to defend or indemnify the Defendants. CSIC should be allowed to make this showing in its declaratory relief action, as no viable grounds exist supporting the Defendants' request for a stay of these proceedings.

## III. MOTION TO STAY STANDARD

The Court has diversity over CSIC's claims pursuant to 28 U.S.C. § 1332. Federal courts sitting in diversity apply federal procedural law and state substantive law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Because a stay of an action is procedural, not substantive, the Court applies federal law to determine whether to grant a stay.[2] *Accord*, *James River Ins. Co. v. W.A. Rose Constr., Inc.*,

---

[2] As the duty to defend and indemnity inquiries are substantive, California and Texas state law on those issues is cited herein.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

No. 18-CV-02030-SI, 2018 WL 3023408, at *4 (N.D. Cal. June 18, 2018) (applying federal doctrine to address procedural stay of declaratory relief actions). The appropriate standard on a motion to stay is the standard from *Landis v. North American Co*., 299 U.S. 248 (1936).

In determining whether to grant a stay under *Landis*, the Court must weigh: (1) the possible damage that may result from granting the stay; (2) the hardship or inequity that a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (*citing Landis*, 299 U.S. at 254-55). The "proponent of the stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (*citing Landis*, 299 U.S. at 255). If there is "even a fair possibility" of harm to the opposing party, the movant "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

The Defendants rely, in part, on California state court decisions to support their argument for a stay. However, because a motion to stay in federal court is a procedural matter decided under federal law, the federal standard governs here. Nonetheless, state authorities similarly do not support the Defendants' position—they categorize a stay as a "drastic remedy" permitted only in limited circumstances, and only when continued litigation poses a risk of prejudice to the defendant. *Corrigan v. Bjork Shiley Corp.*, 182 Cal.App.3d 166, 173 (Cal. Ct. App. 1986). And, just like federal courts, they do not permit a stay when: (1) the coverage question is logically unrelated to the issues of consequence in the underlying case; and (2) the coverage action court can resolve the coverage question as a matter of law without making factual determinations that would prejudice the insured in the underlying suit. *Montrose Chem. Corp. v. Superior Ct.*, 5 Cal.App.4th 902, 908 (Cal. 1994)

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

(“*Montrose II*”); *Great Am. Ins. Co. v. Superior Court*, 178 Cal. App. 4th 221, 235 (Cal. Ct. App. 2009).

Where, as here, CSIC’s ability to establish a lack of coverage does not and will not turn on facts to be litigated in the Underlying Lawsuit, there is no reason for a mandatory stay under either federal or state law. The court must weigh prejudice to the insured against the recognized prejudice to the insurer if the court granted a stay, such as the insurer having a continued obligation to pay underlying defense costs indefinitely. *Montrose II*, 5 Cal.App.4th at 910 (“the trial court must consider the burden on the carriers”). That the defending insurer may have a right to reimbursement later does not cure this prejudice. *Great Am. Assurance Co. v. M.S. Indus. Sheet Metal, Inc.*, No. SACV11754JSTMLGX, 2011 WL 13228037, at *5 (C.D. Cal. Sept. 22, 2011) (holding that if stay were granted, the insurer would be prejudiced by “expenditure of unnecessary resources in [the underlying action] and a delay in reimbursement of unnecessary defense costs”); *accord*, *Great Am. Ins. Co.*, 178 Cal. App. 4th at 236 (Cal. Ct. App. 2009) (insurer’s right to reimbursement does not cure prejudice to insurer). Because a stay of a declaratory relief action results in acknowledged prejudice to the insurer, the “trial court should not hesitate to fashion orders which attempt to balance these conflicting concerns.” *Montrose II*, 25 Cal.App.4th at 910.

Here, while CSIC continues to dispute coverage, it has and continues to provide the Defendants with a full and vigorous defense in the Underlying Lawsuit, albeit while seeking to adjudicate its rights and obligations under the Policy in this instant action. This is precisely what courts encourage insurers to do. *See, e.g.*, *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1192 (Cal. Ct. App. 2000) (while “there is no particular requirement that an insurer ask the permission of a trial court before withdrawing from a defense, … it may be prudent for an insurer to obtain a declaratory judgment that it has no defense duty before

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

unilaterally withdrawing"). Because a stay is a "drastic remedy," and because CSIC's ability to establish no coverage under the Policy does not and will not turn on facts to be litigated in the Underlying Lawsuit, the Defendants' Motion to Stay must be denied.

## IV. ARGUMENTS & AUTHORITIES

### A. Exclusion 17 does not turn on facts to be adjudicated in the Underlying Lawsuit.

Before diving into the *Landis* factors, the Defendants generally argue for a stay because the facts CSIC and the Defendants will litigate in this Declaratory Judgment Action will overlap with the facts the Underlying Plaintiffs and the Defendants will litigate in the Underlying Lawsuit. On this point, the Defendants have the burden to prove that CSIC's coverage positions pose a risk of prejudice resulting from inconsistent factual determinations. *Great American*, 178 Cal.App.4th at 240-241. Considering the arguments set forth in their Motion to Stay, the Defendants have not met their burden, nor can they in this case.

In determining the duty to defend, in the first instance, courts consider the allegations in the underlying lawsuit as compared to the terms of the policy. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (Cal. 2005); *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009). In determining the duty to defend, both states allow a court to make reasonable inferences. *See Star-Tex Res., L.L.C. v. Granite State Ins. Co.*, 553 Fed. Appx. 366, 370 (5th Cir. 2014) (under the duty to defend, a court may "draw inferences from the petition") (internal citations and quotations omitted); *see also Wincor Nixdorf Inc. v. Discover Prop. & Cas. Ins. Co.*, No. CV1302772GAFFFMX, 2013 WL 12131718, at *5 (C.D. Cal. June 14, 2013) ("the duty to defend is determined," among other things, "from the facts and inferences known to an insurer from the

pleadings") (internal citations and quotations omitted); *Scottsdale*, 36 Cal. 4th at 655 (duty to defend determined by "any facts stated or inferable in the complaint"). Under California law, a finding of no duty to defend means there is no duty to indemnify. *Certain Underwriters at Lloyd's of London v. Superior Court (Powerine Oil Company)*, 24 Cal. 4th 945, 958 (Cal. 2001). In Texas, a finding of no duty to defend will lead to a finding of no duty to indemnify if it would be impossible to transform the claim as pleaded into a covered claim. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). Here, there is no duty to defend based on Exclusion 17, and under either state's standard, there is no duty to indemnify either.

As noted above, CSIC's argument is that Exclusion 17 eliminates a duty to defend and indemnify the Defendants in the Underlying Lawsuit under the Policy. The exclusion eliminates coverage for "Claims arising out of [the] actual or alleged…unauthorized access to, use or, or tampering with data or systems by any person." Exhibit A at p. 6. The exclusion applies because phishers obtained unauthorized access to the Underlying Plaintiffs' vendors' email systems, allowing them to send payment requests that appeared to be coming from the vendors' actual emails.

The Defendants mistakenly allege that allegations of "spoofed" emails alone are not enough evidence to prove that the claim arose out of "'unauthorized access' or 'tampering' with 'data' or systems," and that it "simply means someone created a false email address designed to look legitimate, an action that does not necessarily require any unauthorized access or tampering with data or systems." Dkt. 18-1 at p. 16-17. They further argue that Exclusion 17's applicability "will only be made after specialized forensic analysis and the rendering of expert opinion in the underlying action, neither of which has been completed at this time." Dkt. 18-1 at p. 17.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

In making this argument, the Defendants brush past important allegations in the Underlying Lawsuit. The Underlying Plaintiffs do not just allege that TGG was duped into sending money to the phishers because the phishers used strikingly similar "spoofed" email addresses to the real vendor email addresses—they further allege that the phisher's emails sought payment of "legitimate invoices" the Underlying Plaintiffs owed to their vendors. Exhibit B at p. 10, 12.[3] Phishers cannot replicate "legitimate invoices" for the exact amounts the Underlying Plaintiffs owe without having also obtained unauthorized access to the vendors' systems. While phishers and hackers are becoming more and more sophisticated, they are not psychic and cannot guess the exact amount of actual invoices to which they do not have access.

As stated above, both Texas and California courts can make reasonable inferences in determining the duty to defend, and the only reasonable inference to be made here is that the phishers must have had unauthorized access in order to obtain the invoices, thus triggering Exclusion 17. *See Star-Tex Res*, 553 Fed. Appx. at 370; *see also Wincor Nixdorf*. 2013 WL 12131718, at *5. This conclusion is buttressed by the Underlying Plaintiffs' allegations themselves, which state in several places that TGG failed to prevent "unauthorized access" by phishers. Exhibit B, at p. 9, 22, 25, 30.

Thus, CSIC can and will establish that the allegations in this case are not covered under the plain and clear terms of the Policy, regardless of who gained "unauthorized access" to the vendors' "data or systems." The issues in the Underlying Lawsuit such as who has the money, who was the "phisher", and TGG's

---

[3] This is consistent with documents that were forwarded to CSIC in conjunction with the claim – while real vendors sent the original invoices, in subsequent follow-up emails, the phisher (via "spoofed" email address) reattached the original invoices, seeking status of payment.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

screening protocols does not impact the application of Exclusion 17. This issue is resolvable without any risk of inconsistent factual determinations or any resulting prejudice to the Defendants. *See Nautilus Ins. Co. v. Acacia Mobile Home Park, LLC*, No. 23-CV-2072 JLS, 2024 WL 4713903, at *6 (S.D. Cal. Nov. 7, 2024) (finding declaratory action did not depend on issues yet to be to be litigated in the underlying action because there was "simply no factual overlap between the declaratory judgment" the insurer sought); *Columbia Cas. Co. v. Abdou*, No. 15cv80-LAB, 2015 WL 9244305, at *1 (S.D. Cal. Dec. 16, 2015) (stay motion denied because court could resolve the declaratory action "without reaching the merits of [the underlying plaintiff's] allegations by simply interpreting the policy's terms and examining the claims [the underlying plaintiff] makes in his lawsuit").

Moreover, the adjudication of CSIC's duty to indemnify the Defendants in the Underlying Lawsuit will be ripe for resolution once CSIC establishes there is no duty to defend, whether one views this under Texas or California law. *Certain Underwriters at Lloyd's of London*, 16 P.3d at 104; *Griffin*, 955 S.W.2d at 84. Thus, the Defendants are not entitled to a stay to the extent CSIC seeks a declaration that Exclusion 17 eliminates a duty to indemnify either.

Lastly, the Defendants erroneously include Exclusions 9 and 21 alongside Exclusion 17, likely in an attempt to conflate the duty to defend with indemnity issues. Dkt. 18-1 at p. 17-18. To clarify, CSIC's complaint states that Exclusion 9 and 21 only apply to the duty to *indemnify*. Dkt. 1 at p. 6. Due to the unique circumstances of this case, CSIC included some coverage defenses that only apply to the duty to indemnify in its complaint because, under Texas law (where this declaratory judgment action originated), in some instances, an insurer can have a duty to defend but ultimately no duty to indemnify. *Liberty Mut. Fire Ins. Co. v. Copart of Connecticut*, 75 F.4th 522, 536 (5th Cir. 2023). In Texas, the Defendants would not have been able to argue that the duty to defend must be stayed while the

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

Underlying Lawsuit resolves – Texas courts find the duty to defend ripe and justiciable because: (1) the duty is literally determined, in most instances, by what the underlying petition says (with some limited extrinsic evidence exceptions); and (2) the only thing that is potentially subject to a stay is the duty to indemnify, which is determined by facts developed in the underlying action unless there is no duty to defend and it would be impossible to transform the claim as plead into a covered claim.

As CSIC appreciates that the procedural landscape is different in California, contemporaneously with its filing of this opposition to the Motion to Stay, it is filing a Motion for Leave to amend its complaint, which removes the "duty to indemnify only" coverage defenses. This leaves Exclusion 17, the only coverage defense which applies to defense and indemnity. And, as before, what matters to the duty to defend is what a plaintiff alleges and claims. CSIC is prepared to, and should be permitted to, establish that there is no potential for coverage under the Policy based on the Underlying Plaintiffs' claims and allegations in the Underlying Lawsuit.[4]

**B. The first *Landis* factor does not support a stay because CSIC will be damaged by a stay.**

Turning to the *Landis* factors, the Defendants contend that any prejudice CSIC may suffer as a result of a stay of this action will be minimal. Dkt. 18-1 at p. 18-19. The Defendants ignore that CSIC collected no premium to pay for the Defendants'

---

[4] For the avoidance of doubt, CSIC is not abandoning its other coverage defenses, and is simply updating its complaint to permit resolution of the threshold question of whether Exclusion 17 applies as per California procedural law. CSIC reserves the right to rely on all coverage defenses on which it has previously reserved rights, or will reserve rights (depending on developments in the Underlying Lawsuit), which may become available depending on the results of the Underlying Lawsuit and this coverage action.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

defense in an action that is not potentially covered under the Policy. The reality is that CSIC has now assumed an obligation to defend the Defendants (under a reservation of rights) which legally does not exist. The Defendants can have no reasonable expectation of a defense for such an action.

The possibility of an insurer's continued obligation to defend an uncovered action is precisely the type of prejudice that courts have examined in considering a stay. *Great American, supra,* 178 Cal.App.4th at 236-237 (explaining the "court must also consider possible prejudice to the insurer … [which would be] required to continue to pay defense costs until the declaratory relief action is resolved."); *Montrose II,* 25 Cal.App.4th at 910 ("the trial court must consider the burden on the carriers."). Once again, the chance an insurer might obtain future reimbursement for defense costs does not mitigate the prejudice to an insurer whose declaratory relief action has been stayed, and the Defendants overplay their hand in suggesting that all courts have so held. *M.S. Indus. Sheet Metal, Inc.*, 2011 WL 13228037, at *5 (holding that if stay were granted, the insurer would be prejudiced by "expenditure of unnecessary resources in [the underlying action] and a delay in reimbursement of unnecessary defense costs"); *Montrose II*, 25 Cal.App.4th at 910 (explaining that when the insurer cannot obtain an early adjudication of its duty to defend, it "gets to keep paying and paying and paying."). Moreover, the Defendants' cited cases explain that "being required to defend a suit, **without more,** does not constitute a clear case of hardship or inequity within the meaning of *Landis*." *RLI Ins. Co. v. ACE Am. Ins. Co.*, No. 19-CV-04180-LHK, 2020 WL 1322955, at *4-*8 (N.D. Cal., Mar. 20, 2020) (emphasis added). As evidenced by CSIC's arguments here, the fact that CSIC will have to defend the Underlying Lawsuit is by no means the only reason a stay is inappropriate. Taken together with the other factors, this factor thus weighs against a stay.

**C. The second *Landis* factor does not support a stay because the**

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

**Defendants will not suffer hardship as a result of this case proceeding.**

The Defendants argue that it would be unfair for TGG "to fight a legal battle on two fronts." Dkt. 18-1 at p. 20. If this argument were persuasive, an insurer could never pursue a declaratory relief action in California while an underlying action is pending. A "two-front war" alone is not a sufficient argument to stay this action. *See N. River Ins. Co. v. Leffingwell Ag Sales Co.*, No. CV-F-10-2007 LJO MJS, 2011 U.S. Dist. LEXIS 8208, at *18-19 (E.D. Cal. Jan. 27, 2011). The Defendants' argument also ignores the facts and reality of this case.

Despite its firm and continued belief that the Underlying Plaintiffs' claims in the Underlying Lawsuit do not trigger any coverage obligation under the Policy, CSIC nonetheless agreed to defend the Defendants and is providing them with a vigorous defense. While CSIC could have declined coverage to the Defendants at the outset, and while that would have resulted in the Defendants then filing suit against CSIC seeking adjudication of these same issues while the Underlying Lawsuit was pending, CSIC chose to defend and to bring this instant Declaratory Relief Action. As noted above, that is what California courts encourage insurers to do. *Ringler*, *supra*, 80 Cal.App.4th at 1192. Under these circumstances, the Defendants' argument that they are fighting a "two-front war" is misguided because CSIC is defending them.

Also lacking in merit is the Defendants' argument that California courts disfavor insureds having to fight a legal battle on two fronts when the insurer is defending. Dkt. 18-1 at p. 20. The Defendants' cited case law does not address situations where there are no overlapping factual issues and the insurer is providing a defense, as is the case here. First, *International Ins. Co. of Hannover SE v. D.F. 2 Construction, Inc.* is distinguishable because the court, in granting a stay, was also persuaded that the facts to be litigated in the coverage action *might* overlap with the

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

facts in the underlying action. No. SACV190410, 2019 WL 8011736 at *3 (C.D. Cal., May 31, 20109). Second, *Continental Cas. Co. v. Global Allies, LLC*, is distinguishable because while the court found a stay was warranted (even though the underlying facts and coverage facts did not overlap), the court was persuaded to grant a stay because the insurer was not defending the insured (meaning there was no prejudice to the insurer if the court granted a stay). No. 2:11-CV-03237, 2012 WL 5289315, at *4 (E.D. Cal. Oct. 24, 2012). Third, *George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.* is distinguishable because the court, in deciding to grant a stay, was influenced by the fact that the insurer knew extrinsic facts that would support a duty to defend, but filed the declaratory judgment action anyway. 104 Cal. App. 4th 784, 803-04 (Cal. Ct. App. 2002). Finally, while the Defendants cite *Great American* for the proposition that the "two-front war" is a factor in granting a stay, they ignore the rest of the sentence – that the "two-front war" considerations must be balanced against "the insurer's interest in not being required to pay defense costs which it may not owe and likely will not be able to recoup…" *Great American*, 178 Cal. App.4th at 236.

Here, CSIC is providing a defense to the Defendants in the Underlying Lawsuit, and there are no overlapping factual issues with the applicability of Exclusion 17, so this factor does not weigh in favor of granting the Defendants' stay.

**D. The third *Landis* factor does not favor a stay because it will not contribute to the orderly administration of justice.**

Finally, the Defendants assert that the orderly administration of justice favors a stay. The orderly administration of justice does not require a stay because there are no overlapping factual issues and no chance of inconsistent rulings. As previously argued, Exclusion 17 relies upon whether the loss "arose out of" "unauthorized access" to "data or systems" as stated in the Underlying Plaintiffs'

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

complaint. The Court may proceed with ruling on this issue without any potential for an inconsistent ruling.

Moreover, the cases that Defendants rely upon for this portion of their argument concern coverage disputes with overlapping factual issues, once again making them distinguishable : *RLI Ins. Co.*, 2020 WL 1322955, at *5 (finding an overlap of factual issues with the underlying lawsuit); *Citizens Ins. Co. of Am. v. Chief Digital Advisors*, No. 20-cv-1075-MMA, at *3 (S.D. Cal. Dec. 22, 2020) (same); *N. River Ins. Co.*, 2011 U.S. Dist. LEXIS 8208, at *7 (same). There is no factual overlap between the Underlying Lawsuit and this coverage dispute. Factual issues in the Underlying Lawsuit, such as identifying the “phisher”, determining what TGG employee sent the money, TGG’s safety protocols, and how the money was sent, are unrelated to this case and are not required to determine the applicability of Exclusion 17.

Therefore, staying this coverage action would not contribute to the orderly administration of justice. Promptly addressing CSIC’s coverage issues will better serve the orderly administration of justice. Otherwise, CSIC will be denied timely justice on an issue that is ripe for the Court’s decision.

## CONCLUSION

For the foregoing reasons, CSIC’s Declaratory Relief Action should be permitted to proceed. The issues that CSIC will present in its motion for summary judgement regarding the duty to defend and indemnify the Defendants in the Underlying Lawsuit will not result in any risk of inconsistent factual determinations. To the contrary, that motion will turn on whether the Underlying Plaintiffs’ claims and allegations in the Underlying Lawsuit, as presented, are potentially covered under the Policy based on its plain and clear terms when taking into account established law. The only prejudice to the Defendants is the likelihood they will not

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

receive an unjustified defense at CSIC's expense. As a result, CSIC respectfully requests that Defendants' Motion to Stay be denied.

Respectfully submitted,

By: */s/ Sara Nau*
Sara Nau
ATTORNEY-IN-CHARGE
Admitted *Pro Hace Vice*
PHELPS DUNBAR, LLP
ONE SHELL PLAZA
910 Louisiana, Suite 4300
Houston, Texas 77002
Telephone (713) 626-1386
Facsimile (713) 626-1388
Email: sara.nau@phelps.com
**ATTORNEYS FOR PLAINTIFF CAPITOL SPECIALTY INSURANCE CORPORATION**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel, electronically, on February 14, 2025.

*/s/ Sara E. Nau*
SARA E. NAU