CapSpecialty® Capitol Specialty Insurance Corporation
A Stock Company
P. O. Box 5900
Madison, WI 53705-0900

# WHAT TO DO IF YOU HAVE A CLAIM OR POTENTIAL CLAIM OR INCIDENT

Send all notices of claims or potential claim notices, as well as other required material to:

| | |
|---|---|
| Email (Preferred): | claims@capspecialty.com |
| Or Mailing Address: | Capitol Specialty Insurance Corporation<br>Claims Department<br>P. O. Box 5900<br>Madison, WI 53705 |
| Or Overnight/Express: | Capitol Specialty Insurance Corporation<br>Claims Department<br>1600 Aspen Commons<br>Suite 300<br>Middleton, WI 53562 |
| Or Facsimile: | (608) 829-7411 |
| Or Toll Free: | 800-475-4450 (Select #3 for Claims) |

Please reference your policy for complete details relating to reporting requirements in connection with claims or potential claims, including what to include in your notices.

EXHIBIT
A


© 2016 CapSpecialty, Inc. All rights reserved.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.


© 2023 CapSpecialty, Inc. All rights reserved.

CapSpecialty
Especially now.

Capitol Specialty Insurance Corporation
A Stock Company

P. O. Box 5900
Madison, WI 53705-0900

# Declarations

## Miscellaneous E&O Policy

| | | | |
|---|---|---|---|
| Policy No.: | SGC0010268-05 | Renewal of Policy No: | SGC0010268-04 |
| Issuing Company: | Capitol Specialty Insurance Corporation | | |

**THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE POLICY DOES NOT COVER CLAIMS ARISING OUT OF ERRONEOUS ACTS THAT OCCUR PRIOR TO THE RETROACTIVE DATE OF THE POLICY OR AFTER THE EXPIRATION DATE OF THE POLICY.**

**THE LIMITS OF INSURANCE AVAILABLE TO PAY DAMAGES, SETTLEMENTS AND JUDGMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF CLAIM EXPENSES.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER. CERTAIN PROVISIONS RESTRICT COVERAGE.**

**WORDS AND OR PHRASES, OTHER THAN TITLES OR CAPTIONS, THAT APPEAR IN BOLD PRINT HAVE SPECIAL MEANING AND ARE DEFINED IN THE POLICY.**

| | |
|---|---|
| **Item 1.** **First Named Insured** and Mailing Address: | TGG Management Company, Inc.<br>21750 Hardy Oak Blvd Ste 104 PMB 63328<br>San Antonio, TX 78258 |
| **Item 2.** Other **Named Insured(s)**: | None |

| | | |
|---|---|---|
| **Item 3.** **Policy Period**: | **Effective Date** | **Expiration Date** |
| | May 18, 2023 | May 18, 2024 |

12:01 a.m. standard time at the mailing address of the **First Named Insured** as shown in Item 1. above.

**Item 4.** **Insured Activities**:

Accounting services to include providing services as an interim or fractional CFO; financial consulting to include development of metrics, operational reporting, cash flow analysis, forecasting, budgeting, planning, bench marking; strategic management consulting.

| | | | | |
|---|---|---|---|---|
| **Item 5.** **Retroactive Date**: | March 08, 2010 | | | |
| **Item 6.** Limits of Insurance: | a. | $ | 2,000,000 | Each **Erroneous Act** |
| | b. | $ | 2,000,000 | Aggregate |
| **Item 7.** Deductible: | | $ | 50,000 | Each **Erroneous Act** |

**Item 8.** Premium and Applicable Taxes / Fees:

| | | |
|---|---|---|
| Policy Period Premium: | [redacted] * | |

* The Issuing Company is not responsible for and does not collect or file surplus lines taxes or any other applicable fees. It is the responsibility of the surplus lines producing agent to determine such amounts, and collect and file those taxes and fees in accordance with the applicable state's surplus lines laws and/or regulations.

**Item 9.** Forms and Endorsements:

| | | |
|---|---|---|
| | WHAT TO DO IF YOU HAVE A CLAIM OR POTENTIAL CLAIM OR INCIDENT | N-200 (09/16) |
| | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSET CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS | N-159 (02/23) |
| | Declarations | D-M-1000 (11/17) |
| | Miscellaneous E&O Policy | P-M-CW2000 (05/18) |
| 1 | Service of Suit | E-9000 (04/21) |
| 2 | Bilateral Extended Reporting Period Change Endorsement | E-AM-4000 (05/18) |
| 3 | Definition of Insured Extension Endorsement - Independent Contractors | E-M-4006 (05/18) |
| 4 | Financial Related Services Change Endorsement | E-M-5055 (05/18) |
| 5 | Insurance Services Exclusion | E-M-4350 (06/17) |
| 6 | Settlement - Right to Settle Change Endorsement | E-AM-4092 (05/18) |


© 2017 CapSpecialty, Inc. All rights reserved.

CapSpecialty Especially now.
Capitol Specialty Insurance Corporation
A Stock Company
P. O. Box 5900
Madison, WI 53705-0900

# Declarations

| Policy No.: | SGC0010268-05 |
| --- | --- |
| **First Named Insured:** | TGG Management Company, Inc. |

| | | |
| --- | --- | --- |
| 7 | Supplementary Payments Extension | E-AM-4126 (05/18) |
| 8 | Unsolicited Communications Exclusion Endorsement | E-AM-4020 (05/18) |
| | CALIFORNIA - NOTICE | D-2 |
| | Policy Signature Page | BJP 190 (01-20) |

THESE DECLARATIONS, THE POLICY AND ANY ENDORSEMENTS THERETO, AND THE APPLICATION, CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE ISSUING COMPANY AND THE INSURED RELATING TO THIS INSURANCE.

In Witness Whereof, we have caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by our authorized representative.

Suzanne M Broadbent
Secretary

[signature]
President

[signature]
Authorized Representative

May 23, 2023
Date


© 2017 CapSpecialty, Inc. All rights reserved.

# Capitol Specialty Insurance Corporation

P. O. Box 5900
Madison, WI 53705-0900

## Miscellaneous E&O Policy

**THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY EXTENDED REPORTING PERIOD. COVERAGE IS SUBJECT TO ALL TERMS AND CONDITIONS OF THE POLICY. THE POLICY DOES NOT COVER CLAIMS ARISING OUT OF ERRONEOUS ACTS THAT OCCUR PRIOR TO THE RETROACTIVE DATE OF THE POLICY OR AFTER THE EXPIRATION DATE OF THE POLICY. THE LIMIT OF INSURANCE AVAILABLE TO PAY DAMAGES, SETTLEMENTS AND JUDGMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF CLAIM EXPENSES. PLEASE READ THE ENTIRE POLICY CAREFULLY. CERTAIN PROVISIONS RESTRICT COVERAGE.**

**WORDS AND PHRASES, OTHER THAN TITLES OR CAPTIONS, THAT APPEAR IN BOLD PRINT HAVE SPECIAL MEANINGS AND ARE DEFINED SEPARATELY. WHENEVER A SINGULAR FORM OF A WORD IS USED, THE SAME WILL INCLUDE THE PLURAL WHEN REQUIRED BY CONTEXT.**


| | |
|---|---|
| Part I | Insuring Agreement |
| Part II | Exclusions |
| Part III | Definitions |
| Part IV | Defense and Settlement of **Claims** |
| Part V | Where and When Coverage Applies |
| Part VI | Limit and Deductible |
| Part VII | Conditions |
| Part VIII | Application is Part of Policy |


In consideration of payment of premium and in reliance on all statements made and the information contained in the Application for Insurance and subject to all terms and conditions of this Policy, the **Company** agrees with the **Insured** as follows:

**PART I INSURING AGREEMENT**

A. The **Company** will pay on an **Insured's** behalf, those sums in excess of the Deductible and up to the applicable Limit of Insurance specified on the Declarations Page, that an **Insured** becomes legally obligated to pay as **Damages** or **Claim Expenses** because of **Claims** first made during the **Policy Period** or any Extended Reporting Period and resulting from **Erroneous Acts**.

B. **Erroneous Act** means the following actual or alleged conduct by an **Insured**, or by any person or organization for which an **Insured** is legally liable, and which results from the performance of **Insured Activities** for others:

1. A negligent act, error or omission;
2. Libel, trade libel, slander, product disparagement, or any other form of defamation or harm to the character, feelings or reputation of any person or entity;
3. Infliction of emotional distress, mental anguish, outrage, or outrageous conduct, except when excluded as **Bodily Injury** by **PART II** A. 1.;
4. Publication of material that violates a person's right to privacy, including false light and breach of confidence;
5. Infringement of the right of private occupancy including trespass, eavesdropping, intrusion, public disclosure of private facts, and wireless signal interception;
6. False arrest, detention or imprisonment;
7. Wrongful entry into or eviction of a person from a room, dwelling or premises that the person occupies;
8. Malicious prosecution;
9. Misappropriation of name or likeness; or
10. Unintentional introduction of a virus or other malicious code into data or systems.

**PART II EXCLUSIONS**

A. The **Company** is not liable for **Damages** or **Claim Expenses** or obligated to defend **Claims** arising out of actual or alleged:

1. **Bodily Injury** or **Property Damage**;
2. Infringement of copyright, false attribution of authorship, passing off, plagiarism or misappropriation of ideas under implied contract;

 © 2018 CapSpecialty, Inc. All rights reserved. 

3. Infringement of trademark, trade name, trade dress, service mark, service name, title or slogan;
4. Infringement of patent;
5. Unfair competition, restraint of trade, or any other violation of antitrust laws;
6. Misappropriation or theft of trade secrets;
7. Unlawful discrimination or harassment including that based upon race, creed, color, religion, national origin, age, disability, sex, marital status or sexual orientation;
8. Employment related practices and policies of the **Insured**;
9. Gain, profit or advantage to which an **Insured** is not legally entitled;
10. Intentional removal from or denial of access to services an **Insured** has agreed to provide;
11. Liability assumed under any contract or agreement, but this exclusion does not apply to liability an **Insured** would have in the absence of such contract or agreement;
12. Acts by an **Insured** related to any pension, healthcare, welfare, profit sharing, mutual or investment plans, funds or trusts; or any violation of any provisions of the Employee Retirement Income Security Act of 1974 (the "Act"), or any amendment, regulation, ruling or order issued pursuant to the Act or any similar provisions of any federal, state or local law;
13. Violation of:
    a. The Securities Act of 1933 as amended;
    b. The Securities Exchange Act of 1934 as amended;
    c. Any state blue sky or securities law;
    d. Any similar state or federal law; or
    e. Any order, ruling or regulation issued pursuant to the above laws;
14. Bankruptcy, insolvency, receivership, liquidation and/or cessation of operations of an **Insured** or other entity over which an **Insured**, by reason of ownership interest or otherwise, asserts influence or control;
15. Electrical failure, including any electrical power interruption or surge, brownout, blackout, short circuit, over voltage, induction, power fluctuations or satellite failure; regardless whether the electrical failure was caused by another event or condition;
16. Actual or threatened discharge, dispersal or release of any **Pollutant**; or the creation of an injurious condition involving any **Pollutant**; or the existence of any **Pollutant** on any property, or the cleanup, removal, testing, monitoring, containment, treatment, detoxification or neutralization of any **Pollutant**. This exclusion is effective whether or not the pollution was sudden, accidental, gradual, intended, expected or preventable and whether or not an **Insured** caused or contributed to the pollution.

    **Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to:
    a. Smoke, vapor, soot, fumes, acids, alkalis, chemicals, lead, mold or asbestos;
    b. Hazardous, toxic or radioactive matter or nuclear radiation;
    c. Waste, which includes material to be recycled, reconditioned or reclaimed; or
    d. Any other pollutant as defined by applicable federal, state or local statutes, regulations, rulings or ordinances;
17. Unauthorized access to, use of, or tampering with data or systems by any person;
18. Intentional introduction of a virus or other malicious code into data or systems;
19. False or misleading advertising about an **Insured** or its goods or services;
20. Criminal, dishonest, fraudulent, malicious or knowingly wrongful acts by any **Insured**. If a **Claim** would invoke the **Company's** duty to defend but for allegations of such acts, then the **Company** will defend the **Claim** until there is a finding by a jury, judge or arbitrator or an admission by an **Insured**, or by a person who would be an **Insured** if that person had not acted outside the scope of his or her duties, that there were such acts. The **Company** will not pay any settlement or judgment associated with such finding or admission, and the **Company** retains the right to seek reimbursement of **Claim Expenses** paid from the party found to have committed such acts or made such an admission.

    In no event will the **Company** defend the **Insured** against or in criminal proceedings, regardless of the allegations;


© 2018 CapSpecialty, Inc. All rights reserved.

21. Breach of contract; however, this will not exclude coverage for **Claims** alleging negligent performance of **Insured Activities**;
22. Breach of warranty or guarantee; or
23. Misconduct raised in an administrative or regulatory action brought by any governmental agency or entity.

B. The **Company** is not liable for **Damages** or **Claim Expenses** or obligated to defend **Claims** made by or on behalf of:

1. Any entity which is a parent, affiliate, subsidiary, or co-venturer of an **Insured** or any other entity over which an **Insured**, by reason of ownership interest or otherwise, asserts influence or control;
2. Any entity directly or indirectly controlled, operated or managed by an entity described in **PART II** B. 1. above;
3. Any provider who has supplied, is supplying or is to supply **Content**, goods or services, if the **Claim** arises out of a dispute over fees for, or title, ownership or exercise of rights in the **Content**, goods or services provided; or
4. Any **Insured**.

**PART III DEFINITONS**

**(Some bold-faced words may be defined in other parts of the Policy.)**

A. **Bodily Injury** means physical injury, sickness, disease or death, as well as mental anguish, mental injury, shock or fright resulting in or from physical injury, sickness, disease or death.

B. **Claim** means a suit, a written demand or a written assertion of a legal right, any of which seek **Damages** against an **Insured**.

C. **Claim Expenses** means expenses incurred by the **Company** in the investigation, adjustment, negotiation, arbitration, mediation, settlement and defense of **Claims**.

**Claim Expenses** include:

1. Expenses the **Company** incurs, other than salary, wages or expenses of the **Company's** regular employees;
2. Reasonable fees charged by attorneys selected or pre-approved by the **Company** to defend an **Insured**;
3. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. The **Company** will not apply for or furnish these bonds; and
4. Reasonable expenses incurred by an **Insured** at the **Company's** request.

**Claim Expenses** do not include:

1. Loss of earnings or profit by any **Insured**; or
2. Salaries, wages, fees, or other compensation payable to any **Insured**.

D. **Company** refers to the Insurer named on the Declarations Page.

E. **Content** means informational data including words, pictures, graphics, artwork and code however transmitted and however received. **Content** does not include advertising about an **Insured** or its goods or services; or messages sent on an individual basis or other one-to-one communications.

F. **Damages** means:

1. Amounts which an **Insured** is legally obligated to pay as a result of a covered judgment, award or settlement;
2. Costs assessed against an **Insured** in any suit or proceeding defended by the **Company** unless such costs are assessed as a sanction for an **Insured's** delay or misconduct in the litigation process;
3. Pre-judgment interest and post-judgment interest assessed before the **Company** has paid, offered to pay or deposited in court the part of the judgment that is covered by this Policy and that is within the applicable Limit of Insurance; and
4. Punitive, exemplary or multiple damages, where insurable by law.

**Damages** does not include:

1. Taxes, criminal or civil fines or penalties imposed by law;
2. Production costs, or the cost of reprinting, recalling, recovering, shipping, correcting, reprocessing, restoring, repairing, replacing, reproducing or re-performing **Insured Activities**; or
3. Royalties or restitution paid or payable by an **Insured**; disgorgement of an **Insured's** profits; costs of complying with an order granting injunctive relief; or disputed: fees, charges, or commissions for goods or services.

G. **First Named Insured** means the **Named Insured** specified on the Declarations Page.


© 2018 CapSpecialty, Inc. All rights reserved.

H. **Insured Activities** means performance of services for others as specified on the Declarations Page. **Insured Activities** also means creation and/or dissemination of **Content** when done in the normal course of performing the specified services.

I. **Insured** refers individually and collectively to:

1. The **First Named Insured**;
2. **Named Insured(s)**;
3. A **Named Insured's** partners, officers, directors, employees or stockholders while acting within the scope of their duties on behalf of the **Named Insured**;
4. A **Named Insured's** former partners, officers, directors, employees or stockholders while acting within the scope of their duties on behalf of the **Named Insured**; and
5. The estate, the heirs, assigns or legal representatives of an **Insured** in the event of death, bankruptcy or incompetency of an **Insured** under this Policy but only for **Claims** arising from the **Erroneous Acts** of such deceased, bankrupt or incompetent **Insured**.

J. **Named Insured** means:

1. The person(s) or entity(ies) specified on the Declarations Page; and
2. Any entity which is created or acquired during the **Policy Period** and which after the creation or acquisition is wholly owned by a **Named Insured**; however, such entity only has coverage under this Policy:

   a. For **Insured Activities** performed on or after the date of creation or acquisition of the new entity; and

   b. If the **Named Insured** advises the **Company** of the creation or acquisition and provides information as requested by the **Company** for evaluation; and

   c. If the **First Named Insured** pays any additional Premium the **Company** assesses as a result of the change; and

   d. If the **Company** issues an endorsement to include the newly created or acquired entity.

   The **Company** will consider a created or acquired entity to be wholly owned by a **Named Insured** if the **Named Insured** has a greater than 50% ownership interest in the entity.

   If all of the requirements of this **PART III** J. 2. are met and the **Company** agrees to include the newly created or acquired entity as a **Named Insured**, such newly created or acquired entity will be a **Named Insured** retroactively as of the date of creation or acquisition. However, if all of the requirements of this **PART III** J. 2. are not met within sixty (60) days of the acquisition or creation, such newly created or acquired entity may be included as a **Named Insured**, but only if the **Company** agrees and the **Company** will determine the effective date on which the newly created or acquired entity will be a **Named Insured**.

K. **Policy Period** means the period of insurance specified on the Declarations Page or a shorter period resulting from cancellation of the Policy.

L. **Property Damage** means:

1. Injury to, or impairment or destruction of, any tangible property, including the loss of use thereof; or
2. Loss of use of tangible property which has not itself been physically injured, impaired, or destroyed.

Tangible property does not include electronically stored information or data.

M. **Retroactive Date** means the date specified on the Declarations Page.

**PART IV DEFENSE AND SETTLEMENT OF CLAIMS**

A. DEFENSE/SELECTION OF DEFENSE COUNSEL

The **Company** has the right and duty to defend a covered **Claim** against an **Insured**, regardless whether the allegations of the **Claim** are meritless, false or fraudulent. The **Company** has the right to select defense counsel to defend the **Insured**.

B. SETTLEMENT

1. An **Insured** may not, except at its own non-reimbursable cost, settle any **Claim**, admit any liability or incur any expense without the **Company's** prior written consent.

 © 2018 CapSpecialty, Inc. All rights reserved. 

2. The **Company** has the right to settle all **Claims** subject to the **First Named Insured's** consent. The **Company** will not settle any **Claim** without the consent of the **First Named Insured**. However, if the **First Named Insured** refuses to consent to any settlement recommended by the **Company**, then the **Company's** liability for the **Claim** will be limited to the amount equal to the amount for which the **Claim** could have been settled plus **Claim Expenses** incurred up to the date of the **First Named Insured's** refusal to consent to settlement minus the amount of the Deductible specified on the Declarations Page. The **Company** will mail payment of that amount to the **First Named Insured** and will have no further obligation with respect to the **Claim**.

   The **First Named Insured's** failure to express consent to a settlement recommended by the **Company** will be deemed refusal to consent to the settlement.

**PART V WHERE AND WHEN COVERAGE APPLIES**

A. TERRITORY

This Policy applies to **Erroneous Acts** committed anywhere in the world provided that the **Claim** is first brought in the United States of America (including its territories and possessions), Puerto Rico or Canada.

B. WHEN

1. **Claims** First Made

   This Policy applies to **Claims** first made against an **Insured** during the **Policy Period**. The **Company** will consider a **Claim** to be first made against an **Insured** when a written **Claim** is first received by an **Insured** during the **Policy Period** or any Extended Reporting Period. All terms and conditions of this Policy in effect on the date the **Claim** is first made will apply to the **Claim**.

2. **Erroneous Acts**

   This Policy applies to **Claims** arising from **Erroneous Acts** that occur after the **Retroactive Date** and before the Expiration Date of the Policy. Such **Claims** will be covered:

   a. Subject to all terms and conditions of the Policy; and

   b. Unless an **Insured** had actual or constructive knowledge of the circumstances or incident(s) which led to the **Claim** and reason to believe it would result in a **Claim**, prior to the Effective Date of the first Miscellaneous E&O Policy issued to an **Insured** by the **Company** or any affiliate thereof.

3. Reported **Erroneous Acts**

   The **Company** will cover a written **Claim** first made against an **Insured** after the end of the **Policy Period**, but only if all of the following conditions are met:

   a. The **Erroneous Act** is committed after the **Retroactive Date** and before the Expiration Date of the Policy;

   b. The **Company** receives written notice from an **Insured** during the **Policy Period** of the **Erroneous Act**. The notice must include all of the following information:

      (1) The names of all persons and/or organizations involved in the **Erroneous Act**;

      (2) The specific person or organization likely to make the **Claim**;

      (3) A description of the time, place and nature of the **Erroneous Act**, and

      (4) A description of potential **Damages**;

   c. No **Insured** had actual or constructive knowledge, prior to the Effective Date of the first Miscellaneous E&O Policy issued by the **Company** or any affiliate thereof to an **Insured**, of a circumstance or incident that could reasonably have been expected to lead to the **Claim**; and

   d. There is no other valid and collectible insurance for the **Claim**.

   A **Claim** first made after the end of the **Policy Period** and meeting all of the above conditions will be deemed to have been made on the last day of the **Policy Period**. All terms and conditions of this Policy in effect on that day will apply to the **Claim**.

4. Extended Reporting Period

   a. In the event of cancellation or non-renewal of this Policy by the **Company**, for reasons other than non-payment of Premium and/or Deductible or non-compliance with the terms and conditions of this Policy, the **First Named Insured** will have the right to purchase an Extended Reporting Period as follows:

      (1) The right to purchase the Extended Reporting Period will terminate unless written notice of the **First Named Insured's** intention to purchase it, together with payment of the additional Premium due, is received by the **Company** within thirty (30) days after the effective date of the cancellation or non-renewal;

 © 2018 CapSpecialty, Inc. All rights reserved. 

(2) The additional Premium for the Extended Reporting Period will be calculated as a percentage of the annual Premium in accordance with the chart below. The percentages shown are the minimums; the actual additional Premium Surcharge may be higher:

[redacted]

The additional Premium for the Extended Reporting Period will be fully earned upon inception of the Extended Reporting Period. Once purchased, the Extended Reporting Period may not be cancelled;

(3) A **Claim** made during the Extended Reporting Period will be deemed to have been made on the last day of the **Policy Period**. All terms and conditions of this Policy in effect on that day will apply to the **Claim**; and

(4) The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided nor does it provide an additional or renewed Aggregate Limit of Insurance. It applies only to **Claims** made against an **Insured** during the Extended Reporting Period for **Erroneous Acts** that occur after the **Retroactive Date** and before the Expiration Date of the Policy.

b. In the event the **First Named Insured** elects to cancel or non-renew this Policy, the **Company** may offer an Extended Reporting Period at its discretion.

5. Multiple **Claims**

All **Claims** arising from the same **Erroneous Act** will be considered to have been made on the earlier of the following times:

a. The date the first of those **Claims** is made against an **Insured**; or

b. The date the **Company** first receives an **Insured's** written notice of the **Erroneous Act**. Such notice must include information as required in **PART V** B. 3. b. of this Policy.

The terms and conditions of this Policy in effect on that date will apply to all such **Claims**.

6. Related **Erroneous Acts**

All **Erroneous Acts** that are committed after the **Retroactive Date** and before the Expiration Date of the last Miscellaneous E&O Policy issued to an **Insured** by the **Company** or any affiliate thereof, and are logically or causally connected by common facts, circumstances, transactions, events and/or decisions, will be treated under this Policy as one **Erroneous Act** and deemed to have occurred on the date of the first of the **Erroneous Acts**.

## PART VI LIMIT AND DEDUCTIBLE

A. LIMIT OF INSURANCE

1. Each **Erroneous Act** Limit of Insurance

The Each **Erroneous Act** Limit of Insurance specified on the Declarations Page is the most the **Company** will pay for **Damages** and **Claim Expense**s combined for the total of all **Claims** made during the **Policy Period** and any Extended Reporting Period arising from each **Erroneous Act**, no matter how many:

a. **Insureds** this Policy covers;

b. **Claims** are made; or

c. Persons or organizations make **Claims**.

2. Aggregate Limit of Insurance

The Aggregate Limit of Insurance specified on the Declarations Page is the most the **Company** will pay for **Damages** and **Claim Expenses** combined for the total of all **Claims** made during the **Policy Period** and any Extended Reporting Period, no matter how many:

a. **Insureds** this Policy covers;

b. **Claims** are made;

c. Persons or organizations make **Claims**; or

 © 2018 CapSpecialty, Inc. All rights reserved. 

d. **Erroneous Acts** are committed.

Each payment the **Company** makes for **Damages** or **Claim Expenses** reduces the Each **Erroneous Act** Limit of Insurance and the Aggregate Limit of Insurance.

The **Company** will not be obligated to pay or reimburse any **Damages** or **Claim Expenses** or defend any **Claim** after the applicable Limit of Insurance is exhausted.

B. DEDUCTIBLE

The Deductible amount is the amount specified on the Declarations Page for each **Erroneous Act**. The **Company's** obligation to pay **Damages** and **Claim Expenses** applies only to sums in excess of the Deductible. The application of the Deductible will not erode the Each **Erroneous Act** Limit of Insurance or the Aggregate Limit of Insurance.

If the total of **Damages** and **Claim Expenses** for any **Claim** is within the Deductible, the **Company** will have no duty to pay **Damages** or **Claim Expenses** for the **Claim**.

If, at the **Company's** option, the **Company** has paid part or all of any Deductible, the **Insured** will be obligated to reimburse such amounts to the **Company** upon demand.

**PART VII CONDITIONS**

A. SPECIAL RIGHTS AND DUTIES OF THE **FIRST NAMED INSURED**

The **First Named Insured** is responsible for the payment of all Premiums and Deductibles. The **First Named Insured** has exclusive authority to act on behalf of all **Insureds** with respect to matters relating to this Policy, including:

1. Giving and receiving of all required notices;
2. Receiving of return Premiums;
3. Agreeing to any changes to this Policy; and
4. Purchasing an Extended Reporting Period.

B. WHAT TO DO IF AN **INSURED** HAS A **CLAIM**

If there is a **Claim**, or a circumstance or incident likely to result in a **Claim**, the **Insured** must promptly do the following:

1. The **Insured** must notify the **Company** in writing as soon as practicable of a **Claim** or a circumstance or incident likely to result in a **Claim**. Refer to the "WHAT TO DO IF YOU HAVE A CLAIM OR POTENTIAL CLAIM OR INCIDENT" notice attached to the front of this Policy for Claims Department contact information.

   The notice to the **Company** must include all of the following information:

   a. The names of all persons and/or organizations involved in the **Erroneous Act**;
   b. The specific person or organization likely to make the **Claim**;
   c. A description of the time, place and nature of the **Erroneous Act**; and
   d. A description of potential damages;
2. Send the **Company** copies of all demands, notices, settlement offers, summonses or legal papers received in connection with the **Claim** or potential **Claim**;
3. Upon the **Company's** request, authorize the **Company** to obtain records and other information;
4. Cooperate with and assist the **Company** in the investigation, settlement and defense of the **Claim**; and
5. Cooperate with and assist the **Company**, upon the **Company's** request, in enforcing any rights of contribution or indemnity against another party who may be liable to an **Insured**.

C. LEGAL ACTION AGAINST THE **COMPANY**

1. No person or organization has a right under this Policy to join the **Company** as a party or otherwise bring the **Company** into a suit against an **Insured**.
2. No action may be brought against the **Company** unless the **Insured** has fully complied with all terms and conditions of this Policy.

D. BANKRUPTCY

The bankruptcy or insolvency of an **Insured** or an **Insured's** estate will not relieve the **Company** of its obligations under this Policy nor deprive the **Company** of its rights or defenses under this Policy.


© 2018 CapSpecialty, Inc. All rights reserved.

E. SUBROGATION

The **Insured** and the **Company** may have rights to recover all or part of any payment an **Insured** or the **Company** makes under this Policy. If so, the rights of the **Insured** are transferred to the **Company**.

The **Insured** must do nothing to impair such rights. At the **Company's** request, the **Insured** will do everything necessary to secure such rights and help the **Company** enforce them, including the execution of documents necessary to enable the **Company** to effectively bring suit. Any recoveries will be applied as follows:

1. First, to the **Company** up to the amount of its payment for **Damages** and **Claim Expenses**; and
2. Second, to the **Insured** as recovery of Deductible amounts paid as **Damages** and **Claim Expenses**.

F. CHANGE OF OPERATIONS

This Policy applies only to **Insured Activities** specified on the Declarations Page. The **First Named Insured** agrees to notify the **Company** of any material changes to any **Insured's** operations and activities. If these changes in operations or activities result in a substantial change to an **Insured's** exposure, the **Company** has the right to modify the coverage provided or make adjustments to the Premium or rates charged for any coverage provided.

G. TRANSFER OF **INSURED'S** RIGHTS AND DUTIES UNDER THIS POLICY

An **Insured's** rights and duties under this Policy may not be transferred without the **Company's** prior written consent.

H. NO WAIVER OR CHANGE OF TERMS

Notice or knowledge possessed by any person will not effect a waiver or a change in any part of this Policy or estop the **Company** from asserting any rights under the terms of the Policy; nor will the terms of this Policy be waived or changed except by written endorsement issued by the **Company**.

I. CANCELLATION; NO OBLIGATION TO RENEW

1. The **First Named Insured** may cancel this Policy by mailing or delivering to the **Company** advance written notice of cancellation. If the **First Named Insured** cancels this Policy, the return Premium will be calculated as 90% of the pro-rated return Premium.
2. The **Company** may cancel this Policy by mailing or delivering to the **First Named Insured** written notice of cancellation at least:
   a. Ten (10) days before the effective date of cancellation for nonpayment of Premium; or
   b. Thirty (30) days before the effective date of cancellation for any other reason or as otherwise specified by state law.
3. The **Company** will mail or deliver its notice to the **First Named Insured's** last known mailing address. Notice of cancellation will state the effective date of the cancellation. This Policy will expire on that date. If this Policy is cancelled, the **Company** will send the **First Named Insured** any return Premium due. The **Company's** payment or tender of unearned Premium is not a condition of cancellation. If notice is mailed, proof of mailing will be sufficient proof of notice.
4. The **Company** will not be obligated or required to renew this Policy. Any offer of renewal of terms involving a change of Deductible, Premium, Limit of Insurance, or other terms and conditions will not constitute, nor be construed as, a refusal by the **Company** to renew this Policy. The **Company** may elect to non-renew this Policy by mailing to the **First Named Insured** at least thirty (30) days advanced written notice or notice as otherwise specified by state law.

J. OTHER INSURANCE

The insurance afforded by this Policy is in excess over any other valid and collectible insurance available to the **Insured**, except insurance specifically arranged by the **First Named Insured** to apply in excess of this insurance.

K. REPRESENTATIONS

By accepting this Policy, the **Insured** agrees:

1. The statements in the Application or Renewal Application furnished to the **Company** are accurate and complete;
2. The statements and representations in any and all attachments submitted with the Application, Renewal Application, or in connection with the application process and other information furnished to the **Company** are true and accurate;
3. Those statements furnished to the **Company** are representations the **First Named Insured** made on behalf of all **Insureds**;


© 2018 CapSpecialty, Inc. All rights reserved.

4. Those representations are a material inducement to the **Company** to issue this Policy;
5. The **Company** has issued this Policy in reliance upon those representations; and
6. If this Policy is a renewal of a Policy issued by the **Company**, the **Insured's** representations include the representations made in all previous Applications for previous Policies issued by the **Company**. The representations made by the **Insured** on an Application apply as of the Effective Date of the Policy issued in reliance upon that Application.

**PART VIII APPLICATION IS PART OF THE POLICY**

The Application or Renewal Application, as well as any attachments thereto, furnished to the **Company** as part of the application process will be kept on file by the **Company** and deemed attached to the Policy as if physically attached to it.


© 2018 CapSpecialty, Inc. All rights reserved.

| | |
|---|---|
| Endorsement No.: | 1 |
| Endorsement Effective Date: | 05/18/2023<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | SGC0010268-05 |
| Issued to: | TGG Management Company, Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Service of Suit

This endorsement modifies insurance provided under the following:

Miscellaneous E&O Policy

It is hereby understood and agreed that:

In any cause of action arising under this policy, or certificate, cover note, or other confirmation of this insurance issued by your surplus lines agent, we will, at your request, submit to the jurisdiction of a court of competent jurisdiction within the United States. However, nothing herein constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. In any suit instituted against us upon this policy, we will abide by the final decision of such court or of any appellate court in the event of appeal.

All lawful process may be served in any action, suit or proceeding instituted by, or on behalf of, you or any beneficiary under this policy, against us arising out of this policy, upon:

Chief Claims Officer
Capitol Specialty Insurance Corporation
1600 Aspen Commons
Suite 300
Middleton, Wisconsin 53562-4718

Pursuant to any law of any state, the District of Columbia or territory of the United States which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other applicable individual specified for that purpose in the applicable statute or regulation, or his successor or successors in office, as attorney or agent for receipt of lawful service of process as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this policy. We hereby designate the above-named as the person to whom the said individual, surplus lines producer, or any applicable state surplus lines association or stamping office is authorized to mail such process or a true copy thereof. The service of process as set forth above and below is cumulative to any other methods which may be provided by law for service of process upon us.

THE LANGUAGE OF THIS ENDORSEMENT ABOVE IS MODIFIED IN EACH APPLICABLE STATE AS SET FORTH BELOW TO COMPLY WITH CERTAIN STATE SPECIFIC REQUIREMENTS AND DISCLOSURES:

**California**

For any cause of action arising under any surplus lines insurance contract issued or delivered in California, service may be made upon the Insurance Commissioner or his successor or successors in office pursuant to the procedures set forth in Cal. Ins. Code §§ 1610 to 1620. It is further agreed that by assuming surplus lines insurance, we subject ourselves to Chapter 6 of the California Insurance Code.

**Delaware**

For any cause of action arising under a surplus lines insurance policy or contract issued or delivered by us in Delaware, service of process in such action may be made upon the Insurance Commissioner of the State of Delaware as provided for in specific state laws and/or regulations.

**Florida**

For any cause of action, suit or proceeding arising under a policy or contract issued by us in Florida, service of process shall be made upon the Chief Financial Officer of the State of Florida or other designee as provided for in specific state laws and/or regulations.

**Illinois**

For any action, suit or proceeding arising out of any insurance we write that is delivered pursuant to 215 Ill. Comp. Stat. § 5/445, service of process in such suit may be made upon the Director of the Illinois Department of Insurance and his successor or successors in office or other designee as provided for in specific state laws and/or regulations.


© 2021 CapSpecialty, Inc. All rights reserved.

Includes material copyrighted by Insurance Services Office, Inc., used with permission.

# Service of Suit

**Maine**

For any cause of action arising out of the solicitation, effectuation, or delivery of any insurance contract in Maine, or the performance in Maine of any other service or transaction connected with such insurance by or on behalf of us, we agree that service of process shall be made upon the superintendent and his successors in office pursuant to specific state laws and/or regulations.

**North Dakota**

For any cause of action arising out of our transaction of surplus lines business in North Dakota, service of process in such suit must be made upon the North Dakota Commissioner of Insurance pursuant to specific state laws and/or regulations.

**New York**

For any proceeding brought against us on a contract issued in New York, service of process in such proceeding may be made upon the New York Superintendent of Insurance pursuant to specific state laws and/or regulations.

**Oregon**

For any cause of action arising under any policy of insurance issued or delivered by us in Oregon, service of process may be made upon the insurance producer on the policy or the Secretary of State or the successor in office pursuant to specific state laws and/or regulations.

**Washington**

For any cause of action arising in Washington under any contract issued as a surplus lines contract under Wash. Rev. Code Ann. Chapter 48.15, we must be sued in the superior court of the county in which the cause of action arose. By issuing a policy under Wash. Rev. Code Ann. Chapter 48.15, we have authorized service of process against us in the manner prescribed under Wash. Rev. Code Ann. § 48.02.022, and we hereby designate the Washington Commissioner of Insurance as the person upon whom such service of process may be made.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative


© 2021 CapSpecialty, Inc. All rights reserved.
Includes material copyrighted by Insurance Services Office, Inc., used with permission.

| | |
|---|---|
| Endorsement No.: | 2 |
| Endorsement Effective Date: | 05/18/2023<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | SGC0010268-05 |
| Issued to: | TGG Management Company, Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Bilateral Extended Reporting Period Change Endorsement

This endorsement modifies insurance provided under the following:
Miscellaneous E&O Policy

It is hereby understood and agreed that:

**PART V WHERE AND WHEN COVERAGE APPLIES** B. 4. is deleted in its entirety and replaced by:

4. Extended Reporting Period

a. In the event of cancellation or non-renewal of this Policy, for reasons other than non-payment of Premium and/or Deductible or non-compliance with the terms and conditions of this Policy, the **First Named Insured** will have the right to purchase an Extended Reporting Period as follows:

(1) The right to purchase the Extended Reporting Period will terminate unless written notice of the **First Named Insured's** intention to purchase it, together with payment of the additional Premium due, is received by the **Company** within thirty (30) days after the effective date of the cancellation or non-renewal;

(2) The additional Premium for the Extended Reporting Period will be calculated as a percentage of the annual Premium in accordance with the chart below. The percentages shown are the minimums; the actual additional Premium Surcharge may be higher:

[redacted]

The additional Premium for the Extended Reporting Period will be fully earned upon inception of the Extended Reporting Period. Once purchased, the Extended Reporting Period may not be cancelled;

(3) A **Claim** made during the Extended Reporting Period will be deemed to have been made on the last day of the **Policy Period**. All terms and conditions of this Policy in effect on that day will apply to the **Claim**; and

(4) The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided nor does it provide an additional or renewed Aggregate Limit of Insurance. It applies only to **Claims** made against an **Insured** during the Extended Reporting Period for **Erroneous Acts** that occur after the **Retroactive Date** and before the Expiration Date of the Policy.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative


© 2018 CapSpecialty, Inc. All rights reserved.

| | |
|---|---|
| Endorsement No.: | 3 |
| Endorsement Effective Date: | 05/18/2023<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | SGC0010268-05 |
| Issued to: | TGG Management Company, Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Definition of Insured Extension Endorsement – Independent Contractors

This endorsement modifies insurance provided under the following:
Miscellaneous E&O Policy

It is hereby understood and agreed that:

**PART III DEFINITIONS I**. **Insured** is changed to include the following:

Independent Contractors, but only for liability arising from performance of their duties as described by written contract with a **Named Insured** and from performance of **Insured Activities**.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

 © 2018 CapSpecialty, Inc. All rights reserved. 

| | |
|---|---|
| Endorsement No.: | 4 |
| Endorsement Effective Date: | 05/18/2023<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | SGC0010268-05 |
| Issued to: | TGG Management Company, Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Financial Related Services Change Endorsement

This endorsement modifies insurance provided under the following:

Miscellaneous E&O Policy

It is hereby understood and agreed that:

**PART II EXCLUSIONS** A. 14. is deleted in its entirety and replaced by:

14. Bankruptcy, insolvency, receivership, liquidation and/or cessation of operations of: an **Insured**; any entity an **Insured** owns or has a financial interest in or otherwise asserts influence or control; any bank, investment company, banker, broker, or dealer in securities or commodities; or the inability or failure of any of them to meet any financial obligation;

**PART II EXCLUSIONS** A. 22. is deleted in its entirety and replaced by:

22. Breach of warranty or guarantee, including any warranty or guarantee of future earnings, assets, or rate of return;

**PART II EXCLUSIONS** A. is changed to include the following:

Services that can only be lawfully performed by a licensed, registered, or certified:

a. Public accountant;
b. Actuary;
c. Attorney;
d. Insurance agent or broker;
e. Financial consultant or investment advisor or securities broker or dealer;
f. Healthcare provider; or
g. Architect or engineer;

Conversion, misappropriation, or improper commingling of funds or misconduct in the handling of lockbox services.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

 © 2018 CapSpecialty, Inc. All rights reserved. 

| | |
|---|---|
| Endorsement No.: | 5 |
| Endorsement Effective Date: | 05/18/2023<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | SGC0010268-05 |
| Issued to: | TGG Management Company, Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Insurance Services Exclusion

This endorsement modifies insurance provided under the following:

Miscellaneous E&O Policy

It is hereby understood and agreed that:

PART II EXCLUSIONS, Subsection A. is amended to add the following additional exclusion, and therefore the coverage under this Policy does not apply to any **Claim** based upon, arising out of or resulting from, in whole or in part, any actual or alleged:

> Any act, error or omission in connection with: the placement of or failure to place any contract or policy of insurance or reinsurance, or the maintenance, servicing or negotiation of any such contract or policy; the underwriting of insurance, including but not limited to the classification of risks; the determination of rates and/or premiums to insure or reinsure risks; or the cancellation of, non-renewal of, issuance of, or failure to issue any contract or policy of insurance.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative


© 2017 CapSpecialty, Inc. All rights reserved.

| | |
|---|---|
| Endorsement No.: | 6 |
| Endorsement Effective Date: | 05/18/2023<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | SGC0010268-05 |
| Issued to: | TGG Management Company, Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Settlement – Right to Settle Change Endorsement

This endorsement modifies insurance provided under the following:
Miscellaneous E&O Policy

It is hereby understood and agreed that:

**PART IV DEFENSE AND SETTLEMENT OF CLAIMS** B. SETTLEMENT 2. is deleted in its entirety and replaced by:

2. The **Company** has the right to settle all **Claims** subject to the consent of the **First Named Insured**. However, if the **First Named Insured** refuses to consent to any settlement recommended by the **Company**, then the **Company's** liability for **Claim Expenses** and **Damages** incurred after the **Company** indicated its willingness to accept such offer shall be limited to an amount equal to Fifty% (50%) of the amount incurred in **Claim Expenses** and covered **Damages** from that point forward, excess the Deductible and subject to the applicable Limit of Insurance specified in the Declarations.

   The **First Named Insured's** failure to express consent to a settlement recommended by the **Company** will be deemed refusal to consent to the settlement.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

 © 2018 CapSpecialty, Inc. All rights reserved. 

| | |
|---|---|
| Endorsement No.: | 7 |
| Endorsement Effective Date: | 05/18/2023<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | SGC0010268-05 |
| Issued to: | TGG Management Company, Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Supplementary Payments Extension

This endorsement modifies insurance provided under the following:

Miscellaneous E&O Policy

It is hereby understood and agreed that:

**PART I INSURING AGREEMENT**, Paragraph A. is changed to add the following at the end thereof:

The **Company** will reimburse the reasonable expenses incurred by an **Insured**, including loss of wages, if the **Insured** is required by the **Company** to attend an arbitration proceeding, trial or hearing in defense of a **Claim**, in the amount of $250 per day for each **Insured** who attends such proceedings, at the **Company's** request, subject to a maximum of $5,000 per **Claim**. Payments made pursuant to this provision for reasonable expenses incurred by an **Insured** will be in addition to the Limit of Insurance specified in the Declarations. The Deductible amount specified in the Declarations will not apply to the payments made by the **Company** pursuant to this provision.

**PART VII CONDITIONS**, Paragraph B. WHAT TO DO IF AN **INSURED** HAS A **CLAIM**, is changed to add the following at the end thereof:

1. The **Insured** will provide written notification to the **Company** as soon as practicable or within thirty (30) days after incurring reasonable expenses, including loss of wages, if the **Insured** is required by the **Company** to attend an arbitration proceeding, trial or hearing in defense of a **Claim**, together with any proof or documentation to support such expenses, which the **Company** requests.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative


© 2018 CapSpecialty, Inc. All rights reserved.

| | |
|---|---|
| Endorsement No.: | 8 |
| Endorsement Effective Date: | 05/18/2023<br>12:01 a.m. standard time at the address of the **Named Insured** as shown in Item 1 of the Declarations. |
| Forms a part of Policy No.: | SGC0010268-05 |
| Issued to: | TGG Management Company, Inc. |
| Issuing Company: | Capitol Specialty Insurance Corporation |

# Unsolicited Communications Exclusion Endorsement

This endorsement modifies insurance provided under the following:
Miscellaneous E&O Policy

It is hereby understood and agreed that:

**PART II EXCLUSIONS** A. is changed to include the following:

Unsolicited: telephone calls; facsimile transmissions; regular mail; electronic mail; or any other form of unsolicited communication, as well as violation of any laws or regulations which prohibit or otherwise regulate unsolicited communications.

If this endorsement is issued after the Policy has been issued, it is deemed to have been added to the list of forms and endorsements on the Declarations.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative


© 2018 CapSpecialty, Inc. All rights reserved.

**NOTICE:**

1. **THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**
2. **THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**
3. **THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**
4. **THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE TOLL-FREE NUMBER 1-800-927-4357 OR INTERNET WEBSITE WWW.INSURANCE.CA.GOV. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO VISIT THE NAIC'S INTERNET WEBSITE AT WWW.NAIC.ORG.THE NAIC—THE NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS—IS THE REGULATORY SUPPORT ORGANIZATION CREATED AND GOVERNED BY THE CHIEF INSURANCE REGULATORS IN THE UNITED STATES.**
5. **FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER. YOU CAN FIND A LINK TO EACH STATE FROM THIS NAIC INTERNET WEBSITE: HTTPS://NAIC.ORG/STATE_WEB_MAP.HTM.**
6. **FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON**

**THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

7. **CALIFORNIA MAINTAINS A "LIST OF APPROVED SURPLUS LINE INSURERS (LASLI)." ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEBSITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV/01-CONSUMERS/120-COMPANY/07-LASLI/LASLI.CFM.**
8. **IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE EFFECTIVE IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.**

***A Stock Company***

**Capitol Specialty Insurance Corporation**
P. O. Box 5900
Madison, WI 53705-0900

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Suzanne M Broadbent

Secretary

Authorized Representative