5:24-CV-492

**TALG, LTD.**
Ismail Amin, Esq. (SBN 231232)
Katherine J. Vescera, Esq. (SBN 287171)
Cassidy R. Kitterman, Esq. (SBN 329615)
2211 Michelson Drive, Suite 1170
Irvine, California 92612
Telephone: (949) 502-7715
Facsimile: (949) 266-8406

Attorneys for Plaintiffs IKIGAI MARKETING WORKS, LLC and POOPH, INC.

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**09/01/2023** at 06:56:36 PM
Clerk of the Superior Court
By Irma Ledesma,Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO**

IKIGAI MARKETING WORKS, LLC, a Nevada Limited Liability Company; POOPH, INC., a Nevada Corporation,

Plaintiffs,

vs.

TGG MANAGEMENT COMPANY, INC. D/B/A TGG ACCOUNTING, a California Corporation; MATTHEW GARRETT, an individual; and DOES 1-20, Inclusive,

Defendants.

Case No.: 37-2023-00038170-CU-BC-NC

**COMPLAINT FOR:**

1. **BREACH OF CONTRACT;**
2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**
3. **UNJUST ENRICHMENT;**
4. **PROMISSORY ESTOPPEL;**
5. **PROFESSIONAL NEGLIGENCE;**
6. **GROSS NEGLIGENCE;**
7. **NEGLIGENT HIRING, TRAINING, AND SUPERVISION;**
8. **BREACH OF FIDUCIARY DUTY;**
9. **CONSTRUCTIVE FRAUD;**
10. **FALSE ADVERTISING [*CAL. BUS. & PROF. CODE* § 17500];**
11. **VIOLATIONS OF ACCOUNTANT ACT [*CAL BUS. & PROF. CODE* § 5051, *et seq.*];**
12. **UNFAIR COMPETITION [*CAL. BUS. & PROF. CODE* § 17200, *et. seq.*];**
13. **DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

EXHIBIT
B



TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

Plaintiffs IKIGAI MARKETING WORKS, LLC ("Ikigai") and POOPH, INC. ("Pooph") (collectively, "Plaintiffs"), hereby complain and allege against Defendant TGG MANAGEMENT COMPNAY, INC. D/B/A TGG ACCOUNTING ("TGG"), MATTHEW GARRET ("Garrett"), and DOES 1-20, inclusive, and each of them (collectively, "Defendants"), as follows:

**PARTIES**

1. Ikigai Marketing Works, LLC is, and at all relevant times alleged in this Complaint was, a limited liability company formed in the State of Nevada, with its principal place of business located in Nevada.

2. Pooph, Inc. is, and at all relevant times alleged in this Complaint was, a corporation formed in the State of Nevada, with its principal place of business located in Nevada. Pooph is a subsidiary of Ikigai.

3. TGG Management Company, Inc. is, and at all relevant times alleged in this Complaint was, a corporation organized and existing under the laws of the State of California, with its principal place of business listed as 215 Pacific Avenue, Solana Beach, California 92075, in the County of San Diego, State of California.

4. Matthew Garrett is, and at all relevant times alleged in this Complaint was, the Chief Executive Officer and Registered Agent of TGG with his primary residence listed as 215 Pacific Ave., Solano Beach, California 92075, in the County of San Diego, State of California.

5. The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1-20, inclusive, are unknown to Plaintiffs, and therefore, Plaintiffs sue said Defendants by such fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants designated herein as a fictitiously named Defendant are, in some manner, responsible for the acts, events, occurrences, and happenings described in this Complaint and has proximately caused injuries and damages to Plaintiffs. Plaintiffs will seek leave to amend or file an amendment to this Complaint to show the true names and capacities of such fictitiously named Defendants when the same have ascertained.

6. Plaintiffs are informed and believe, and thereon allege, that each Defendant, including DOES, was and is the agent, employee, servant, subsidiary, partner, member, associate, or

representative of each other Defendant, and all of the things alleged to have been done by the Defendants were done in the course and scope of the agency, employment, service, subsidiary relationship, partnership, membership, association, or representative relationship, with knowledge and consent of their respective principals, employers, masters, parent corporations, partners, members, associates or representatives.

7. Plaintiffs are informed and believe, and thereon allege, that each Defendant is responsible for each, and every obligation hereinafter set forth.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action because the matter in controversy exceeds Twenty-Five Thousand Dollars ($25,000.00), exclusive of costs and interest, and the events or omissions that are the subject of this Complaint arise from conduct that occurred within this Judicial District and/or agreements that were entered into in this Judicial District.

9. This Court has personal jurisdiction over TGG because TGG is domiciled in California, as its principal place of business is listed as being in the County of San Diego, State of California, and TGG is authorized to, and does, business in the State of California. TGG has availed itself of the benefits of doing business in California and the protections of the laws of the State of California.

10. The Court has personal jurisdiction over Garrett because Garrett is a resident of California, conducts business in the State of California, and was previously licensed to perform public accountancy under the laws of the State of California. Plaintiffs are informed and believe, and thereon allege, that Garrett's accountancy licensure with the State of California is currently inactive, but Garrett has availed himself to the benefits of doing business in California and the protections of the laws of the State of California.

11. Venue is proper in this Judicial District because TGG regularly conducts business in this County, and a substantial part of the events or omissions giving rise to the claims made in this Complaint occurred in San Diego County. Additionally, the Agreements executed by the Parties on June 14, 2022, as discussed below, which serve as the basis for several of the causes of action alleged in this Complaint, mandate that this Complaint be commenced and maintained in San Diego County, California.

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

## ALTER EGO ALLEGATIONS

12. Plaintiffs are informed and believe, and thereon allege, that that there exists, and all times material hereto existed, such a unity of interest and ownership between TGG and Garrett, that the individuality and separateness between TGG and Garrett are merely alter egos of one another.

13. Plaintiffs are informed and believe, and thereon allege, TGG, and all times mentioned herein was, a mere shell instrumentality and conduit through which Garrett carried on his personal business in the corporate name, exercising complete control and dominance of TGG to such an extent that any individuality or separateness does not, at all times mentioned herein did not, exist.

14. Adherence to the fiction of the separate existence of TGG and Garrett would, under the circumstances, sanction a fraud and promote injustice.

15. Under the circumstances detailed above, Plaintiffs should be entitled to ignore the corporate protections normally afforded shareholders, officers and directors of corporations and be entitled to seek execution against individual assets of TGG.

## FACTUAL ALLEGATIONS

### *TGG's Accounting Services*

16. TGG provides "a professional accounting department to provide strong financials, establish systems and processes to increase profitability, build a plan for growth, help in scaling their business to ensure goals and objectives are met." TGG's advertising materials, including its website located at "https://tgg-accounting.com/" (the "TGG Website"), state that TGG provides outsourced accounting, finance consulting, operational reporting, cash flow forecasting, exit planning, and outsourced CFO services.

17. TGG's Website asserts that outsourcing with TGG is conducted the TGG Way™ by assigning clients a team of four (4) accounting professionals, including a Chief Financial Officer, a Controller, an Accounting Manager, and a Staff Accountant, which together make up an outsourced finance team.

///

///

18. The TGG Website also includes the following representations regarding the services provided by TGG:

### HOW DO I FIND THE RIGHT OUTSOURCED ACCOUNTING BUSINESS PARTNER?

- Communication style and frequency: Ensure that your outsourcing partner reports on a cadence that supports your organization. TGG's outsourced accounting teams meet weekly with our clients to ensure consistent communication regarding ongoing business activities and progress on client goals and company initiatives. We are committed to having a withstanding and mutually beneficial outsourcing relationship.
- Skill: Hiring an outsourcing company with an unproven methodology may help you cut costs now, but what about the future implications for your financials? At TGG all of our internal team members are trained in the TGG Way™. Our GAAP compliant, highly structured accounting practice and reporting standards are the benchmark for our accounting teams.
- Price: This is frequently the first thing clients want to address as their company looks at an outsourcing partner. The old adage stands. You get what you pay for. The TGG Way™ ensures that your company is informed about every aspect of your financial well-being and business function. By trusting the numbers you can make big decisions about hiring, firing, purchases and upcoming projects sure in the knowledge of what that means for your bottom line.
- Value match: Transparency, speed of communication and high levels of accountability drive the TGG Way™. Our purpose is your success.

19. All internal members of the TGG team are trained the TGG Way™ and adhere to "GAAP compliant, highly structured accounting practice and reporting standards."

20. According to the TGG Website, TGG implements an "accounting system for accurate and transparent financial reporting" that includes a dedicated outsourced team to reduce the risk of fraud, increase accountability, and incorporate "proper internal controls to finance operations."

21. TGG has also created its own university—TGG-U—to provide certification programs for students to become "an asset to any accounting team."

22. Plaintiffs are informed and believe, and thereon allege, that TGG-U does not offer any coursework in privacy, cybersecurity, or strategies to assess fraudulent transactions.

23. Plaintiffs are informed and believe, and thereon allege, that at all times relevant herein, TGG did not provide training to its employees or independent contractors regarding privacy, cybersecurity, or strategies to assess fraudulent transactions.

24. Plaintiffs are informed and believe, and thereon allege, that TGG is not registered with the California Board of Accountancy as an accountancy corporation.

25. Plaintiffs are informed and believe, and thereon allege, that Matthew Garrett is registered with the California Board of Accountancy under license number 101843 but his license is "inactive."

///

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

***TGG Accounting Agreements With Pooph & Ikigai***

26. On or about June 14, 2022, Pooph and TGG entered into a professional services agreement (the "Pooph Agreement") in which TGG agreed to provide accounting, business and financial services to Pooph, that included "evaluating, implementing, and managing the Company's financial reporting systems, processes, and statements and any other services Company from time to time might request." *A true and correct copy of the Pooph Agreement is attached hereto as* ***Exhibit 1***.

27. Also, on or about June 14, 2022, Ikigai and TGG entered into a second professional services agreement (the "Ikigai Agreement") (the "Pooph Agreement" and "Ikigai Agreement" are collectively referred to as the "Agreements") in which TGG agreed to provide accounting, business and financial services to Ikigai, that included "evaluating, implementing, and managing the Company's financial reporting systems, processes, and statements and any other services Company from time to time might request." *A true and correct copy of the Ikigai Agreement is attached hereto as* ***Exhibit 2***.

28. The Agreements are virtually identical and contain several representations that differ from the content on the TGG Website, including but not limited to the statements that: (1) TGG does not perform public accounting services, (2) "TGG is not engaged in the practice of public accountancy," (3) TGG acts solely in "an advisory and consulting capacity," (4) "TGG will not perform any compilation, review, or audit of any of the Company's information," and (5) "[a]lthough TGG follows Generally Accepted Accounting Principles ("GAAP"), [the]financial statements are produced for internal management use only and should not be considered GAAP-compliant financial statements." *See* ***Exhibit 1***; *see also* ***Exhibit 2***.

29. The Agreements also required Plaintiffs to disclose confidential, proprietary, and financial information, to TGG for the performance of the services:

> To enable TGG to provide services effectively, Company agrees to disclose to TGG, fully and accurately and on a timely basis, all facts and documents that are or might be material or that TGG may request, including, but not limited to, check registers, bank statements, customer account information, customer invoices, sales ledgers and receipts, sales tax account information, vendor information, purchase orders and vendor invoices, federal tax ID number, payroll information, employee data, unemployment account information, and any other information that TGG may require to perform the work of this engagement ("Information").

*See* ***Exhibit 1***, at Section 3; *see also* ***Exhibit 2*****,** at Section 3.

30. TGG was under an obligation to maintain the confidentiality of Plaintiffs' confidential, proprietary, and commercial information. Section 4(a)(ii) of the Pooph Agreement and Ikigai Agreement state:

> 4. Confidential Information.
>
> **a. Company Confidential Information**
>
> ii. TGG shall not use or disclose Company Confidential Information to anyone other than: (a) Company and its representatives including as reasonably necessary for TGG to render Services to Company; (b) third parties where the disclosure is reasonably necessary for TGG to render Services for Company; or (c) third parties with the authorization of Company.

*See* ***Exhibit 1****,* at Section 4(a)(ii); *see also* ***Exhibit 2***, at Section 4(a)(ii).

31. As part of the Agreements, TGG further acknowledged that "those who work for TGG, whether employees or independent contractors…are selected and trained by TGG at great time and expense."

32. Pursuant to Section 2, the Agreements could be terminated by either Party upon thirty (30) days written notice of the intent to terminate. At the expiration of the thirty (30) days following written notice, TGG would cease providing services to Pooph and/or Ikigai.

33. Pursuant to Section 10, any action or proceeding that may be brought in connection with the Agreements must be commenced in San Diego County, California and the court must apply the laws of the State of California.

34. Under the Agreements, TGG was also expected to perform accounts payable services, including but not limited to, making payments to Plaintiffs' vendors.

***TGG's Inadequate Training, Resources, and Management***

35. Following execution of the Agreements, TGG assigned an outsourced finance team consisting of a CFO, Controller, Accounting Manager, Staff Accountant, and Accounting Assistant to provide Ikigai and Pooph with the financial, business and accounting services contemplated by the Agreements (the "TGG Outsourced Finance Team").

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

36. The TGG Outsourced Finance Team provided a number of accounting, business, and financial services to Plaintiffs. The TGG Outsourced Finance Team was responsible for managing vendors, issuing payments, processing changes to banking information for vendors, and handling the day-to-day operations of the Plaintiffs' accounts payable obligations of the businesses. The TGG Outsourced Finance Team provided Plaintiffs with weekly "cash forecasts" that included information regarding the accounts payable aspect of the businesses, but did not provide details regarding changes to vendor banking information, suspicious activity, or any of the day-to-day communications with Plaintiffs' vendors.

37. Plaintiffs are informed and believe, and thereon allege, that numerous TGG employees, independent contractors, affiliates, and/or agents providing outsourced accounting services to Plaintiffs accessed an email inbox for Plaintiffs (the "Email Account") from various locations across multiple states and several countries, including but not limited to Mexico and the Philippines.

38. Plaintiffs are informed and believe, and thereon allege, that TGG employees, independent contractors, affiliates, and/or agents accessed the Email Account by using shared login information.

39. Plaintiffs are informed and believe, and thereon allege, that TGG utilized employees and/or independent contractors from a third party named Personiv to complete many of the data entry and clerical tasks associated with Plaintiffs' accounting, business, and financial services. Plaintiffs are informed and believe, and thereon allege, that Plaintiffs were not informed TGG provided access to Plaintiffs' confidential, proprietary, and privileged information to Personiv. Plaintiffs are informed and believe, and thereon allege, that an individual by the name of Cielo was located in the Philippines, an employee, contractor, or agent of Personiv, and resided in the Philippines.

40. Plaintiffs are informed and believe, and thereon allege, that TGG failed to adequately secure the login information for the Email Account by allowing numerous individuals access to the Email Account without providing training, policies, or procedures for accessing confidential client information from remote locations throughout the world.

///

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

41. Plaintiffs are informed and believe, and thereon allege, that TGG failed to provide training relating to data security, cybersecurity, or security threats to any of the members of the TGG Outsourced Finance Team until *after* the Phishing Scheme described below.

42. Plaintiffs are informed and believe, and thereon allege, that at all times relevant herein, TGG did not maintain any policies or procedures related to: (i) verifying changes to a vendor's banking information that were requested by a vendor via email; (ii) maintaining and/or reviewing vendor banking information; or (iii) preventing unauthorized access by potential hackers or phishers to Ikigai and Pooph's financial systems, email accounts, and other confidential and private information.

43. Plaintiffs are informed and believe, and thereon allege, that TGG also did not maintain certain internal controls, which are standard in the accounting and finance industries, including: (i) confirming vendor banking information changes by telephone versus by email; (ii) regularly reviewing and updating vendor contact and payment information; and (iii) maintaining a log or otherwise tracking when changes are made to a vendor's contact or banking information and who made those changes.

44. Plaintiffs are informed and believe, and thereon allege, that TGG did not maintain or implement certain IT controls that are standard in the accounting and finance industries, including: (i) requiring multi-factor authentication for anyone attempting to gain access to the Email Account; and (ii) several TGG employes in various geographical areas used the same login credentials to gain access to the Email Account, which increased the likelihood of those credentials being obtained through malware, spyware or other data breaches.

***The Phishing Scheme***

45. Approximately eight (8) months after being retained by Ikigai and Pooph, TGG succumbed to various cyber-phishing attempts (the "Phishing Scheme"), which were advanced by an unknown source (the "Phisher") by sending fraudulent phishing emails to the Email Account.

46. The Phishing Scheme was initially discovered by Jane Pak ("Ms. Pak"), the Chief Executive Officer of Ikigai and Pooph, when she received communication from a vendor complaining of lack of payment. Ms. Pak promptly contacted TGG to investigate the missing payment, and TGG investigated the payment that the vendor claimed it never received.

///

47. Plaintiffs are informed and believe, and thereon allege, that on several dates in February 2023, TGG made payments to the Phisher for legitimate invoices that were owed to several of Ikigai and/or Pooph's vendors using Ikigai and/or Pooph's funds.

48. Plaintiffs are informed and believe, and thereon allege, that during its initial investigation, TGG determined the payment to the vendor was submitted to a bank account that did not belong to the vendor (the "Phisher Account"). TGG contacted Ms. Pak, informed her of the payment error, and alerted her to the payment to the Phisher Account.

49. Plaintiffs are informed and believe, and thereon allege, during its initial investigation, TGG also discovered that several emails sent to the Email Account emanated from a spoofed domain name, which attempted to mirror the vendor's real email address. Plaintiffs are informed and believe, and thereon allege, that on or about January 18, 2023, the first email from the spoofed vendor email domain was received in the Email Account. This email read:

> We need to bring this to your attention that we would not be able to accept checks and payment should be made via Wire Transfer/ACH. We are currently having our Annual bank account audit and we have to be sure you have our active details for payment during this period. Please advise so we can send you our active banking information.

50. Plaintiffs are informed and believe, and thereon allege, that this email contained several indicators that it was not authentic, genuine, or actually sent from the vendor, given its references to payments via check, the "Annual bank account audit" being performed and the request for payment to be transmitted to the "active banking information" via Wire Transfer/ACH.

51. Plaintiffs are informed and believe, and thereon allege, that as Plaintiffs' outsourced accounting firm, TGG was aware that Plaintiffs paid vendors through ACH and not through checks, and the Phisher's reference to check payments should have indicated to TGG that the email was suspicious.

52. Plaintiffs are informed and believe, and thereon allege, that as Plaintiffs' outsourced accounting firm, TGG was also aware or reasonably should have been aware that an audit of a bank account is not routine, customary, or an event that would require any payments to be diverted to a

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

separate bank account. The Phisher's reference to diverting payments to a different bank account because of a "bank account audit" should have indicated to TGG that the email was suspicious.

53. Plaintiffs are informed and believe, and thereon allege, that despite these apparent discrepancies and evidence of a Phishing Scheme, TGG requested the "active banking information" from the Phisher.

54. Plaintiffs are informed and believe, and thereon allege, that the Phisher's email in response also contained suspicious language evidencing a Phishing Scheme, including a request to "confirm receipt of my precious email and provide status" and a statement that "Your swift response will be appreciated."

55. Plaintiffs are informed and believe, and thereon allege, that despite the apparent grammatical and punctuation errors, odd word choice, and request for confirmation and status, TGG attempted to process a payment of Sixty-Seven Thousand Forty-Eight Dollars and Eighty-Four Cents ($67,048.84) to the Phisher using Plaintiffs' funds.

56. Plaintiffs are informed and believe, and thereon allege, that Plaintiffs' bank ultimately rejected the payment. The bank's rejection of the payment should have also been an indication to TGG that the re-routed payment was suspicious.

57. Plaintiffs are informed and believe, and thereon allege, that the Phisher then reached out to TGG once more, advising TGG that the Phisher failed to receive the payment because the payment needed to reference the CEO's name, the account number had changed again to "prevent irregularities," and provided new bank information. Again, despite the extensive red flags contained in this email, TGG re-processed the payment to the Phisher with the new banking information without any verification of the CEO's name, bank name, bank information, or contacting the vendor to address the payment issues or confirm that change of payment information.

58. Plaintiffs are informed and believe, and thereon allege, that shortly after the discovery of the Phisher impersonating Plaintiffs' vendor, Ms. Pak received additional communications from other vendors regarding lack of payment.

59. Plaintiffs are informed and believe, and thereon allege, that TGG then performed an audit (the "Audit") of all payments made by Plaintiffs to their vendors in the last thirty (30) days. The

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

Audit revealed additional payments that were supposed to be made to Plaintiffs' vendors, but that were remitted to the Phisher rather than the appropriate vendors. Similar to the Phishing Scheme involving the first vendor, the Phisher sent emails to the Email Account using spoofed domains that were similar to the actual domain names of Plaintiffs' vendors in an attempt to obtain payments for legitimate invoices owed to Plaintiffs' vendors.

60. Plaintiffs are informed and believe, and thereon allege, that during the Audit, Plaintiffs discovered that TGG ignored obvious indicators that the Phisher's emails were part of the Phishing Scheme and that TGG made various payments to the bank accounts provided by the Phisher.

61. Plaintiffs are informed and believe, and thereon allege, that TGG made the following payments to the Phisher using Plaintiffs' funds to pay for legitimate invoices owed to vendors:

i. On February 2, 2023, TGG made a payment to the Phisher in the amount of $67,048.84;

ii. On February 2, 2023, TGG made a payment to the Phisher in the amount of $87,107.40;

iii. On February 9, 2023, TGG made a payment to the Phisher in the amount of $339,218.05;

iv. On February 15, 2023, TGG made a payment to the Phisher in the amount of $176,930.01; and

v. On February 23, 2023, TGG made a payment to the Phisher in the amount of $176,400.60.

62. Plaintiffs are informed and believe, and thereon allege, that TGG made payments to the Phisher for legitimate invoices owed to vendors in the amount of Eight Hundred Forty-Six Thousand Seven Hundred Four Dollars and Ninety Cents ($846,704.90).

63. Plaintiffs are informed and believe, and thereon allege, that TGG attempted to make additional payments to the Phisher for invoices owed to other vendors.

64. Plaintiffs are informed and believe, and thereon allege, that TGG's accounting system for paying, verifying, and processing vendor payments was inadequate, poorly maintained, and incomplete.

65. Plaintiffs are informed and believe, and thereon allege, that Plaintiffs' private and confidential financial information was compromised as a result of TGG's failure to identify and prevent the Phishing Scheme, and at least Eight Hundred Forty-Six Thousand Seven Hundred Four Dollars and Ninety Cents ($846,704.90) (the "Lost Funds") were transferred by TGG to the Phisher as a result of the Phishing Scheme. Plaintiffs were also forced to incur various other expenses to further investigate the Phishing Scheme and assess the scope of the data breach.

66. Plaintiffs are informed and believe, and thereon allege, that at least one other customer or client of TGG experienced a similar data breach that compromised the business's cybersecurity.

***TGG Attempts to Profit from the Phishing Scheme***

67. Plaintiffs are informed and believe, and thereon allege, following the Audit and Unauthorized Forensic Examination, Plaintiffs and TGG attempted to reach an amicable resolution regarding the Lost Funds. TGG partially repaid Plaintiffs for the Lost Funds totaling $67,048.84, and informally discussed other issues arising from the Phishing Scheme.

68. Plaintiffs are informed and believe, and thereon allege, that TGG conducted an internal meeting during the Audit to discuss the Phishing Scheme. Plaintiffs are informed and believe, and thereon allege, that during the meeting Garrett addressed whether the TGG Outsourced Finance Team should invoice Pooph for conducting the Audit. Plaintiffs are informed and believe, and thereon allege, that Garrett initially instructed the TGG Outsourced Finance Team to bill time to a billing code set up for administrative matters, but later exclaimed that the TGG Outsourced Finance Team should "bill it all" to Pooph because he wanted to "at least get my money back."

69. Plaintiffs are informed and believe, and thereon allege, that Plaintiffs were charged for the Audit, thus requiring Plaintiffs to pay not only for the Lost Funds but also for TGG to investigate the Phishing Scheme.

70. In March of 2023, TGG offered to provide Pooph with a loan of Two Million Dollars ($2,000,000.00)—which exceeds the amount of the Lost Funds by more than One Million Dollars ($1,000,000.00)—with a promise of low interest/low payment premiums (the "Loan Proposal"). In exchange, TGG would be allowed to "work with POOPH insurance carriers, file claims accordingly, receive information on the cyber forensics, etc."

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

71. TGG represented that the Loan Proposal would be beneficial to the respective parties, and would allow Plaintiffs to meet their ongoing financial obligations. Plaintiffs are informed and believe, and on that basis allege, that TGG utilized information it obtained during the performance of the services contemplated by the Agreements regarding Plaintiffs' financial situation to manipulate Plaintiffs into accepting the Loan Proposal.

72. TGG's CEO, Garrett, informed Plaintiffs that TGG was not responsible for the Phishing Scheme. Plaintiffs are informed and believe, and thereon allege, that TGG conducted a forensic examination of the Phishing Scheme without the approval of Plaintiffs (the "Unauthorized Forensic Examination"). Plaintiffs are informed and believe, and thereon allege, that during TGG's Unauthorized Forensic Examination, TGG accessed extensive confidential, proprietary, privileged, and commercial information from Plaintiffs' computer systems.

73. Plaintiffs respectfully declined the Loan Proposal and commenced an investigation of the Phishing Scheme. The investigation revealed extensive internal weaknesses implemented by TGG resulting from inadequate training, improper auditing, incomplete vendor information and verification practices, inadequate procedures relating to preventing fraudulent payments, and a failure to assess vendor information prior to payment of suspicious or high-risk invoices. TGG poorly maintained vendor lists, vendor banking information, and failed to complete a comprehensive vendor list to confirm vendor information. TGG also allowed nine (9) employees and/or contractors from multiple states and countries, including Mexico and the Philippines, to access a single Email Account to provide accounting services to Plaintiffs.

74. On or about June 1, 2023, Plaintiffs notified TGG of the intention to terminate the Pooph Agreement by providing written notification thirty (30) days in advance of the proposed termination date.

75. Plaintiffs are informed and believe, and on that basis allege, that on or about June 1, 2023, TGG ceased performing services under the Agreements for both Pooph and Ikigai.

///

///

///

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

## FIRST CAUSE OF ACTION

## (Breach of Contract)

**(By Plaintiffs Against All Defendants and DOES 1-20)**

76. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 75 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

77. Plaintiffs entered into valid and enforceable written contracts with TGG whereby TGG agreed to provide financial and accounting services to Pooph and Ikigai.

78. Plaintiffs fully performed all conditions, covenants, and promises to be performed on their part under the Agreements or were excused or prevented based upon TGG's and Garrett's conduct.

79. Plaintiffs are informed and believe, and thereon allege, that TGG materially breached the Agreements by failing to provide Plaintiffs with the accounting, business and financial services contemplated by the Agreements, and failed to adequately implement or manage Plaintiffs' financial reporting systems, process and statements, as required by the express language of the Agreements. Plaintiffs are informed and believe, and thereon allege, TGG breached the Agreements by:

i. Failing to hire and train employees and/or independent contractors (the "TGG Staff") to evaluate, implement, and manage Plaintiffs' financial reporting systems, processes, and statements.

ii. Failing to provide an outsourced accounting team to perform the accounting, business, and financial services contemplated in the Agreements.

iii. Failing to implement the necessary policies and procedures, internal controls, and IT controls to prevent or detect the Phishing Scheme, such that TGG caused confidential and private information of Plaintiffs to be disclosed to the Phisher and other unknown third parties without Plaintiffs' consent, in violation of the Agreements.

iv. Disclosing, without prior authorization, Plaintiffs' Confidential Information to the Phisher in violation of the Agreements.

v. Unauthorized disclosure of Plaintiffs' Confidential Information to third parties during the Unauthorized Forensic Examination.

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

vi. Unilaterally terminating the Ikigai Agreement by failing to perform any services following receipt of the termination letter relating to the Pooph Agreement on June 1, 2023.

vii. Prematurely terminating services under the Pooph Agreement on June 1, 2023 following receipt of the notice of termination correspondence.

80. As a direct and proximate result of TGG's material breaches of the Agreements described above, Plaintiffs have been damaged in an amount according to proof at trial, but which includes, but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, any incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

81. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

82. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

///

///

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

**SECOND CAUSE OF ACTION**

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

83. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 82 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

84. Plaintiffs entered into valid, enforceable, and written Agreements with TGG on June 14, 2022 whereby TGG agreed to perform "accounting, business and financial services" to Plaintiffs that included "evaluating, implementing and/or managing [Plaintiffs'] financial reporting systems, processes, and statements and any and all other services [Plaintiffs] from time to time might request." *See* ***Exhibit 1***; *see also* ***Exhibit 2***.

85. The Agreements were subject to an Implied Covenant of Good Faith and Fair Dealing, requiring that all parties to the Agreements would act in good faith and with reasonable efforts to perform their respective contractual duties.

86. Plaintiffs fully performed all conditions, covenants, and promises to be performed on their part under the Agreements or were excused or prevented by TGG's and Garrett's conduct.

87. Plaintiffs are informed and believe, and thereon allege, that TGG failed to perform accounting, business, and financial services under the Agreements in accordance with industry standards.

88. Plaintiffs are informed and believe, and thereon allege, that TGG breached the Implied Covenant of Good Faith and Fair Dealing by unfairly interfering with the rights of Plaintiffs under the Agreements, failing to act in good faith, and failing to be perform its obligations under the Agreements. Plaintiffs are informed and believe, and thereon allege, that TGG breached the Implied Covenant of Good Faith and Fair Dealing by:

i. Failing to implement and maintain any policies, procedures, training, or supervision of TGG's Outsourced Financial Team regarding vendor payments, vendor management, vendor banking changes and verification, and maintaining IT controls to detect, identify, prevent, mitigate, and control fraudulent billing activities in Plaintiffs' accounts payable operations.

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

ii. Failing to provide trained employees, contractors, and/or agents of TGG to provide the Services to Plaintiffs in a competent and professional manner in accordance with industry standards.

iii. Invoicing Pooph for the Initial Audit, the Audit, and work associated with the Unauthorized Forensic Examination arising from the grossly negligent conduct of TGG's Staff.

iv. Failing to inform Plaintiffs that a third-party vendor—Personiv—handled Plaintiffs' confidential, privileged, and proprietary information.

v. Utilizing the Phishing Scheme as a business opportunity to entice Plaintiffs to accept a Loan Proposal from TGG that would allow TGG control over the investigation of the Phishing Scheme.

89. As a result of TGG's actions and omissions, TGG unfairly and unjustifiably interfered with Plaintiffs' right to receive the benefits of the Agreements.

90. As a direct and proximate result of TGG's material breaches of the Implied Covenant of Good Faith and Fair Dealing, Plaintiffs have been damaged in an amount according to proof at trial, includes, but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

91. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope

including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

92. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

**THIRD CAUSE OF ACTION**

**(Unjust Enrichment)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

93. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 92 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

94. Plaintiffs conferred a benefit upon TGG by way of their payment for accounting, business, and financial services, and disclosure of Plaintiffs' confidential information.

95. TGG accepted and appreciated the benefits by receiving valuable consideration in exchange for the accounting, business, and financial services and use of Plaintiffs' confidential information.

96. TGG was unjustly enriched by receiving monetary compensation for:

i. Services that were provided in an inadequate and incompetent manner that was to Plaintiffs' detriment, including but not limited to TGG's failure to identify, prevent, or investigate the Phishing Scheme until it received notification from Plaintiffs' of unpaid invoices to vendors.

ii. Services to perform an Initial Audit, Audit, and Unauthorized Forensic Examination that resulted in inflated invoices for services.

iii. Retention, use, and unauthorized disclosure of Plaintiffs' confidential and proprietary information.

97. Notwithstanding Plaintiffs' demands for TGG to honor its obligations, TGG caused and/or failed to prevent the Phishing Scheme that resulted in the Lost Funds and exposure of Plaintiffs' confidential and private information.

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

98. It would be unfair and unjust for TGG to retain the monetary compensation it received from Plaintiffs under the Agreements, given that TGG did not adequately or competently perform the services it was required to perform under the Agreements.

99. As a result, Plaintiffs demand restitution and judgment against TGG in amount to be proven at trial, includes, but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

100. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

101. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

## FOURTH CAUSE OF ACTION

**(Promissory Estoppel)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

102. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 101 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

103. TGG provided several promises to Plaintiffs including, but not limited to, providing Plaintiffs with trained professional accounting staff to provide accounting, business and financial services for "evaluating, implementing and/or managing [Plaintiffs']; training its employees "at great time and expense" in an adequate and competent manner to provide adequate accounting, business and financial services o Plaintiffs; following the Phishing Scheme, TGG promised to provide $67,048.84 to Plaintiffs for the initial Lost Funds TGG's personnel paid to the Phisher.

104. Plaintiffs are informed and believe, and thereon allege, that TGG reasonably expected these promises to induce action or forbearance on the part of Plaintiffs by continuing services with TGG; allowing TGG to access, use, and disclose confidential information to third parties for the Unauthorized Forensic Examination; accept the $67,048.84 in exchange for TGG's ability to continue using and extracting confidential information from Plaintiffs; and attempts to induce Plaintiffs to accept the Loan Proposal in exchange for TGG's ability to work with insurance carriers, coordinate investigations, and control the dissemination of information relating to the Phishing Scheme.

105. Plaintiffs are informed and believe, and thereon allege, that TGG's promises induced Plaintiffs' actions and forbearance, including but not limited to delay of the investigation of the Audit, delay in termination of the Pooph Agreement, and reliance upon TGG's promise that the $67,048.84 was not a loan.

106. Injustice can only be avoided by enforcement of the promises to Plaintiffs.

107. As a result of Plaintiffs' reliance on TGG's promises made in connection with the Agreements, Plaintiffs have been damaged in an amount according to proof at trial, that includes, but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

108. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

109. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

**<u>FIFTH CAUSE OF ACTION</u>**

**(Professional Negligence)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

110. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 109 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

111. TGG owed Plaintiffs a duty to use the skill and care that a reasonably careful financial and accounting firm would have used in carrying out the services contemplated by the Agreements.

112. Plaintiffs are informed and believe, and thereon allege, that TGG breached its duty to Plaintiffs by:

i. Failing to maintain any policies or procedures related to: (i) verifying changes to a vendor's banking information; (ii) adequately maintaining and/or reviewing vendor banking information; or (iii) preventing unauthorized access by potential hackers or phishers to Plaintiffs' financial systems, email accounts, and other confidential and private information.

ii. Failing to maintain certain internal controls, which are standard in the accounting and finance industries, including: (i) confirming vendor banking

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

information changes by telephone versus by email; (ii) regularly reviewing and updating vendor contact and payment information in TGG's and Plaintiffs' accounting systems; and (iii) maintaining a log or otherwise tracking when changes are made to a vendor's contact or banking information and who made those changes.

iii. Failing to maintain or implement certain IT controls that could have prevented the Phishing Scheme or at least allowed for early detection of the Phishing Scheme, and which are standard in the finance and accounting industries, including: (i) requiring multi-factor authentication for anyone attempting to gain access to the Email Account; and (ii) ensuring that TGG employees did not use shared login credentials to gain access to the Email Account, as using shared login credentials increases the likelihood of those credentials being obtained through malware, spyware or other data breaches.

iv. Failing to hire, train, and supervise employees and/or independent contractors assigned to Plaintiffs' outsourced accounting team from TGG to identify and prevent data breaches, cybersecurity threats, or other security threats, which resulted in the disclosure of Plaintiffs' confidential and private information and the Lost Funds.

v. Failing to implement and maintain policies and procedures, internal controls and IT controls that are standard in the finance and accounting industries to prevent data breaches, phishing schemes and other security threats that could lead to the disclosure of Plaintiffs' private and confidential information and the loss of funds.

113. Plaintiffs are informed and believe, and thereon allege, that it was foreseeable that a failure to implement the above-described policies and procedures, internal controls, and IT controls would result in a data breach, phishing scheme, or other security threat that would cause injury to Plaintiffs, including but not limited to, monetary damage and the disclosure of Plaintiffs' private and

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

confidential information, or the private and confidential information of Plaintiffs' vendors and other third parties.

114. Plaintiffs are informed and believe, and thereon allege, that TGG is also vicariously liable for the actions of its employees and agents that are responsible for the harm caused by their conduct. Plaintiffs are informed and believe, and thereon allege, that TGG hired, trained, assigned, and provided the outsourced accounting team for Plaintiffs' businesses (the "TGG Agents"), the TGG Agents were acting in the course and scope of their duties when the Phishing Scheme transpired, and as the principal to the TGG Agents, TGG is liable for their acts and/or omissions.

115. As a direct and proximate result of the negligence of TGG and TGG's Agents, Plaintiffs have been damaged in an amount according to proof at trial, but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

116. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

117. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

**SIXTH CAUSE OF ACTION**

**(Gross Negligence)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

118. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 117 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

119. TGG owed Plaintiffs a duty to use the skill and care that a reasonably careful financial and accounting firm would have used in carrying out the services contemplated by the Agreements.

120. Plaintiffs are informed and believe, and thereon allege, that TGG grossly breached its duty to Plaintiffs by:

i. Failing to identify, prevent, and investigate suspicious and fraudulent billing activity until it was discovered by Plaintiffs.

ii. Failing to identify the Phishing Scheme until Plaintiffs notified TGG of discrepancies in vendor payments.

iii. Failing to maintain any policies or procedures related to: (i) verifying changes to a vendor's banking information; (ii) adequately maintaining and/or reviewing vendor banking information; or (iii) preventing unauthorized access by potential hackers or phishers to Plaintiffs' financial systems, email accounts, and other confidential and private information.

iv. Failing to maintain certain internal controls, which are standard in the accounting and finance industries, including: (i) confirming vendor banking information changes by telephone versus by email; (ii) regularly reviewing and updating vendor contact and payment information in TGG's and Plaintiffs' accounting systems; and (iii) maintaining a log or otherwise tracking when changes are made to a vendor's contact or banking information and who made those changes.

v. Failing to maintain or implement certain IT controls that could have prevented the Phishing Scheme or at least allowed for early detection of the Phishing Scheme, and which are standard in the finance and accounting

industries, including: (i) requiring multi-factor authentication for anyone attempting to gain access to the Email Account; and (ii) ensuring that TGG employees did not use shared login credentials to gain access to the Email Account, as using shared login credentials increases the likelihood of those credentials being obtained through malware, spyware or other data breaches.

vi. Failing to hire, train, and supervise employees and/or independent contractors assigned to Plaintiffs' outsourced accounting team from TGG to identify and prevent data breaches, cybersecurity threats, or other security threats, which resulted in the disclosure of Plaintiffs' confidential and private information and the Lost Funds.

vii. Failing to implement and maintain policies and procedures, internal controls and IT controls that are standard in the finance and accounting industries to prevent data breaches, phishing schemes and other security threats that could lead to the disclosure of Plaintiffs' private and confidential information and the loss of funds.

121. Plaintiffs are informed and believe, and thereon allege, that TGG's actions and omissions constitute an extreme departure from what a reasonably careful person would do in the same situation to prevent harm to oneself or to others. TGG's complete and utter failure to implement the policies and procedures, internal controls, and IT controls that are standard in the finance and accounting industries to prevent data breaches such as the Phishing Scheme is extreme and outrageous conduct that rises to the level of gross negligence.

122. Plaintiffs are informed and believe, and thereon allege, that it was foreseeable that a failure to implement the above-described policies and procedures, internal controls, and IT controls would result in a data breach, phishing scheme, or other security threat that would cause injury to Plaintiffs, including but not limited to, monetary damage and the disclosure of Plaintiffs' private and confidential information, or the private and confidential information of Plaintiffs' vendors and other third parties.

///

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

123. Plaintiffs are informed and believe, and thereon allege, that TGG is also vicariously liable for the actions of its employees and agents that are responsible for the harm caused by their conduct. Plaintiffs are informed and believe, and thereon allege, that TGG hired, trained, assigned, and provided the outsourced accounting team for Plaintiffs' businesses (the "TGG Agents"), the TGG Agents were acting in the course and scope of their duties when the Phishing Scheme transpired, and as the principal to the TGG Agents, TGG is liable for their acts and/or omissions.

124. As a direct and proximate result of the gross negligence of TGG and TGG's Agents, Plaintiffs have been damaged in an amount according to proof at trial, but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

125. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

126. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

///

///

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

**SEVENTH CAUSE OF ACTION**

**(Negligent Hiring, Training, and Supervision)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

127. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 126 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

128. TGG hired, trained, and supervised the outsourced accounting team that was provided to Plaintiffs in accordance with the Agreements.

129. The employees hired by TGG were unfit or incompetent to perform the accounting, business, and financial work for Plaintiffs for which they were hired to perform.

130. Plaintiffs are informed and believe, and thereon allege, that TGG knew or reasonably should have known that its employees were unfit or incompetent to perform the work for which they were hired to perform. Plaintiffs are informed and believe, and thereon allege, that TGG failed to perform adequate background checks of its employees prior or subsequent to employment.

131. Plaintiffs are informed and believe, and thereon allege, that TGG failed to adequately train its employees to perform the accounting, business, and financial work for Plaintiffs for which they were hired to perform.

132. Plaintiffs are informed and believe, and thereon allege, that TGG knew or reasonably should have known that its employees were not adequately trained to perform the work for which they were hired to perform. Plaintiffs are informed and believe, and thereon allege, that TGG failed to provide employees with training relating to the prevention, identification, and mitigation of fraudulent transactions, security threats, cybersecurity issues, and data breaches.

133. Plaintiffs are informed and believe, and thereon allege, that TGG failed to adequately supervise its employees to perform the accounting, business, and financial work for Plaintiffs for which they were hired to perform.

134. Plaintiffs are informed and believe, and thereon allege, that TGG knew or reasonably should have known that its employees were not adequately supervised to perform the work for which they were hired to perform. Plaintiffs are informed and believe, and thereon allege, TGG failed to supervise their employees regarding performance of their services, failed to implement any

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

recommendations or protocols regarding reconciliation of payments and vendor management for Plaintiffs, failed to identify or mitigate the Phishing Scheme, and failed to implement security measures for Plaintiffs' Email Account and TGG Agents' devices that accessed the Email Account.

135. As a result of TGG's negligent hiring, training, and supervision, Plaintiffs were damaged in an amount according to proof at trial, which includes but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

136. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

137. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

## EIGHTH CAUSE OF ACTION

**(Breach of Fiduciary Duty)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

138. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 137 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

139. TGG acted on Plaintiffs' behalf with respect to accounting, business, and financial services that were expected to evaluate, implement, and manage Plaintiffs' "financial reporting systems, processes, and statements."

140. TGG owed Plaintiffs' a fiduciary duty to use reasonable care, loyalty, and confidentiality in the performance of accounting, business, and financial services for Plaintiffs.

141. Plaintiffs are informed and believe, and thereon allege, that TGG breached its fiduciary duty to use reasonable care in the performance of accounting, business, and financial services for Plaintiffs by failing to act as a reasonably careful accountant, business consultant, and financial consultant would have under the circumstances. Plaintiffs are informed and believe, and thereon allege, that TGG breached its fiduciary duty to use reasonable care by:

i. Failing to maintain any policies or procedures related to: (i) verifying changes to a vendor's banking information; (ii) adequately maintaining and/or reviewing vendor banking information; or (iii) preventing unauthorized access by potential hackers or phishers to Plaintiffs' financial systems, email accounts, and other confidential and private information.

ii. Failing to maintain certain internal controls, which are standard in the accounting and finance industries, including: (i) confirming vendor banking information changes by telephone versus by email; (ii) regularly reviewing and updating vendor contact and payment information in TGG's and Plaintiffs' accounting systems; and (iii) maintaining a log or otherwise tracking when changes are made to a vendor's contact or banking information and who made those changes.

iii. Failing to maintain or implement certain IT controls that could have prevented the Phishing Scheme or at least allowed for early detection of the Phishing Scheme, and which are standard in the finance and accounting industries, including: (i) requiring multi-factor authentication for anyone attempting to gain access to the Email Account; and (ii) ensuring that TGG employees did not use shared login credentials to gain access to the Email

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

Account, as using shared login credentials increases the likelihood of those credentials being obtained through malware, spyware or other data breaches.

iv. Failing to hire, train, and supervise employees and/or independent contractors assigned to Plaintiffs' outsourced accounting team from TGG to identify and prevent data breaches, cybersecurity threats, or other security threats, which resulted in the disclosure of Plaintiffs' confidential and private information and the Lost Funds.

v. Failing to implement and maintain policies and procedures, internal controls and IT controls that are standard in the finance and accounting industries to prevent data breaches, phishing schemes and other security threats that could lead to the disclosure of Plaintiffs' private and confidential information and the loss of funds.

142. Plaintiffs are informed and believe, and thereon allege, that TGG breached its fiduciary duty of loyalty to Plaintiffs by knowingly acting against the interests of Plaintiffs by obtaining, using, and disclosing information relating to Plaintiffs' accounts, business, and finance. Plaintiffs are informed and believe, and thereon allege, that TGG breached the duty of loyalty by:

vi. Knowingly acting against the interests of Plaintiffs by obtaining, using, and disclosing Plaintiffs' confidential information to entice Plaintiffs' to accept the Loan Proposal.

vii. Knowingly acting against the interests of Plaintiffs' by soliciting the Loan Proposal in exchange for TGG's control over the Phishing Scheme investigation and insurance claims.

viii. Plaintiffs did not give informed consent to TGG to utilize its understanding of Plaintiffs' outstanding financial obligations as leverage for TGG to propose the Loan Proposal, which was expected to include interest and other unfavorable terms, to allow TGG's control over the Phishing Scheme investigation and insurance claims.

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

ix. TGG utilized Plaintiffs' confidential information for its own benefit, including but not limited to using such information to entice Plaintiffs to accept the Loan Proposal and relinquish control over the Phishing Scheme investigation and insurance claims;

143. Plaintiffs are informed and believe, and thereon allege, that TGG breached its fiduciary duty of confidentiality to Plaintiffs by obtaining, using, and disclosing information relating to Plaintiffs' accounts, business, and finances. Plaintiffs are informed and believe, and thereon allege, that TGG breached the duty of confidentiality because:

x. TGG knew or reasonably should have known was confidential.

xi. TGG utilized Plaintiffs' confidential information for its own benefit, including but not limited to using such information to entice Plaintiffs to accept the Loan Proposal and relinquish control over the Phishing Scheme investigation and insurance claims.

xii. TGG communicated the confidential information to unauthorized third persons for its own benefits, including but not limited to the Unauthorized Forensic Examination.

xiii. Plaintiffs did not give informed consent to the use or disclosure of their confidential information.

xiv. The confidential information is not a matter of general knowledge.

144. Plaintiffs did not give informed consent to TGG's conduct arising from the Phishing Scheme.

145. Plaintiffs were harmed by the actions and omissions of TGG.

146. As a direct and proximate result of the foregoing material breaches, Plaintiffs have been damaged in an amount according to proof at trial, which includes but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

147. TGG was aware of the probable danger and consequences of its conduct but nevertheless willfully and deliberately failed to avoid any harm suffered by Plaintiffs, including but not limited to: knowingly assigning "accountants" to provide accounting, business, and financial services to Plaintiffs without adequate training regarding privacy, cybersecurity, and security threats; knowingly failing to implement any policies or procedures to identify, prevent, or mitigate potential fraudulent transactions and security threats; knowingly failing to implement any policies, procedures, or mechanisms to secure the Email Account; finally, Plaintiffs are informed and believe, and thereon allege that TGG knowingly hired personnel from other cities, states, and countries without performing security checks on the TGG Agents' devices and wireless connections utilized to complete services for Plaintiffs. TGG therefore acted with oppression, fraud, or malice. TGG's conscious disregard for Plaintiffs' rights and safety allows for the imposition of punitive damages.

148. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

149. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

///

///

///

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

## NINTH CAUSE OF ACTION

**(Constructive Fraud)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

150. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 149 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

151. TGG acted on Plaintiffs' behalf with respect to accounting, business, and financial services that were expected to evaluate, implement, and manage Plaintiffs' "financial reporting systems, processes, and statements."

152. TGG owed Plaintiffs' a fiduciary duty to use reasonable care, loyalty, and confidentiality in the performance of accounting, business, and financial services for Plaintiffs.

153. Plaintiffs are informed and believe, and thereon allege, that TGG breached its fiduciary duties owed to Plaintiff as set forth in further detail above.

154. Plaintiffs are informed and believe, and thereon allege, that TGG misled Plaintiffs by failing to identify, control, or mitigate the Phishing Scheme, disclosing confidential information without Plaintiffs' authorization to the Phisher and unauthorized third parties, concealing TGG's Unauthorized Forensic Examination, utilizing Plaintiffs' financial position caused by the Phishing Scheme to entice Plaintiffs to agree to the Loan Proposal, among others.

155. Plaintiffs are informed and believe, and thereon allege, that TGG's breaches of the fiduciary duties owed to Plaintiffs were a substantial factor in causing Plaintiffs' harm.

156. As a direct and proximate result of the foregoing material breaches of the fiduciary duties owed to Plaintiffs, Plaintiffs have been damaged in an amount according to proof at trial, which includes but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action

157. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

158. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

**TENTH CAUSE OF ACTION**

**(Violations of *California Business and Professions Code* § 17500)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

159. Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through 158 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

160. TGG advertises its services on the TGG Website, TGG's social media accounts, print media publications regarding TGG and/or Garrett, online publications regarding TGG and/or Garrett, and other publicly disseminated sources (the "TGG Advertisements").

161. Plaintiffs are informed and believe, and thereon allege, that the TGG Advertisements contained untrue, misleading, and inaccurate representations regarding the services performed by TGG. In particular, the TGG Advertisements falsely advertised:

i. The TGG Way™ will "stop fraud in its tracks" and reduce the "risk of fraud."

ii. Outsourcing the TGG Way™ offers external checks on existing systems.

iii. TGG provides "detailed reporting" to customers through "proven systems of financial accuracy."

iv. TGG provides "GAAP compliant reporting" to customers.

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

v. TGG provides access to a "team of experts."

162. Plaintiffs are informed and believe, and thereon allege, that TGG is not licensed to perform public accounting services in the State of California, TGG's state of incorporation and operation.

163. Plaintiffs are informed and believe, and thereon allege, that TGG is not licensed to perform public accounting services in the State of Nevada, Plaintiffs' state of incorporation and operation.

164. Plaintiffs are informed and believe, and thereon allege, that the TGG Advertisements were untrue, misleading, and fraudulent and, thus, constitute false advertising under California's False Advertising Law, *California Business & Professions Code* § 17500 (the "FAL"), because, inter alia, TGG did not hire or train "experts" to meet the accounting needs of customers in accordance with California's public accountancy laws, TGG does not provide "GAAP compliant reporting" to customers according to the express terms of the Agreements and is not licensed to perform public accountancy audits under the laws of the State of California, TGG does not provide "external checks on existing systems" according to the express terms of the Agreements, among others. The TGG Advertisements are publicly disseminated, and Plaintiffs are informed and believe, and thereon allege, that TGG knew or reasonably should have known were untrue and misleading based upon TGG's failure to obtain appropriate licensure to operate as a public accountancy business in the State of California or any other state.

165. Plaintiffs are informed and believe, and thereon allege, that TGG has an illegal pattern of: (1) wrongfully advising to customers accounting services it is not licensed to perform; (2) charging customers for performing internal audits and unauthorized forensic examinations arising from the actions and omissions of TGG; and (3) concealing and failing to disclose other known material facts.

166. As a direct and proximate result of the violations of the FAL, Plaintiffs have been damaged in an amount according to proof at trial, which includes but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs

associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

167. Plaintiffs are entitled to a temporary restraining order, preliminary injunction, and permanent injunction compelling TGG to notify customers who have been victims of the above-described violations of FAL, and enjoining TGG from engaging in such further acts that violate FAL.

168. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

169. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

## ELEVENTH CAUSE OF ACTION

**(Violations of *California Business & Professions Code* § 5051, *et seq*.)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

170. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 169 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

171. Plaintiffs are informed and believe, and thereon allege, that TGG holds itself out to the public in a manner as a corporation skilled in the knowledge and practice of accounting.

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

172. Plaintiffs are informed and believe, and thereon allege, that TGG offers professional services that involve or require an audit, examination, verification, investigation, certification, presentation, or review of financial transactions and accounting records to prospective clients.

173. Plaintiffs are informed and believe, and thereon allege, that TGG renders professional services to clients for compensation in matters relating to accounting procedure and the recording, presentation, or certification of financial information or data.

174. Plaintiffs are informed and believe, and thereon allege, that TGG maintains books, and prepares trial balances, statements, audits, and reports of financial information or data for clients.

175. Plaintiffs are informed and believe, and thereon allege, that TGG prepares financial and investment plans for clients.

176. Plaintiffs are informed and believe, and thereon allege, that TGG provides management consulting services to clients.

177. Plaintiffs are informed and believe, and thereon allege, that at all times relevant herein, TGG failed to maintain licensure in the State of California and the State of Nevada to engage in the practice of public accountancy.

178. Plaintiffs are informed and believe, and thereon allege, that TGG knew or reasonably should have known that it practices public accountancy in the State of California because, *inter alia*, TGG's principal, Garrett, previously obtained a public accountancy permit but has allowed the license to become inactive.

179. Plaintiffs are informed and believe, and thereon allege, that TGG failed to obtain a valid permit or license to practice public accountancy issued by the California Board of State Accountancy.

180. Plaintiffs are informed and believe, and thereon allege, that TGG failed to obtain a valid permit or license to practice public accountancy issued by a board of accountancy in any state within the United States.

181. Plaintiffs are informed and believe, and thereon allege, that TGG's actions, omissions, misrepresentations, practices, and non-disclosures, as described herein, violated California's Accountancy Act, *California Business & Professions Code* § 5051, *et seq.* (the "Accountancy Act"),

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

because, *inter alia*, it advertised services to prospective clients performed by a public accountant, performed acts and omissions of a public accountant, disclosed Plaintiffs' confidential information without the express authority and consent of Plaintiffs to unknown third parties, and failed to obtain appropriate permitting and licensure to operate as a public accountancy corporation.

182. As a result of TGG's negligent hiring, training, and supervision, Plaintiffs were damaged in an amount according to proof at trial, which includes but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

183. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

184. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

///

///

///

///

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

**TWELFTH CAUSE OF ACTION**

**(Violations of *California Business and Professions Code* § 17200, *et seq.*)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

185. Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through 184 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

186. Plaintiffs are informed and believe, and thereon allege, that TGG's actions, omissions, misrepresentations, practices, and non-disclosures, as described herein, were unfair, unlawful and fraudulent and, thus, constitute unfair competition under California's Unfair Competition Law, *California Business & Professions Code* § 17200, et seq. (the "UCL"), because, *inter alia*, any utility of the wrongful conduct alleged herein is outweighed by the gravity of harm to Plaintiff and similarly situated members of the public.

187. Plaintiffs are informed and believe, and thereon allege, that TGG violated the California False Advertising Law (*California Business & Professions Code* § 17500) and, therefore, its actions and omissions were "unlawful" and constitute unfair business practices pursuant to the UCL.

188. Plaintiffs are informed and believe, and thereon allege, that TGG's material representations contained in the TGG Advertisements were intended to: induce Plaintiffs to enter into the Agreements; allow TGG to access Plaintiffs' confidential and proprietary information; believe TGG would maintain and implement Plaintiffs' financial systems; assure Plaintiffs that TGG would prevent fraud, data breaches, and other security threats. Plaintiffs are informed and believe, and thereon allege, that TGG's actions amount to unfair, deceptive, untrue or misleading advertising and such behavior amounts to an "unfair" business practice under the UCL.

189. Plaintiffs are informed and believe, and thereon allege, that TGG violated the California Accountancy Act (*California Business & Professions Code* § 5051, *et seq.*) and, therefore, its actions and omissions were "unlawful" and constitute unfair business practices pursuant to the UCL.

190. Plaintiffs are informed and believe, and thereon allege, that TGG's material representations contained in the TGG Advertisements were intended to: misrepresent the professional services provided by TGG: mislead customers into believing TGG provides "GAAP compliant" reporting and financial projections from certified public accountants; and misrepresent the professional

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

skills, capabilities, and compliance with the professional standards customarily adhered to by public accountants. Plaintiffs are informed and believe, and thereon allege, that TGG's actions are "unlawful, unfair or fraudulent" business practices, and such behavior amounts to an unlawful business practice under the UCL.

191. Plaintiffs are informed and believe, and thereon allege, that TGG had an illegal pattern and practice of: (1) wrongfully advising to customers accounting services it is not licensed to perform; (2) charging customers for performing internal audits and unauthorized forensic examinations arising from the actions and omissions of TGG; and (3) concealing and failing to disclose other known material facts.

192. As a direct and proximate result of the violations of the UCL, Plaintiffs have been damaged in an amount according to proof at trial, which includes but is not limited to, all Lost Funds, all monies expended to pay TGG for the Audit, all monies expended as a result of the Phishing Scheme, lost revenue associated with the Phishing Scheme, incidental and consequential damages and costs associated with the investigation of the Phishing scheme and loss of Plaintiffs' confidential and private information contained in the Email Account, together with interest, and the costs of this action.

193. Plaintiffs are entitled to a temporary restraining order, preliminary injunction, and permanent injunction compelling TGG to notify customers who have been victims of the above-described violations of FAL and the Accountancy Act, and enjoining TGG from engaging in such further acts that violate FAL and the Accountancy Act.

194. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern,

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

> directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

195. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

**THIRTEENTH CAUSE OF ACTION**

**(Declaratory Relief)**

**(By Plaintiffs Against All Defendants and DOES 1-20)**

196. Plaintiffs repeat and re-allege the allegations contained in paragraph 1 through 195 of this Complaint and by reference thereto, incorporate the same as though fully set forth herein.

197. An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding the rights and statuses of the Parties arising under the Agreements.

198. A judicial declaration interpreting the rights and status of the Parties under the Agreements is necessary to determine the construction and enforceability of certain terms contained in the Agreements, including:

i. The construction of the Agreements in favor of the non-drafting party, Pooph and Ikigai, respectively.

ii. The enforceability of the Agreements' unilateral indemnification provision.

iii. The enforceability of the Agreements' unilateral consequential damages provision.

199. A judicial declaration invalidating unenforceable, void, and unconscionable provisions is necessary and appropriate at this time.

200. A stay, temporary restraining order, preliminary injunction, and permanent injunction are also necessary to prohibit TGG from engaging in such further acts that violate FAL and the Accountancy Act.

201. Section 11 of the Agreements allows Plaintiffs to seek recovery of their attorneys' fees and costs against Defendants. Section 11 of the Agreements provides that:

> If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

202. Plaintiffs have, by reason of the foregoing, been required to obtain the services of an attorney and are therefore entitled to recover their reasonable attorneys' fees and costs from Defendants, pursuant to the express language of Section 11 of the Agreements and any other basis provided by California law.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand trial by jury on all issues and causes of action triable by jury.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiffs pray for relief as follows:

1. For general and special damages according to proof;
2. For judgment, rescission, and restitution in an amount to be determined at trial;
3. For actual, consequential, and incidental damages in an amount to be determined at trial;
4. For civil penalties as permitted by statute;
5. For exemplar and punitive damages;
6. For pre-judgment and post-prejudgment interest at the statutory rate;
7. For declaratory, equitable, and/or injunctive relief;
8. For a declaration that the Agreements' terms must be construed against the drafting party, TGG;
9. For a declaration that the Agreements' unilateral indemnification provision is invalid and unenforceable;

TALG, Ltd.
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

10. For a declaration that the Agreements' unilateral consequential damages provision is invalid and unenforceable;

11. For reasonable attorney's fees and costs by operation of law, statute, and/or the Agreements; and

12. For such other and further relief as the Court deems just and proper.

Dated: September 01, 2023

**TALG, LTD.**

By: ______________________________

Ismail Amin, Esq.
Katherine J. Vescera, Esq.
Cassidy R. Kitterman, Esq.
**TALG, LTD.**
***Attorneys for Plaintiffs IKIGAI MARKETING WORKS, LLC and POOPH, INC.***

**TALG, Ltd.**
2211 Michelson Drive, Suite 1170
Irvine, CA 92612
Phone: (949) 502-7715 / Fax: (949) 266-8406

# EXHIBIT 1

TGG

**Private and Confidential**

June 14, 2022

Jane Pak
CEO
Pooph, Inc.

Dear Jane,

This letter agreement ("Agreement") shall memorialize the terms under which TGG Accounting ("TGG") will provide accounting, business and financial services ("Services") to Pooph, Inc. ("Company"). The Services may include any or all of the following: evaluating, implementing and/or managing the Company's financial reporting systems, processes, and statements and any and all other services Company from time to time might request. This Agreement shall be applicable to all Services TGG renders for Company whether specifically provided for in this Agreement or later requested by Company. The hourly rates of TGG's services to the Company are set forth in **Exhibit I**.

TGG does not perform certified public accounting services or public accounting services and TGG is not engaged in the practice of public accountancy.

TGG is an independent contractor, rendering the Services for Company. TGG is not an officer, director or owner of Company and has no control over any of the operations of Company. TGG is acting solely in an advisory and consulting capacity. Accordingly, while TGG may advise the Company as to particular issues and make recommendations, TGG will not make decisions on behalf of Company.

1. Engagement and Services. For the Services TGG will be rendering, the following applies:

   a. **Not an Audit**: TGG will not perform any compilation, review or audit of any of the Company's financial information, and information regarding the Company's transactions will be entered from documents and ledgers provided by the Company. TGG makes no representations or warranties as to the accuracy, timeliness, and/or quality of the information we are provided, nor do we make any representations or warranties as to whether the Company has properly classified its employees or vendors. TGG also does not provide legal services of any type. Company acknowledges and agrees that TGG has not been requested to discover errors, misclassifications, misrepresentations, employment law-related violations, fraud, illegal acts, or theft in the Company's books and records, and TGG will not include any procedures designed or intended to discover such acts. Company specifically agrees TGG has no responsibility to do so.

   b. **For Internal Management Purposes Only**: Although TGG follows Generally Accepted Accounting Principles ("GAAP"), our financial statements are produced for internal management use only and should not be considered GAAP-compliant financial statements. Company agrees and acknowledges that it shall not use any information or reports prepared by TGG for publication or for the purpose of filing with a court or with any governmental agency including, without limitation, the SEC. Company also acknowledges that while it may share TGG prepared financials statements or other documents with third parties, in such event Company shall denote such documents as "Unaudited" and "Prepared for Internal Management Use Only" in a clear and visible manner.

c. **Hardware and Software Warranties**: While this Agreement is in effect, TGG may recommend that Company purchase and/or install computer or technological hardware, software, communications, or other services equipment. Warranties for such equipment, to the extent they exist, are provided only by the manufacturer/vendor of such equipment, not by TGG.

d. **Fees**: Fees charged for TGG's services are based upon the time devoted to the matter, including meetings, telephone calls, factual investigations and analyses, document preparation and revision, travel away from the office and other Services rendered on Company's behalf, and are based upon the then current hourly rates of TGG's personnel and staff performing the work. Hourly rates vary among TGG's personnel and staff and may increase periodically. The current hourly rates of TGG's personnel and staff are set forth in **Exhibit I** attached to this Agreement. The hourly rates charged by TGG may periodically increase and Company agrees to pay the hourly rates as in effect when the Services are rendered. TGG will have the sole right to designate which TGG personnel will work on any particular matter or render any particular Service.

e. **Costs:** In addition to hourly rates, TGG's billing statements will include costs incurred on behalf for Company, such as specific forms, parking, out of town travel and meals, bulk mailings and vendor costs for photocopies (large projects), couriers, conference calls, hosting services and the use of other service providers. If substantial costs are anticipated, TGG may request Company deposit funds to pay the costs before they are incurred, or that the Company pay the costs directly. Third party invoices for costs and disbursements are not always available on a current basis. TGG will include such costs on TGG's invoices generated after the third-party invoice is received.

f. **Invoices and Payment:** Statements for Services rendered and costs incurred will be prepared and sent to the Company by email generally twice a month. TGG's standard form of payment is ACH debit per the attached **Exhibit II.** A 3% administrative fee is applied to payment if Company chooses to pay by a method other than ACH debit. Company should review the statement carefully and advise TGG promptly if Company has any questions about any charges. If Company fails to dispute a charge within ten (10) days of receiving the invoice, Company will be deemed to have accepted the invoice as accurate. All questions, disputes and objections about TGG's fees and costs must be in writing and emailed to TGG within ten (10) days of receipt of the invoice. Unless a timely written objection is received, TGG will automatically bill the Company's ACH account on record on the following business day. TGG will impose a minimum administrative fee of $100 if any payment by Company is returned unpaid, regardless of the reason. If at any time Company does not have an active ACH account with available funds to pay TGG's invoice(s), Company agrees to immediately pay by check or wire the full outstanding amount owed. TGG has the right to stop rendering services at any time if Company fails to timely pay any invoice.

g. **Late Fees; Interest.** All amounts owed by Company not paid within thirty (30) days of the invoice date will be subject to a late charge in the amount of ten percent (10%) of the amount owed which Company agrees represents a reasonable estimate of the damages TGG would suffer as a result of such late payment. Further, Company agrees to pay a service charge of one percent (1%) per month on all past due balances.

h. **Security Deposit**: Company agrees to pay TGG a security deposit in the amount of $3,000 ("Deposit") upon execution of this Agreement. Company's Deposit will be held by TGG until the completion of the engagement and credited towards your final billing or refunded to Company upon termination of this Agreement. The Deposit will bear no interest and will not be maintained in a segregated or client trust account and may be comingled with TGG's general funds and accounts. The amount of the Deposit does not constitute an estimate or limitation on the total fees and costs to be incurred. TGG reserves the right to terminate this Agreement if we determine the increased level of Services requires an increase in the Deposit, and the increased Deposit is not promptly paid by the Company as requested. Once this Agreement is terminated, TGG will apply the Deposit to all outstanding fees and costs owed and then return the balance to Company.

2. <u>Term and Termination</u>. This Agreement shall continue in effect until either Party provides 30 days written notice of intent to terminate. The Agreement shall then terminate at the expiration of 30 days from written notice. Once terminated, TGG shall not render further Services to Company.

3. <u>Reliance on Company's Information</u>. TGG will rely on the completeness and accuracy of the information provided by

Company when performing our services. To enable TGG to provide services effectively, Company agrees to disclose to TGG, fully and accurately and on a timely basis, all facts and documents that are or might be material or that TGG may request, including, but not limited to, check registers, bank statements, customer account information, customer invoices, sales ledgers and receipts, sales tax account information, vendor information, purchase orders and vendor invoices, federal tax ID number, payroll information, employee data, unemployment account information, and any other information that TGG may require to perform the work of this engagement ("Information"). In performing Services, TGG shall be entitled to rely upon and assume, without independent verification, the accuracy and completeness of all Information that has been furnished by, or on behalf of, Company and shall have no obligation to verify the accuracy or completeness of any such Information. Company represents and warrants to TGG that all Information provided by Company to TGG shall be complete and correct in all material respects and shall not contain any untrue statement of a material fact or omit to state a necessary material fact in order to ensure the Information is not misleading in light of the circumstances under which the Information is provided.

4. <u>Confidential Information</u>.

a. **Company Confidential Information**

**i.** TGG acknowledges and agrees that some of the information provided to it in connection with this Agreement may constitute information of a secret and confidential nature about the Company ("Company Confidential Information"). To constitute Company Confidential Information, if disclosed in writing the writing must be marked "confidential" or "proprietary," and if disclosed orally, within 10 days of disclosure, Company must advise TGG in writing that the disclosed information is "confidential" or "proprietary."

**ii.** TGG shall not use or disclose Company Confidential Information to anyone other than: (a) Company and its representatives including as reasonably necessary for TGG to render Services to Company; (b) third parties where the disclosure is reasonably necessary for TGG to render Services for Company; or (c) third parties with the authorization of Company.

**iii.** Notwithstanding the restrictions in sub-part 4.a.i. above, TGG may use or disclose without limitation Information that may otherwise be deemed Company Confidential Information if: (i) the information is known, becomes known or is generally known or available to the public, other than by disclosure of the Information by TGG; (ii) the Information is furnished to a third party by the Company without restriction of the third party's right to disseminate the Company Confidential Information; (iii) the Company Confidential Information is disclosed to TGG by a third party; (iv) the Company Confidential Information is disclosed with the Company's approval; or (v) as may be requested or required by any municipal, state, federal or other regulatory body having or claiming to have jurisdiction over such party, including to comply with any law, order, regulation, regulatory request or ruling applicable to such party, or pursuant to any interrogatory, request for information, subpoena, civil investigative demand or similar demand or request of any court, government authority, self-regulatory organization, arbitrator, or tribunal.

b. **TGG Confidential Information**

**i.** Company acknowledges and agrees that some of the information provided to it in connection with this Agreement, intentionally or inadvertently, may constitute information of a secret and confidential nature from TGG ("TGG Confidential Information"). Company acknowledges and agrees that (i) any proprietary software, coding, or formulas embedded in TGG's Excel workbooks and (ii) the terms of this Agreement constitute TGG Confidential Information. Otherwise, to constitute TGG Confidential Information, if disclosed in writing the writing must be marked "confidential" or "proprietary," and if disclosed orally, within 10 days of disclosure, TGG must advise Company in writing that the disclosed information is "confidential" or "proprietary."

**ii.** Company shall not disclose TGG Confidential Information to anyone other than: (a) TGG and its representatives including as reasonably necessary for TGG to render Services to Company; or (b) third parties where the disclosure is reasonably necessary for TGG to render Services for Company and the Company has received written authorization from TGG by a CFO-level employee.

**iii.** Company agrees that once this Agreement is no longer in effect: (a) Company will immediately return to TGG all TGG Confidential Information; (b) Company will delete from all of its files all TGG Confidential Information; (c) Company will not use for any purpose any TGG Confidential

Information; and (d) Company will not allow any third parties access to or to use any TGG Confidential Information in the rendering of any services to Company.

**iv.** Company stipulates and agrees that, after this Agreement terminates, if Company uses any TGG Confidential Information or allows others to use TGG Confidential Information in rendering services to Company, TGG shall be entitled to obtain a preliminary injunction from a court to stop and prevent Company from further use of, access to, or benefit from the TGG Confidential Information.

5. Placement Fee re: Hiring TGG Employees and Staff

a. Company recognizes and agrees that those who work for TGG, whether employees or independent contractors (individually and collectively "TGG Staff") are selected and trained by TGG at great time and expense. Company recognizes and agrees that if it hires any TGG Staff, whether directly or indirectly through another hiring agency, firm, company or any other source, it will cause financial harm to TGG in a number of ways including, but not limited to: (a) TGG having to replace the person; (b) TGG having to train a new person; and (c) the time it will take for the new person to be completely up to speed at the level of the TGG Staff who left. As a result, Company agrees that as long as this Agreement is in effect, and up to one year after termination of this Agreement, if Company Hires TGG Staff, Company will pay TGG a Placement Fee in the amount set forth below.

b. Hires TGG Staff means and includes any of the following: (a) Company solicits or recruits TGG Staff, whether to work for Company or leave TGG; (b) Company directly employs TGG Staff or directly pays TGG Staff as an independent contractor; or (c) Company contracts with or makes any arrangement with any other person, company or business where TGG Staff, directly or indirectly, will or does perform for Company the same or similar services as those TGG Staff was performing for Company while employed by TGG.

c. Hires TGG Staff only applies to a person who, while working for TGG, performed services for Company or was introduced to the Company in any other way.

d. The Placement Fee will be forty percent (40%) of the gross annual compensation payable by TGG to the person(s) Company hires, that TGG was actually paying the person 30 days before the TGG Staff left his/hers employment with TGG. The Placement Fee shall be due and payable immediately when Company Hires TGG Staff.

e. Company acknowledges and agrees that the terms, including the amount, of this Placement Fee provision are reasonable and necessary under all facts and circumstances to compensate TGG in the event Company Hires TGG Staff.

6. Indemnification. Company shall indemnify, defend and hold harmless TGG, its officers, directors, shareholders, managers, employees, attorneys, agents, representatives, successors and assigns (each being an "Indemnified Party") from and against any and all third party losses, claims, damages, penalties, fines, liabilities and expenses, joint or several, including all reasonable fees of counsel and other expenses incurred by any Indemnified Party in connection with the preparation for, or defense of, any claim, action or proceeding (whether or not resulting in any liability), to which such Indemnified Party may become subject as caused by, or arising out of, or in any way related to Company's operations or TGG providing Services to Company including, without limitation, the classification or misclassification of Company's employees, independent contractors and vendors, use of Company's Information or this Agreement. Notwithstanding the preceding, Company shall not be liable under this paragraph 6 to the extent that any loss, claim, damage, liability, penalty, fine or expense is proven to have been actually caused by the gross negligence or willful misconduct of such Indemnified Party.

7. Referral Partners. TGG is a full-service firm and strives to provide the best Services possible. From time to time, Company may request a referral for a particular service or product, or a situation may arise where we believe it would be advantageous for Company to retain the services of certain vendors or providers. Company is not required to use any of the service or product vendors/suppliers TGG recommends as a condition to the providing of TGG Services under this Agreement. There may be other providers available which charge more or less than the providers we providers referred by TGG. Company is free and encouraged to shop around to determine it is receiving the best service and the best rate or price. Company acknowledges and understands that TGG may refer Company to a vendor or service provider from whom TGG may realize a direct or indirect benefit as a result of such referral.

8. Retention of Company Files. Upon termination of the Agreement, TGG will either deliver Company files to Company or destroy them, as Company directs in writing and at Company's sole expense. If Company fails to request in writing a return of Company files within ninety (90) days after termination of this Agreement, TGG will destroy Company's

files without further notice to Company. TGG will have the right to retain one copy of Company files for archival purposes and for use in any disputes concerning TGG's Services or otherwise under this Agreement.

9. Independent Contractor Status. This Agreement does not create an employer-employee relationship, nor a partnership, joint venture or other relationship between the parties. Neither party shall have the right, power or authority to create any contract or obligation, or make any commitments, whether express or implied, on behalf of, in the name of or binding upon the other party.

10. Applicable Law; Venue. This Agreement shall be construed and interpreted in accordance with the laws of the State of California. Any action or proceeding that might be brought in connection with or arising out of this Agreement shall be commenced and maintained only in San Diego County, California.

11. Attorneys' Fees. If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

12. Notices. All invoices, notices, consents, requests, demands and other communications required or permitted under this Agreement shall be in writing addressed to party at the address for such party set forth on the signature page of this agreement, and shall be transmitted by either (i) facsimile with telephonic confirmation, (ii) electronic mail with confirmation of transmission by the transmitting equipment, or (iii) overnight courier. Any notice or other communication shall be deemed received by the party to whom it is addressed when it is sent in the case of transmission by facsimile or electronic mail and one day after it is sent in the case of transmission by overnight courier. Any party may change such party's address for purposes of this Agreement by notice given in accordance with this paragraph 13.

13. Successors and Assigns. This Agreement shall not be assigned by the Company without the prior written consent of TGG, which shall not be unreasonably withheld; provided, however, that either party may, without the prior consent of the other, assign all of its rights under this agreement to (i) a parent or subsidiary of a party, (ii) a purchaser of all or substantially all assets of the Company, or (iii) a third party participating in a merger, acquisition, sale of assets or other corporate reorganization in which either party is participating. Any attempt to assign this Agreement in violation of this provision shall be void and of no effect. This Agreement shall bind and inure to the benefit of the parties and their respective successors and permitted assigns.

14. Amendments. No amendment, modification, termination or waiver of any provision of this Agreement, or consent to any departure by any party therefrom, shall be effective unless signed in writing by the parties hereto and, in any event, shall be effective only in the specific instance for the specific purpose for which given.

15. Consequential Damages. TGG will not be liable or otherwise responsible for any special or consequential damages, and in no event will TGG be liable for damages in excess of the fees, costs and other payments that TGG receives from Company for services provided under this agreement.

16. Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Execution and delivery of this Agreement by delivery of a facsimile or electronically recorded copy (including a .pdf file) bearing a copy of the signature of a party shall constitute a valid and binding execution and delivery of this Agreement by such party. Such copies shall constitute enforceable original documents.

Please sign this Agreement and promptly return to us by email. We look forward to working with and assisting Company and rendering the services provided for by this Agreement. If you ever have any questions about our fees or services please contact us and so advise.

Very truly yours,

**TGG ACCOUNTING**

DocuSigned by:
By: J. Andrew Ruff
7E8A0BE3C8444E5...
J. Andrew Ruff, President and CFO

**ACCEPTED AND AGREED:**

Company agrees to all terms provided for in the Agreement.

**Pooph, Inc.**

Dated: 6/14/2022

DocuSigned by:
By:
8FA2B20452E44D6...
Jane Pak

Its: CEO

Address: 2232 S. Nellis Blvd, G3-225 Las Vegas, NV 89104

Email: jpak@pooph.com

Tel #: 310-6006454

**Exhibit I**

| Personnel | Hourly Rate |
|---|---|
| CFO | $315 - $450 |
| Controller | $150 - $240 |
| Accounting Manager | $95 - $130 |
| Staff Accountant | $65 - $80 |
| Accounting Assistant | $45 - $55 |

# EXHIBIT 2

TGG

**Private and Confidential**

June 14, 2022

Jane Pak
CEO
IKIGAI Marketing Works, LLC

Dear Jane,

This letter agreement ("Agreement") shall memorialize the terms under which TGG Accounting ("TGG") will provide accounting, business and financial services ("Services") to IKIGAI Marketing Works, LLC ("Company"). The Services may include any or all of the following: evaluating, implementing and/or managing the Company's financial reporting systems, processes, and statements and any and all other services Company from time to time might request. This Agreement shall be applicable to all Services TGG renders for Company whether specifically provided for in this Agreement or later requested by Company. The hourly rates of TGG's services to the Company are set forth in **Exhibit I**.

TGG does not perform certified public accounting services or public accounting services and TGG is not engaged in the practice of public accountancy.

TGG is an independent contractor, rendering the Services for Company. TGG is not an officer, director or owner of Company and has no control over any of the operations of Company. TGG is acting solely in an advisory and consulting capacity. Accordingly, while TGG may advise the Company as to particular issues and make recommendations, TGG will not make decisions on behalf of Company.

1. Engagement and Services. For the Services TGG will be rendering, the following applies:

   a. **Not an Audit**: TGG will not perform any compilation, review or audit of any of the Company's financial information, and information regarding the Company's transactions will be entered from documents and ledgers provided by the Company. TGG makes no representations or warranties as to the accuracy, timeliness, and/or quality of the information we are provided, nor do we make any representations or warranties as to whether the Company has properly classified its employees or vendors. TGG also does not provide legal services of any type. Company acknowledges and agrees that TGG has not been requested to discover errors, misclassifications, misrepresentations, employment law-related violations, fraud, illegal acts, or theft in the Company's books and records, and TGG will not include any procedures designed or intended to discover such acts. Company specifically agrees TGG has no responsibility to do so.

   b. **For Internal Management Purposes Only**: Although TGG follows Generally Accepted Accounting Principles ("GAAP"), our financial statements are produced for internal management use only and should not be considered GAAP-compliant financial statements. Company agrees and acknowledges that it shall not use any information or reports prepared by TGG for publication or for the purpose of filing with a court or with any governmental agency including, without limitation, the SEC. Company also acknowledges that while it may share TGG prepared financials statements or other documents with third parties, in such event Company shall denote such documents as "Unaudited" and "Prepared for Internal Management Use Only" in a clear and visible manner.

c. **Hardware and Software Warranties**: While this Agreement is in effect, TGG may recommend that Company purchase and/or install computer or technological hardware, software, communications, or other services equipment. Warranties for such equipment, to the extent they exist, are provided only by the manufacturer/vendor of such equipment, not by TGG.

d. **Fees**: Fees charged for TGG's services are based upon the time devoted to the matter, including meetings, telephone calls, factual investigations and analyses, document preparation and revision, travel away from the office and other Services rendered on Company's behalf, and are based upon the then current hourly rates of TGG's personnel and staff performing the work. Hourly rates vary among TGG's personnel and staff and may increase periodically. The current hourly rates of TGG's personnel and staff are set forth in **Exhibit I** attached to this Agreement. The hourly rates charged by TGG may periodically increase and Company agrees to pay the hourly rates as in effect when the Services are rendered. TGG will have the sole right to designate which TGG personnel will work on any particular matter or render any particular Service.

e. **Costs:** In addition to hourly rates, TGG's billing statements will include costs incurred on behalf for Company, such as specific forms, parking, out of town travel and meals, bulk mailings and vendor costs for photocopies (large projects), couriers, conference calls, hosting services and the use of other service providers. If substantial costs are anticipated, TGG may request Company deposit funds to pay the costs before they are incurred, or that the Company pay the costs directly. Third party invoices for costs and disbursements are not always available on a current basis. TGG will include such costs on TGG's invoices generated after the third-party invoice is received.

f. **Invoices and Payment:** Statements for Services rendered and costs incurred will be prepared and sent to the Company by email generally twice a month. TGG's standard form of payment is ACH debit per the attached **Exhibit II.** A 3% administrative fee is applied to payment if Company chooses to pay by a method other than ACH debit. Company should review the statement carefully and advise TGG promptly if Company has any questions about any charges. If Company fails to dispute a charge within ten (10) days of receiving the invoice, Company will be deemed to have accepted the invoice as accurate. All questions, disputes and objections about TGG's fees and costs must be in writing and emailed to TGG within ten (10) days of receipt of the invoice. Unless a timely written objection is received, TGG will automatically bill the Company's ACH account on record on the following business day. TGG will impose a minimum administrative fee of $100 if any payment by Company is returned unpaid, regardless of the reason. If at any time Company does not have an active ACH account with available funds to pay TGG's invoice(s), Company agrees to immediately pay by check or wire the full outstanding amount owed. TGG has the right to stop rendering services at any time if Company fails to timely pay any invoice.

g. **Late Fees; Interest.** All amounts owed by Company not paid within thirty (30) days of the invoice date will be subject to a late charge in the amount of ten percent (10%) of the amount owed which Company agrees represents a reasonable estimate of the damages TGG would suffer as a result of such late payment. Further, Company agrees to pay a service charge of one percent (1%) per month on all past due balances.

h. **Security Deposit**: Company agrees to pay TGG a security deposit in the amount of $1,500 ("Deposit") upon execution of this Agreement. Company's Deposit will be held by TGG until the completion of the engagement and credited towards your final billing or refunded to Company upon termination of this Agreement. The Deposit will bear no interest and will not be maintained in a segregated or client trust account and may be comingled with TGG's general funds and accounts. The amount of the Deposit does not constitute an estimate or limitation on the total fees and costs to be incurred. TGG reserves the right to terminate this Agreement if we determine the increased level of Services requires an increase in the Deposit, and the increased Deposit is not promptly paid by the Company as requested. Once this Agreement is terminated, TGG will apply the Deposit to all outstanding fees and costs owed and then return the balance to Company.

2. <u>Term and Termination</u>. This Agreement shall continue in effect until either Party provides 30 days written notice of intent to terminate. The Agreement shall then terminate at the expiration of 30 days from written notice. Once terminated, TGG shall not render further Services to Company.

3. <u>Reliance on Company's Information</u>. TGG will rely on the completeness and accuracy of the information provided by

Company when performing our services. To enable TGG to provide services effectively, Company agrees to disclose to TGG, fully and accurately and on a timely basis, all facts and documents that are or might be material or that TGG may request, including, but not limited to, check registers, bank statements, customer account information, customer invoices, sales ledgers and receipts, sales tax account information, vendor information, purchase orders and vendor invoices, federal tax ID number, payroll information, employee data, unemployment account information, and any other information that TGG may require to perform the work of this engagement ("Information"). In performing Services, TGG shall be entitled to rely upon and assume, without independent verification, the accuracy and completeness of all Information that has been furnished by, or on behalf of, Company and shall have no obligation to verify the accuracy or completeness of any such Information. Company represents and warrants to TGG that all Information provided by Company to TGG shall be complete and correct in all material respects and shall not contain any untrue statement of a material fact or omit to state a necessary material fact in order to ensure the Information is not misleading in light of the circumstances under which the Information is provided.

4. Confidential Information.

a. **Company Confidential Information**

**i.** TGG acknowledges and agrees that some of the information provided to it in connection with this Agreement may constitute information of a secret and confidential nature about the Company ("Company Confidential Information"). To constitute Company Confidential Information, if disclosed in writing the writing must be marked "confidential" or "proprietary," and if disclosed orally, within 10 days of disclosure, Company must advise TGG in writing that the disclosed information is "confidential" or "proprietary."

**ii.** TGG shall not use or disclose Company Confidential Information to anyone other than: (a) Company and its representatives including as reasonably necessary for TGG to render Services to Company; (b) third parties where the disclosure is reasonably necessary for TGG to render Services for Company; or (c) third parties with the authorization of Company.

**iii.** Notwithstanding the restrictions in sub-part 4.a.i. above, TGG may use or disclose without limitation Information that may otherwise be deemed Company Confidential Information if: (i) the information is known, becomes known or is generally known or available to the public, other than by disclosure of the Information by TGG; (ii) the Information is furnished to a third party by the Company without restriction of the third party's right to disseminate the Company Confidential Information; (iii) the Company Confidential Information is disclosed to TGG by a third party; (iv) the Company Confidential Information is disclosed with the Company's approval; or (v) as may be requested or required by any municipal, state, federal or other regulatory body having or claiming to have jurisdiction over such party, including to comply with any law, order, regulation, regulatory request or ruling applicable to such party, or pursuant to any interrogatory, request for information, subpoena, civil investigative demand or similar demand or request of any court, government authority, self-regulatory organization, arbitrator, or tribunal.

b. **TGG Confidential Information**

**i.** Company acknowledges and agrees that some of the information provided to it in connection with this Agreement, intentionally or inadvertently, may constitute information of a secret and confidential nature from TGG ("TGG Confidential Information"). Company acknowledges and agrees that (i) any proprietary software, coding, or formulas embedded in TGG's Excel workbooks and (ii) the terms of this Agreement constitute TGG Confidential Information. Otherwise, to constitute TGG Confidential Information, if disclosed in writing the writing must be marked "confidential" or "proprietary," and if disclosed orally, within 10 days of disclosure, TGG must advise Company in writing that the disclosed information is "confidential" or "proprietary."

**ii.** Company shall not disclose TGG Confidential Information to anyone other than: (a) TGG and its representatives including as reasonably necessary for TGG to render Services to Company; or (b) third parties where the disclosure is reasonably necessary for TGG to render Services for Company and the Company has received written authorization from TGG by a CFO-level employee.

**iii.** Company agrees that once this Agreement is no longer in effect: (a) Company will immediately return to TGG all TGG Confidential Information; (b) Company will delete from all of its files all TGG Confidential Information; (c) Company will not use for any purpose any TGG Confidential

Information; and (d) Company will not allow any third parties access to or to use any TGG Confidential Information in the rendering of any services to Company.

**iv.** Company stipulates and agrees that, after this Agreement terminates, if Company uses any TGG Confidential Information or allows others to use TGG Confidential Information in rendering services to Company, TGG shall be entitled to obtain a preliminary injunction from a court to stop and prevent Company from further use of, access to, or benefit from the TGG Confidential Information.

5. Placement Fee re: Hiring TGG Employees and Staff

a. Company recognizes and agrees that those who work for TGG, whether employees or independent contractors (individually and collectively "TGG Staff") are selected and trained by TGG at great time and expense. Company recognizes and agrees that if it hires any TGG Staff, whether directly or indirectly through another hiring agency, firm, company or any other source, it will cause financial harm to TGG in a number of ways including, but not limited to: (a) TGG having to replace the person; (b) TGG having to train a new person; and (c) the time it will take for the new person to be completely up to speed at the level of the TGG Staff who left. As a result, Company agrees that as long as this Agreement is in effect, and up to one year after termination of this Agreement, if Company Hires TGG Staff, Company will pay TGG a Placement Fee in the amount set forth below.

b. Hires TGG Staff means and includes any of the following: (a) Company solicits or recruits TGG Staff, whether to work for Company or leave TGG; (b) Company directly employs TGG Staff or directly pays TGG Staff as an independent contractor; or (c) Company contracts with or makes any arrangement with any other person, company or business where TGG Staff, directly or indirectly, will or does perform for Company the same or similar services as those TGG Staff was performing for Company while employed by TGG.

c. Hires TGG Staff only applies to a person who, while working for TGG, performed services for Company or was introduced to the Company in any other way.

d. The Placement Fee will be forty percent (40%) of the gross annual compensation payable by TGG to the person(s) Company hires, that TGG was actually paying the person 30 days before the TGG Staff left his/hers employment with TGG. The Placement Fee shall be due and payable immediately when Company Hires TGG Staff.

e. Company acknowledges and agrees that the terms, including the amount, of this Placement Fee provision are reasonable and necessary under all facts and circumstances to compensate TGG in the event Company Hires TGG Staff.

6. Indemnification. Company shall indemnify, defend and hold harmless TGG, its officers, directors, shareholders, managers, employees, attorneys, agents, representatives, successors and assigns (each being an "Indemnified Party") from and against any and all third party losses, claims, damages, penalties, fines, liabilities and expenses, joint or several, including all reasonable fees of counsel and other expenses incurred by any Indemnified Party in connection with the preparation for, or defense of, any claim, action or proceeding (whether or not resulting in any liability), to which such Indemnified Party may become subject as caused by, or arising out of, or in any way related to Company's operations or TGG providing Services to Company including, without limitation, the classification or misclassification of Company's employees, independent contractors and vendors, use of Company's Information or this Agreement. Notwithstanding the preceding, Company shall not be liable under this paragraph 6 to the extent that any loss, claim, damage, liability, penalty, fine or expense is proven to have been actually caused by the gross negligence or willful misconduct of such Indemnified Party.

7. Referral Partners. TGG is a full-service firm and strives to provide the best Services possible. From time to time, Company may request a referral for a particular service or product, or a situation may arise where we believe it would be advantageous for Company to retain the services of certain vendors or providers. Company is not required to use any of the service or product vendors/suppliers TGG recommends as a condition to the providing of TGG Services under this Agreement. There may be other providers available which charge more or less than the providers we providers referred by TGG. Company is free and encouraged to shop around to determine it is receiving the best service and the best rate or price. Company acknowledges and understands that TGG may refer Company to a vendor or service provider from whom TGG may realize a direct or indirect benefit as a result of such referral.

8. Retention of Company Files. Upon termination of the Agreement, TGG will either deliver Company files to Company or destroy them, as Company directs in writing and at Company's sole expense. If Company fails to request in writing a return of Company files within ninety (90) days after termination of this Agreement, TGG will destroy Company's

files without further notice to Company. TGG will have the right to retain one copy of Company files for archival purposes and for use in any disputes concerning TGG's Services or otherwise under this Agreement.

9. Independent Contractor Status. This Agreement does not create an employer-employee relationship, nor a partnership, joint venture or other relationship between the parties. Neither party shall have the right, power or authority to create any contract or obligation, or make any commitments, whether express or implied, on behalf of, in the name of or binding upon the other party.

10. Applicable Law; Venue. This Agreement shall be construed and interpreted in accordance with the laws of the State of California. Any action or proceeding that might be brought in connection with or arising out of this Agreement shall be commenced and maintained only in San Diego County, California.

11. Attorneys' Fees. If any party to this Agreement incurs any legal fees in enforcing any of the terms of this Agreement, or in seeking recovery of any damages or relief based on this Agreement or the facts under which this Agreement is based, or which in any way concerns the rights and obligations of the parties to this Agreement, whether based on contract, tort or any other civil claim or remedy sought, whether legal fees are incurred without any legal proceeding or through litigation, arbitration, mediation, or any other proceeding, the prevailing party shall be entitled to recover reasonable legal fees therein incurred. This attorney fee provision is intended to be construed in the broadest possible sense and scope including being applicable in tort and other claims which concern, directly or indirectly, this Agreement or the facts under which this Agreement is based or created.

12. Notices. All invoices, notices, consents, requests, demands and other communications required or permitted under this Agreement shall be in writing addressed to party at the address for such party set forth on the signature page of this agreement, and shall be transmitted by either (i) facsimile with telephonic confirmation, (ii) electronic mail with confirmation of transmission by the transmitting equipment, or (iii) overnight courier. Any notice or other communication shall be deemed received by the party to whom it is addressed when it is sent in the case of transmission by facsimile or electronic mail and one day after it is sent in the case of transmission by overnight courier. Any party may change such party's address for purposes of this Agreement by notice given in accordance with this paragraph 13.

13. Successors and Assigns. This Agreement shall not be assigned by the Company without the prior written consent of TGG, which shall not be unreasonably withheld; provided, however, that either party may, without the prior consent of the other, assign all of its rights under this agreement to (i) a parent or subsidiary of a party, (ii) a purchaser of all or substantially all assets of the Company, or (iii) a third party participating in a merger, acquisition, sale of assets or other corporate reorganization in which either party is participating. Any attempt to assign this Agreement in violation of this provision shall be void and of no effect. This Agreement shall bind and inure to the benefit of the parties and their respective successors and permitted assigns.

14. Amendments. No amendment, modification, termination or waiver of any provision of this Agreement, or consent to any departure by any party therefrom, shall be effective unless signed in writing by the parties hereto and, in any event, shall be effective only in the specific instance for the specific purpose for which given.

15. Consequential Damages. TGG will not be liable or otherwise responsible for any special or consequential damages, and in no event will TGG be liable for damages in excess of the fees, costs and other payments that TGG receives from Company for services provided under this agreement.

16. Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Execution and delivery of this Agreement by delivery of a facsimile or electronically recorded copy (including a .pdf file) bearing a copy of the signature of a party shall constitute a valid and binding execution and delivery of this Agreement by such party. Such copies shall constitute enforceable original documents.

DocuSign Envelope ID: B8D79310-693C-40CD-B177-1EBE295C4D8B

Please sign this Agreement and promptly return to us by email. We look forward to working with and assisting Company and rendering the services provided for by this Agreement. If you ever have any questions about our fees or services please contact us and so advise.

Very truly yours,

**TGG ACCOUNTING**

DocuSigned by:

By: J. Andrew Ruff
7E8A0BE3C8444E5...
J. Andrew Ruff, President and CFO

**ACCEPTED AND AGREED:**

Company agrees to all terms provided for in the Agreement.

**IKIGAI Marketing Works, LLC**

Dated: 6/14/2022

DocuSigned by:

By:
8FA2B20452E44D6...
Jane Pak

Its: CEO

Address: 316 California Avenue, Suite 317 Reno, NV 89509

Email: jpak@pooph.com

Tel #: 3106006454

DocuSign Envelope ID: B8D79310-693C-40CD-B477-1EBE295C4D8B

**Exhibit I**

| Personnel | Hourly Rate |
|---|---|
| CFO | $315 - $450 |
| Controller | $150 - $240 |
| Accounting Manager | $95 - $130 |
| Staff Accountant | $65 - $80 |
| Accounting Assistant | $45 - $55 |