5:24-CV-492

Phelps Dunbar LLP
Canal Place
365 Canal Street
Suite 2000
New Orleans, LA 70130
504 566 1311

February 19, 2024

31616-0049

Sara Nau
Counsel
Sara.nau@phelps.com
Direct 713 877 5503

***VIA* EMAIL – laurel.swanson@tgg-accounting.com**
**AND U.S. CERTIFIED MAIL, RETURN RECEIPT**
**REQUESTED NO. 9489 0090 0027 6463 6864 36**

TGG Management Company, Inc.
Attn: Laurel Swanson
21750 Hardy Oak Blvd.
Suite 104
San Antonio, TX 78258-4946

| | | |
|---|---|---|
| Re: | Insured: | TGG Management Company, Inc. |
| | Matter: | *Ikigai Marketing Works, LLC v. TGG Management Company, Inc. d/b/a TGG Accounting*, Case No. 37-2023-00038170-CU-BC-NC in Superior Court of California, County of San Diego |
| | Policy No.: | SCG0010268-05 (May 18, 2023 to May 18, 2024) |
| | Deductible: | $50,000 Each Erroneous Act (inclusive of claims expenses) |
| | Limit: | $2,000,000 Each Erroneous Act/Aggregate (inclusive of claim expenses) |
| | Claim No.: | 304561 |

Dear Ms. Swanson,

Phelps Dunbar LLP represents Capitol Specialty Insurance Company ("CSIC") in connection with the above-referenced lawsuit ("the Lawsuit"), which arises out of an alleged data breach of Ikigai Marketing Works, LLC and its subsidiary, POOPH, Inc. ("the Plaintiffs") from cyber-phishing attempts that TGG Management Company, Inc. allegedly ("the Insured" or "TGG") failed to identify. CSIC issued the captioned Miscellaneous E&O Policy numbered SCG0010268-05 to TGG for the May 18, 2023, to May 18, 2024 period (the "Policy").

The purpose of this letter is to advise you that CSIC has agreed to defend TGG and co-defendant Matthew Garrett in the Lawsuit, subject to the below reservation of rights and the deductible.

## FACTS

CSIC understands the statements made in the referenced matter are unproven and may be untrue, incomplete, or embellished. Thus, CSIC does not presume or conclude that the





EXHIBIT
D

allegations in this matter are true, and no statement or representation in this letter should be construed otherwise. However, the allegations are relevant to this position letter.

On January 18, 2024, the Plaintiffs filed a lawsuit styled *Ikigai Marketing Works, LLC v. TGG Management Company, Inc. d/b/a TGG Accounting*, case no. 37-2023-00038170-CU-BC-NC in the Superior Court of California, County of San Diego.

In the Lawsuit, the Plaintiffs allege Matthew Garrett is TGG's CEO and an alter ego of TGG. The Plaintiffs allege that on June 14, 2022, they entered into an agreement with TGG under which TGG agreed to provide accounting, business, and financial services to the Plaintiffs. The Plaintiffs further allege that the agreement required the Plaintiffs to disclose confidential and financial information to TGG. They allege that TGG outsourced its work to a third party, meaning the third-party company had access to the Plaintiffs' confidential information without the Plaintiff's consent. Specifically, the Plaintiffs allege that TGG allowed at least nine employees or contractors from multiple states and countries to access their email systems to provide accounting services to the Plaintiffs.

The Plaintiffs further allege that on or about January 18, 2023, TGG received its first request to send money to a phisher, who had "spoofed" one of the Plaintiffs' vendor's email addresses and was holding themselves out as the vendor. The email allegedly requested that TGG pay the vendor via check instead of wire transfer, which the Plaintiffs allege should have been a red flag that TGG was not corresponding with the actual vendor. Nonetheless, on February 2, 2023, TGG allegedly transmitted $67,048.84 to the phisher using the Plaintiffs' bank account.

In the weeks that followed, the phisher sent additional emails to TGG which exhibited the same red flags as above, plus suspicious language and instructions. The Plaintiffs allege that each time, TGG failed to implement proper screening (such as IT controls and standard accounting practices) and failed to verify changes to a vendor's banking information to filter out the phishing emails. The Plaintiffs allege that TGG made additional payments to the unknown phisher on February 2, 9, 15, and 23, 2023, totaling $843,704.90.

Following this, TGG performed an internal audit, discovered the fraud, and then subsequently charged the Plaintiffs for the cost of the audit. The Plaintiffs allege that in March 2023, TGG opportunistically offered to give a $2M loan (with interest) to the Plaintiffs in exchange for working with the Plaintiffs' insurance carriers on recouping the money. However, the Plaintiffs rejected this loan proposal.

The Plaintiffs assert the following causes of action against TGG and Garrett: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) promissory estoppel, (5) professional negligence, (6) gross negligence, (7) negligent hiring, training and supervision, (8) breach of fiduciary duty, (9) constructive fraud, and (10) violations of the California Business and Professions Code. They further seek declaratory judgment relief, as well as actual, consequential, and incidental damages, civil penalties, punitive damages, pre- and post-judgment interest, and attorney's fees and costs.

## DEFENSE

Based on presently available information, CSIC agrees to defend TGG and Garrett in the Lawsuit under the Policy subject to a reservation of rights to deny coverage on all grounds available under the Policy and at law. Pursuant to your discussion with CSIC, CSIC will retain Alicia Kennon of Wood Smith Henning Berman to defend Garrett and TGG in this matter. The contact information for Ms. Kennon is as follows:

Alicia Kennon
Wood Smith Henning Berman
1401 Willow Pass Rd
Suite 700
Concord, CA 94250
925.222.3412
akennon@wshblaw.com

Please cooperate with counsel in the defense of this matter.

CSIC will accept TGG and Garrett's defense of the litigation under a full and express reservation of rights under the terms of the Policy and applicable law. CSIC reserves the right to seek a judicial determination through a declaratory judgment action to determine whether coverage in fact exists under the Policy and further reserves the right to withdraw from the defense and to seek reimbursement of defense costs if it is determined that no coverage is owed. If a declaratory judgment is filed, it will be necessary for CSIC to make TGG and Garrett parties to that lawsuit so that they can address and participate in the decisions on insurance coverage by a court. CSIC respectfully urges TGG and Garrett to seek an attorney who may advise on insurance coverage issues.

## RESERVATION OF RIGHTS

We refer below to certain policy provisions that may be applicable based on the available information. Such reference is not intended to be a comprehensive recitation of the applicable policy provisions, and additional policy provisions may apply to limit or restrict coverage. CSIC reserves its right to assert policy provisions and defenses not discussed herein which may become applicable. Further, reference herein to policy provisions does not supersede the language set forth in the Policy. Reference is instead intended for your convenience only and, in the event the provisions set forth below conflict with any term or provision in the Policy, the language in the Policy will control.

*Insuring Agreement*

The Policies' insuring agreement provides that CSIC "… will pay on an **Insured's** behalf … **Damages** or **Claim Expenses** because of **Claims** first made during the **Policy Period** or any **Extended Reporting Period** and resulting from **Erroneous Acts**." Here, before this matter went into litigation, we understand that Ikigai first made a claim against TGG on June 1, 2023, with TGG reporting it to CSIC shortly thereafter, meaning the claim was made and reported during the Policy Period. "Insured" is defined to include TGG as well as TGG's current and former "officers,

directors, employees or stockholders while acting within the scope of their duties in behalf of" TGG. Here, as Garrett is sued in his role as TGG's CEO, Garrett would also qualify as an insured under the Policy.

"Erroneous Act" is defined as an, "… actual or alleged conduct by an **Insured**, or by any person or organization for which an Insured is legally liable, and which results from the performance of **Insured Activities** for others," including "[a] negligent act, error or omission…." Further, under the Policies' Declarations, "Insured Activities" are defined as, "[a]ccounting services to include providing services as an interim or fractional CFO; financial consulting to include development of metrics, operation reporting, cash flow analysis, forecasting, budgeting, planning, bench marking; strategic management consulting." In light of the Plaintiffs'' allegations of intentional and grossly negligent conduct against TGG and Garrett, CSIC reserves the right to deny coverage to the extent TGG did not commit *negligent* acts, errors or omissions, as per the "Erroneous Act" definition. Moreover, CSIC reserves the right to deny coverage to the extent the Lawsuit does not concern Garrett or TGG's "Insured Activities" as that term is defined in the Policy.

As noted above, the insuring agreement only responds to "Damages" and "Claims Expenses," which the former defined as:

1. Amounts which an **Insured** is legally obligated to pay as a result of a covered judgment, award or settlement;
2. Costs assessed against an **Insured** in any suit or proceeding defended by the **Company** unless such costs are assessed as a sanction for an **Insured's** delay or misconduct in the litigation process;
3. Pre-judgment interest and post-judgment interest assessed before the **Company** has paid, offered to pay or deposited in court the part of the judgment that is covered by this Policy and that is within the applicable Limit of Insurance; and
4. Punitive, exemplary or multiple damages, where insurable by law.

**Damages** does not include:

1. Taxes, criminal or civil fines or penalties imposed by law;
2. Production costs, or the cost of reprinting, recalling, recovering, shipping, correcting, reprocessing, restoring, repairing, replacing, reproducing, or re-performing **Insured Activities**; or
3. Royalties or restitution paid or payable by an **Insured**; disgorgement of an **Insured's** profits; costs of complying with an order granting injunctive relief; or disputed: fees, charges, or commissions for goods or services.

CSIC reserves the right to deny coverage to the extent the Plaintiffs seek amounts that are not covered "Damages" as per the above definition, including, but not limited to, any punitive damages that are determined to be uninsurable under law.

*Deductible/Related Erroneous Acts*

The Policy is subject to a $50,000 each Erroneous Act deductible (with that deductible, like the Policy limit, eroded by Claims Expenses and Damages), with CSIC's "obligation to pay **Damages** and **Claims Expenses** appl[ying] only to sums in excess of the Deductible." The Policy further provides that "the Deductible will not erode the Each **Erroneous Act** Limit of Insurance or the Aggregate Limit of Insurance," and that if CSIC, at its option, "has paid part or all of the Deductible, the **Insured** will be obligated to reimburse such amounts to [CSIC] upon demand." CSIC reserves all rights under this Deductible provision.

The Policy further provides as follows in Part V.B.6:

> All **Erroneous Acts** that are committed after the **Retroactive Date** and before the expiration date of the last Miscellaneous E&O Policy issued to an **Insured** by [CSIC] or any affiliate thereof, and are logically or causally connected by common facts, circumstances, transactions, events and/or decisions, will be treated under this Policy as one **Erroneous Act** and deemed to have occurred on the date of the first of the **Erroneous Acts**.

Here, Plaintiffs allege that TGG transmitted multiple tranches of money to the phisher's accounts. Please be advised that CSIC will consider the transmissions to be related Erroneous Acts, meaning one $50,000 deductible will apply to the Lawsuit. Nonetheless, CSIC reserves the right to apply multiple deductibles in the event it is determined that the transmissions are not in fact "logically or causally connected by common facts, circumstances, transactions, events and/or decisions."

*Consent to Settle Clause*

Part IV B.1. to the Policy states that an **Insured** may not, except at its own non-reimbursable cost, settle any **Claim**, admit any liability or incur any expense without the **Company's** prior written consent. Accordingly, CSIC must disclaim coverage for all **Damages** and/or **Claims Expenses** incurred by the **Insured** without our consent.

*Prior Knowledge*

Part V of the Policy provides that the Policy applies, "… to **Claims** arising from **Erroneous Acts** that occur after the [March 8, 2010] **Retroactive Date** and before the **Expiration Date** of the Policy." The Policy further provides that "such **Claims** will be covered…[u]nless an **Insured** had actual or constructive knowledge of the circumstances or incident(s) which led to the **Claim** and reason to believe it would result in a **Claim**, prior to the **Effective Date** of the first Miscellaneous E&O Policy issued to an Insured by [CSIC] or any affiliate thereof."

Here, CSIC issued a policy to TGG from May 18, 2022 to May 18, 2023 (policy no. SGC0010268-04), which would have been in place at the time of the first fraudulent transfer. However, out of an abundance of caution, CSIC reserves the right to deny coverage in the event TGG or Garrett had actual or constructive knowledge of the circumstances or incidents that led to the Lawsuit before the first of the TGG/CSIC policies incepted.

*Exclusion 17*

CSIC next directs your attention to certain exclusions. Under Exclusion 17, "[CSIC] is not liable for **Damages** or **Claim Expenses** or obligated to defend **Claims** arising out of [the] actual or alleged …[u]nauthorized access to, use of, or tampering with data or systems by any person …."

CSIC understands that the Plaintiffs allege TGG and Garrett failed to implement internal e-mail screening controls that ultimately led phishers to have unauthorized access to TGG's email system, with the phisher then impersonating the Plaintiffs' vendors and tricking TGG into transferring the Plaintiffs' money to the phisher's account(s). As all of the Plaintiffs' alleged damages arise out of this unauthorized access into TGG's email system and the Plaintiffs' financial accounts, CSIC reserves the right to deny coverage under Exclusion 17.

*Exclusion 21*

Under Exclusion 21, "[CSIC] is not liable for **Damages** or **Claim Expenses** or obligated to defend **Claims** arising out of [the] actual or alleged …[b]reach of contract; however this will not exclude coverage for **Claims** alleging negligent performance of **Insured Activities** …." CSIC understands that the Plaintiffs have included a breach-of contract-claim against TGG and Garrett in the Lawsuit. Therefore, CSIC reserves the right to deny coverage to the extent any claim falls within Exclusion 21 and falls outside of the exception to the exclusion.

*Exclusion 9*

Under Exclusion 9, "[CSIC] is not liable for **Damages** or **Claim Expenses** or obligated to defend **Claims** arising out of [the] actual or alleged … "[g]ain, profit or advantage to which [TGG] is not legally entitled…." CSIC understands that the Plaintiffs have included an unjust enrichment claim against TGG and Garrett in the Lawsuit. Therefore, CSIC reserves the right to deny coverage to the extent any claim falls within Exclusion 9.

*Exclusion 20*

Under Exclusion 20, "[CSIC] is not liable for **Damages** or **Claim Expenses** or obligated to defend **Claims** arising out of [the] actual or alleged…[c]riminal, dishonest, fraudulent, malicious or knowingly wrongful acts by [TGG]." However, the exclusion further provides that "[i]f a **Claim** would invoke [CSIC]'s duty to defend but for allegations of such acts, then [CSIC] will defend the **Claim** until there is a finding by a jury, judge or arbitrator or an admission by [TGG], or by a person who would be an Insured if that person had not acted outside the scope of his or her duties, that there were such acts. [CSIC] will not pay any settlement or judgment associated with such finding or admission, and [CSIC] retains the right to seek reimbursement of **Claim Expenses** paid from the party found to have committed such acts or made such an admission." CSIC understands that the Plaintiffs have included a constructive fraud claim against TGG and Garrett in the Lawsuit. Therefore, CSIC reserves the right to deny coverage to the extent any claim falls within Exclusion 20.

*Exclusion 5*

Under Exclusion 5, "[CSIC] is not liable for **Damages** or **Claim Expenses** or obligated to defend **Claims** arising out of [the] actual or alleged …[u]nfair competition, restraint of trade, or any other violation of antitrust laws …." CSIC understands that the Plaintiffs have included a California unfair competition claim against TGG and Garrett in the Lawsuit. Therefore, CSIC reserves the right to deny coverage to the extent any claim falls within Exclusion 5.

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

CSIC specifically reserves its rights to withdraw from the defense of this matter if it determines that there is no coverage and/or to seek a declaration of its rights and duties under the Policy, and further reserves its right to seek reimbursement of defense fees and costs paid toward defending causes of action which raise no potential for coverage.

The foregoing is based solely on information available to CSIC. If any information arises that suggests that CSIC should revisit its position, please immediately furnish it to the undersigned. CSIC reserves the right, under the Policy and the law, to continue its evaluation of any obligation it may have under the Policy and to later supplement the bases herein set forth for reserving rights, as appropriate. Please note, however, that any such actions taken by CSIC should not be construed as a waiver of any right of CSIC to invoke any of the terms, conditions, and limitations of the Policy, all of which actions taken by CSIC are done entirely without prejudice. No waiver of the right to assert additional positions or defenses to coverage is intended and any such waiver is expressly denied.

CSIC wishes to remind TGG and Garrett that they may want to consult with personal counsel, at their own expense, regarding their potential liability for this matter. If they consult with independent personal counsel, CSIC will provide TGG, Garrett, and personal counsel with every cooperation consistent with the terms and conditions of the Policy. CSIC recommends that TGG and Garrett notify their excess or umbrella coverage, if any, for this loss. CSIC further recommends that TGG and Garrett place any other potentially responsive insurance coverage, if available, on notice of this claim. Please provide the undersigned with any information regarding any other potentially responsive insurance, primary or excess, as well as those carriers' responses to TGG and Garrett's tender. If you have any questions or comments concerning the coverage provided by CSIC's policy, TGG, Garrett, and/or their personal counsel should advise immediately.

Additionally, we are required to advise you that should you believe CSIC wrongfully responded with respect to this claim, you may have the matter reviewed by the California Department of Insurance, particularly the Consumer Services Division thereof, whose address and telephone number is:

California Department of Insurance
Consumer Services Division
300 S. Spring Street
Los Angeles, California 90013
1-800-927-4357

If you have any questions or would like to discuss this matter, please do not hesitate to contact us.

With best regards,

Sara Nau