# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>TGG MANAGEMENT COMPANY, INC., et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 3:24-cv-02198-H-DDL<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STAY FOLLOWING THE PARTIES' EARLY NEUTRAL EVALUATION**<br><br>[Doc. No. 18] |

    On January 31, 2025, Defendants TGG Management Company, Inc. and Matthew Garrett filed a motion for an order staying the instant action pending resolution of an underlying lawsuit against Defendant TGG in the Superior Court of the State of California for the County of San Diego. (Doc. No. 18.) On February 14, 2025, Plaintiff Capitol Specialty Insurance Corporation opposed Defendants' motion. (Doc. No. 21.) On February 24, 2025, Defendants filed a reply in support of their motion. (Doc. No. 24.)

The Court held a hearing on the matter on March 3, 2025. Sara Elizabeth Nau appeared on behalf of Plaintiff and Patrick A. Calhoon appeared on behalf of Defendants. For the reasons below, the Court grants Defendants' motion to stay following the parties' Early Neutral Evaluation ("ENE"), which is currently scheduled to take place on March 12, 2025.

## BACKGROUND

In this case, Plaintiff CSIC seeks a judicial determination that under an insurance policy it issued to Defendant TGG (the "Policy"), it owes no duty to defend or indemnify Defendants against claims in an underlying case in state court. (Doc. No. 1, Compl. ¶ 1; Doc. No. 21-1, Policy.) The underlying case is Ikigai Marketing Works, LLC v. TGG Management Company, Inc., Case Number 37-2023-00038170-CU-BC-NC, and is currently pending in the Superior Court of the State of California for the County of San Diego ("Underlying Case"). (Doc. No. 1, Compl. ¶ 1.)

The relevant facts are as follows. In June 2022, Defendant TGG entered into a professional services agreement to provide accounting services to Ikigai Marketing Works, LLC and Pooph, Inc. ("Underlying Plaintiffs"). (Doc. No. 1, Compl. ¶ 7.) In September 2023, the Underlying Plaintiffs filed suit against Defendant TGG in the Underlying Case in state court. (Doc. No. 1, Compl. ¶ 8; Doc. No. 21-2; Doc. No 21-3.) The Underlying Plaintiffs allege that in January 2023, Defendant TGG succumbed to a phishing scheme advanced by phishers using fraudulent emails. (Doc. No. 21-3 ¶ 46.) Specifically, they allege that phishers posed as vendors of the Underlying Plaintiffs by using a spoofed domain name which attempted to mirror the vendors' email addresses. (Doc. No. 21-3 ¶ 50.) They further allege that the phishers sent fraudulent emails to Defendant TGG from this spoofed name requesting payments for legitimate invoices owed to the Underlying Plaintiffs. (Doc. No. 21-3 ¶¶ 48, 50.) They allege further that on multiple occasions, Defendant TGG made payments to the phishers for legitimate invoices that were owed to the Underlying Plaintiffs or their vendors, using the Underlying Plaintiffs' funds. (Doc. No. 21-3 ¶¶ 48, 62-63.)

Based on these allegations, the Underlying Plaintiffs bring claims in the Underlying Case for (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) promissory estoppel; (5) professional negligence; (6) gross negligence; (7) negligent hiring, training and supervision; (8) breach of fiduciary duty; (9) constructive fraud; and (10) violations of the California Business and Professions Code.  (Doc. No. 21-3 ¶¶ 77-159.)

On January 24, 2024, Defendants tendered their defense in the Underlying Case to Plaintiff CSIC.  (Doc. No. 1, Compl. ¶ 12.)  In a February 19, 2024 letter, Plaintiff agreed to defend Defendants in the Underlying Case subject to a reservation of rights.  (Id.; see Doc. No. 21-4.)  Specifically, Plaintiff's position is that Exclusion 17 of the Policy eliminates a duty to defend and indemnify Defendants in the Underlying Case.  (Doc. No. 21 at 14.)[1]  Exclusion 17 provides that Plaintiff is "not . . . obligated to defend Claims arising out of actual or alleged . . . [u]nauthorized access to, use of, or tampering with data or systems by any person[.]"  (Doc. No. 21-1 at 5-6.)

On May 14, 2024, Plaintiff filed the instant case seeking a judicial determination that under the Policy, it owes no duty to defend or indemnify Defendants in the Underlying Case.  (Doc. No. 1.)  On January 31, 2025, Defendants brought the instant motion to stay the action pending resolution of the Underlying Case.  (Doc. No. 18.)

## DISCUSSION

A.  **Legal Standard**

Defendants state that their motion to stay is supported by both federal and state law.  (Doc. No. 18-1 at 11-16.)  Where, as here, a federal court is sitting in diversity jurisdiction, the court must apply state substantive law and federal procedural law.  Sea Hawk Seafoods v. Exxon Corp., 484 F.3d 1098, 1100 (9th Cir. 2007) (citing Erie R.R.

---

[1]     Though other exclusions are discussed in the Complaint, Plaintiff has clarified its argument regarding the lack of a duty to defend is based only on Exclusion 17.  (See Doc. No. 21 at 16-17.)

Co. v. Tompkins, 304 U.S. 64 (1938)). "The effect of a stay is simply to delay the trial for some period of time. It does not affect the substantive rights and duties of the litigants, and, therefore, under Erie . . . the question is one of federal law." Great Am. Assurance Co. v. M.S. Indus. Sheet Metal, Inc., 2011 WL 13228037, at *2 (C.D. Cal. Sept. 22, 2011) (quoting Herron v. Keene Corp., 751 F.2d 873, 875 (6th Cir. 1985) (per curiam)).

A court's inherent power to stay proceedings is governed by Landis v. N. Am. Co., 299 U.S. 248 (1936).[2] In determining whether to grant a stay, a court must weigh competing interests including (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254-55). "[I]f there is even a fair possibility" of damage to the opposing party, the moving party "must make out a clear case of hardship or inequity in being required to go forward[.]" Landis, 299 U.S. at 255.

Although as explained above, this motion is governed by federal procedural law, the Court may still consider California law informative to its ruling. See Zurich Am. Ins. Co. v. Omnicell, Inc., 2019 WL 570760, at *4 (N.D. Cal. Feb. 12, 2019) (noting that while Landis governed insurer's motion to stay, discussion of state law was nonetheless

---

[2] For some cases brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, the relevant abstention doctrine comes from Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942). Brillhart concerned the issue of whether and when "a federal court [should] proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 316 U.S. at 495. While this case is brought under the Declaratory Judgment Act and involves a related proceeding in state court, Plaintiff is not a party in the Underlying Case. Accordingly, Brillhart does not apply, and Landis provides the appropriate standard. See Safeco Ins. Co. of Am. v. Nelson, 2020 WL 3791675, at *3 (S.D. Cal. July 7, 2020) (finding Brillhart did not apply where plaintiff was not party to the underlying action).

informative). Under California law, "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." <u>Montrose Chemical Corporation of California v. Superior Court</u>, 6 Cal. 4th 287, 301 (1993).

B.     <u>Analysis</u>

    1.     **Factual Overlap with the Underlying Case**

The parties dispute the extent to which the coverage question in this case turns on facts to be litigated in the Underlying Case. Though factual overlap is not itself one of the considerations provided in <u>Landis</u>, the parties' dispute regarding factual overlap is nonetheless relevant to their arguments about whether a stay is warranted under federal law. Accordingly, the Court begins by summarizing their arguments on that question.

Defendants argue that this declaratory judgment action requires the adjudication of facts that directly overlap with unresolved factual disputes in the Underlying Case. (Doc. No 18-1 at 16-17.) Specifically, they note that the applicability of Exclusion 17 depends on whether the losses alleged in the Underlying Case resulted from the unauthorized access to, use of, or tampering with data or systems. They argue that while the allegations in the underlying complaint discuss a "phishing scheme" that used "fraudulent" and "spoofed" emails "to the email inbox for Plaintiffs," such schemes do not necessarily involve unauthorized access to systems. (Doc. No. 18-1 at 16.) Rather, these allegations may mean only that "someone created a false email address designed to look legitimate, an action that does not necessarily require any unauthorized access or tampering with data or systems." (<u>Id.</u>)

Plaintiff argues in opposition that the applicability of Exclusion 17 is clear and does not depend on any unresolved factual disputes. (Doc. No. 21 at 13-17.) It suggests that even if creating "spoofed" email addresses resembling real vendor email addresses did not require obtaining unauthorized access to the vendors' systems, there are other allegations in the Underlying Case that clearly trigger Exclusion 17. (Doc. No. 21 at 15.)

5

Specifically, Plaintiff highlights the allegation that the phishers' emails sought payment of "legitimate invoices" for the exact amounts the Underlying Plaintiffs owed. (Id.) Plaintiff argues that phishers "cannot guess the exact amount of actual invoices to which they do not have access," and that "the only reasonable inference to be made here is that the phishers must have had unauthorized access" to the vendors' data or systems "in order to obtain the invoices, thus triggering Exclusion 17." (Id.) Defendants disagree, noting that "[i]n some 'phishing' cases the fraudster may not access any internal system or data directly, but might trick someone into providing information and ultimately transferring money, which could fall outside the language of Exclusion 17." (Doc. No. 24 at 4.) Additionally, Plaintiff notes that the Underlying Plaintiffs allege that Defendant TGG failed to prevent "unauthorized access" to their systems and private information. (See, e.g., Doc. No. 21-3 ¶ 43.)

### 2. A Stay Is Warranted Under Landis

#### i. Possible Damage to Plaintiff if Stay is Granted

The first consideration under Landis is the possible damage which may result from the granting of a stay. CMAX, Inc., 300 F.2d at 268 (citing Landis, 299 U.S. at 254-55). Here, Plaintiff argues that if a stay is granted, it would be harmed by the possibility it will continue to be obligated to defend an uncovered action. (Doc. No. 21 at 17-18.) It notes that this possibility "is precisely the type of prejudice that courts have examined in considering a stay" and that "the chance an insurer might obtain future reimbursement for defense costs does not mitigate the prejudice to an insurer whose declaratory relief action has been stayed." (Doc. No. 21 at 18.) In support of this proposition, Defendants cite Great Am. Assurance Co., 2011 WL 13228037, at *5. But the court there noted that harm to the insurer was "not determinative" in its decision, and concluded that the other two Landis factors weighed against a stay. Id. Moreover, as Defendants note, courts in the Ninth Circuit "have concluded that delaying a determination of an insurer's coverage obligations does not constitute damage under the factors set forth in Landis," reasoning that "the duty to defend is both an obligation of insurers and a 'cost of doing business[.]'"

Citizens Ins. Co. of Am. v. Chief Digital Advisors, 2020 WL 8483913, at *2 (S.D. Cal. Dec. 22, 2020) (quoting Hudson Specialty Ins. Co. v. Hofer, 2020 WL 4921975, at *2 (S.D. Cal. Aug. 21, 2020)).  See also Zurich Am. Ins. Co., 2019 WL 570760, at *5 (rejecting insurer's argument that it would be damaged by a delay in the determination of no duty to defend in underlying action); Safeco Ins. Co. of Am. v. Nelson, 2020 WL 3791675, at *4-5 (S.D. Cal. Jul. 7, 2020) (same).  Accordingly, the Court finds that the first Landis factor favors a stay.

### ii. Hardship or Inequity Defendants May Suffer if Stay is Denied

The second consideration under Landis is the hardship or inequity which a party may suffer in being required to go forward.  CMAX, Inc., 300 F.2d at 268 (citing Landis, 299 U.S. at 254-55).  Defendants argue that denial of a stay will cause them to suffer hardship or inequity for two reasons.  First, they argue that without a stay, they will "be forced to fight a two-front war" which will divide their time and resources.  (Doc. No. 18-1 at 13, 20-21.)  Indeed, "[c]ourts have found that any prejudice (if at all) to the insurer in having to pay defense costs while the underlying case is pending is outweighed by prejudice to the insured in having to fight a 'two-front war.'"  Sentinel Ins. Co., Ltd. v. Starritt, 2021 WL 4034160, at *2 (S.D. Cal. Sept. 3, 2021) (quoting Zurich Am. Ins. Co., 2019 WL 570760, at *6); see also Safeco Ins. Co. of Am., 2020 WL 3791675, at *5 (finding that the possibility of being forced to litigate on two fronts constituted hardship to the insured).

Second, they argue that due to the factual overlap between the cases, "[l]itigating this coverage action before final termination of the [Underlying Case] will force TGG to take positions and litigate facts that could unfairly prejudice TGG in the [Underlying Case]."  (Doc. No. 18-1 at 15.)  Specifically, they note that Defendant TGG "will be forced to argue its own negligence in this declaratory relief action in order to secure insurance coverage," whereas in the Underlying Case, "negligence arguments would be extremely detrimental to its own defense of those claims."  (Doc. No. 9 at 9.)  Defendants note further that "if this Court decides the declaratory relief action in CSIC's favor, not

1  only will coverage will be denied for the Underlying Lawsuit, but [Defendants] will be
2  stuck with having argued [their] own negligence, a double loss." (Id.)

3  Plaintiff maintains its position that there are no overlapping factual issues between
4  the cases (Doc. No. 21 at 20), but Defendants do not agree, and Plaintiff does not address
5  how Defendants would be able to oppose its position without compromising the
6  arguments they seek to make in the Underlying Case.  Overall, the Court is convinced by
7  Defendants' explanation of how the arguments they would likely need to make against
8  Plaintiff's position in this case could prejudice them in the Underlying Case.  See
9  Sentinel Ins. Co., 2021 WL 4034160, at *2 (finding defendants demonstrated prejudice to
10 support a stay by showing "that they might have to take positions in this coverage lawsuit
11 that would prejudice the defense of the Underlying Lawsuit"); Great Am. E&S Ins. Co. v.
12 Dye Precision, Inc, 2024 WL 4529578, at *10 (S.D. Cal. Oct. 16, 2024) (finding second
13 Landis factor weighed in favor of a stay where "Defendants could be forced to take
14 conflicting positions in the two actions").

### iii.  Orderly Course of Justice

16  The final consideration under Landis is "the orderly course of justice measured in
17 terms of the simplifying or complicating of issues, proof, and questions of law which
18 could be expected to result from a stay."  CMAX, Inc., 300 F.2d at 268 (citing Landis,
19 299 U.S. at 254-55).  Defendants argue a stay would serve the orderly administration of
20 justice by allowing facts to be clarified in the course of litigating the Underlying Case,
21 avoiding the risk of conflicting factual determinations, and allowing this Court to manage
22 its limited resources until the Underlying Case is resolved.  (Doc. No. 18-1 at 21; Doc.
23 No. 24 at 9-10.)

24  In opposition, Plaintiff argues this factor does not weigh in favor of a stay because
25 "there are no overlapping factual issues and no chance of inconsistent rulings."  (Doc.
26 No. 21 at 20.)  But contrary to Plaintiff's argument, it is not entirely clear how the
27 phishers are alleged to have carried out their phishing scheme.  As previously discussed,
28 Plaintiff argues there is no question the phishers must have carried out their scheme using

unauthorized access to vendor systems, because they could not have obtained vendor invoices any other way. (Doc. No. 21 at 15). But Defendants highlight other plausible methods by which they could have obtained the invoices, for example, by using another spoofed email to deceive vendors' employees into providing them. (Doc. No. 24 at 4-5.) Accordingly, it is unclear whether the phishers allegedly or actually carried out their scheme by way of "[u]nauthorized access to, use of, or tampering with data or systems[.]" (Doc. No. 21-1 at 6.) These are precisely the allegations relevant to determining the applicability of Exclusion 17, and thus whether Plaintiff has a duty to defend.

Ultimately, the Court agrees with Defendants that resolution of the Underlying Case will help inform the Court's decision in this declaratory relief action. See MS Amlin Corp. Member, Ltd. v. Bottini, 2020 WL 5966612, at *8 (S.D. Cal. Oct. 8, 2020) ("developing the facts in state court will assist the Court once the coverage issues are decided"). For that reason, the third Landis consideration also weighs in favor of a stay.

## CONCLUSION

Overall, in their briefs and at the hearing, both parties have made convincing arguments in support of their respective positions on the motion to stay. But on balance, for the reasons above, the Court finds that a stay is warranted here. Accordingly, the Court orders that a stay is granted following the parties' ENE, which is currently scheduled to take place on March 12, 2025. After the parties' ENE, this case will be stayed pending final judgment in the Underlying Case. The parties must file a joint status report on whichever is earlier of either: (1) seven days after a judgment is entered in the Underlying Case, or (2) March 1, 2026.

**IT IS SO ORDERED.**

DATED: March 3, 2025

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT